# IN THE UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## EASTERN DIVISION

| | | |
|---|---|---|
| M.A., an individual, | ) | CASE NO. 2:19-cv-00849 |
| | ) | |
| Plaintiff | ) | Judge Algenon L. Marbley |
| | ) | |
| vs. | ) | Magistrate Elizabeth Preston Deavers |
| | ) | |
| WYNDHAM HOTELS AND RESORTS, *et al.*, | ) ) | |
| | ) | |
| Defendants. | ) | |

## DEFENDANT CHOICE HOTELS INTERNATIONAL, INC.'S
## MOTION TO DISMISS PLAINTIFF'S COMPLAINT

Defendant Choice Hotels International, Inc. ("Choice") moves to dismiss Plaintiff's Complaint pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief can be granted. A memorandum of law in support of this Motion is attached and incorporated by reference.

Respectfully submitted,

*/s/ Jennifer Snyder Heis*
Jennifer Snyder Heis (#0076181) (Trial Attorney)
ULMER & BERNE LLP
600 Vine Street, Suite 2800
Cincinnati, Ohio  45202-2409
(513) 698-5000
(513) 698-5001 FAX
jheis@ulmer.com

and

Alyson Terrell (#0082271)
ULMER & BERNE LLP
65 East State Street, Suite 1100
Columbus, Ohio 43215
(614) 229-0042
(614) 229-0043 FAX
aterrell@ulmer.com

and

Sara M. Turner (*pro hac vice*)
BAKER, DONELSON, BEARMAN, CALDWELL
& BERKOWITZ
Wells Fargo Tower
420 20th Street North, Suite 1400
Birmingham, AL 35203
(205) 250-8316
smturner@bakerdonelson.com

***Attorneys for Defendant***
***Choice Hotels International, Inc.***

**MEMORANDUM IN SUPPORT**

**I.   INTRODUCTION**

Plaintiff brings a single claim against Defendant Choice Hotels International, Inc. ("Choice") for alleged violation of the Trafficking Victims Protection Reauthorization Act ("TVPRA"), 18 U.S.C. § 1595.  Such a claim requires Plaintiff to allege and prove that Choice "knowingly benefit[ed]" from "participation in a venture" as described in 18 U.S.C. § 1591(a)(1) and (2).  *See* 18 U.S.C.A. §§ 1591; 1595.  No such allegations have been made here.  Further, as to Choice, a franchisor that did not own, operate, or otherwise control any of the locations listed in Plaintiff's Complaint, Plaintiff cannot allege facts that support her claim.

Plaintiff's Complaint also contains conclusory allegations that Defendant Buckeye Hospitality, Inc. ("Buckeye Hospitality"), the franchisee for the Comfort Inn in Columbus, Ohio (the "Hotel"), was an agent, joint employer, and/or single employer with Choice.  Such a theory does not create or support a claim for liability under the TVPRA as to Choice.  Ohio law is clear that franchisors like Choice are not liable for the acts of their franchisees.  *See, e.g., Starks v. Choice Hotels Internatl.,* 887 N.E.2d 1244, 1246 (Ohio. Ct. App. 2007) (holding that Choice had no right to control its franchisee, and therefore, was not liable to a hotel patron for the franchisee's alleged actions).  Similarly, adoption and enforcement of brand standards under the provisions of the Lanham Act, 15 U.S.C. § 1051, *et. seq.* do not create liability under the TVPRA.  Plaintiff has not plausibly alleged — nor can she — that Buckeye Hospitality's employees were employed by Choice. Such an allegation would be contrary to both the facts at issue here and the applicable law.  "[A] franchisor is not the employer of employees of the franchisee." *Bricker v. R & A Pizza, Inc.*, 804 F. Supp. 2d 615, 621 (S.D. Ohio 2011) (quoting *Raines v. Shoney's, Inc.*, 909 F. Supp. 1070, 1078 (E.D. Tenn. 1995)).  Buckeye Hospitality is an

1

*independent contractor* and *solely responsible* for business control of the Hotel, including employment.

In short, Plaintiff has alleged no supporting facts sufficient to satisfy the *Twombly/Iqbal* plausibility standard. While replete with conclusory, boilerplate allegations, factual allegations that would demonstrate the plaintiff has a plausible claim are entirely absent from the Complaint.

## II. STANDARD

A court may dismiss a complaint under Federal Rule of Civil Procedure 12(b)(6) if it is clear that no relief could be granted under any set of facts that could be proven consistent with the allegations set forth in the complaint. *See* Fed. R. Civ. P. 12(b)(6). While factual allegations in a complaint are assumed true, courts are "not bound to accept as true a legal conclusion couched as a factual allegation," and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Instead, "the plaintiff must plead sufficient factual matter to render the legal claim plausible, *i.e.*, more than merely possible." *Fritz v. Charter Tp. of Comstock*, 592 F.3d 718, 722 (6th Cir. 2010). Here, Plaintiff has failed to state a viable cause of action for which she is entitled to relief against Choice.

## III. LEGAL ANALYSIS AND ARGUMENT

### A. Plaintiff does not and cannot state a plausible claim against Choice for an alleged violation of the TVPRA, 18 U.S.C. § 1595.

#### 1. Plaintiff fails to allege that Choice "participated" in any "venture."

18 U.S.C.A. § 1595(a) requires a Plaintiff to allege and prove that a Defendant "knowingly benefit[ed]" from "participation in a venture" as described in 18 U.S.C. § 1591(a)(1) and (2). *See* 18 U.S.C.A. § 1595(a). Plaintiff has made no such allegations here as to Choice, nor could she. As to Choice, Plaintiff's only allegations summarily state that Choice "knowingly

2

benefited or received something of value from its facilitation of or participation in a venture which it knew or should have known had engaged in sex trafficking," and "receives a percentage of the gross room revenue from the money generated by the operations of Comfort Inn hotels, including a percentage of the revenue generated for the rate charged on the hotel guest rooms in which the Plaintiff was sex trafficked." (Doc. #1, ¶ 17.) These allegations are insufficient to state a claim under a plain reading of the statutory text. They do not describe any "participation" in which Choice allegedly engaged. The simple receipt of revenues as contemplated under the terms of the Franchise Agreement does not rise to the level of "participation in a venture" contemplated by the TVPRA.

The Sixth Circuit Court of Appeal's hypothetical in *United States v. Afyare*, 632 F. App'x 272, 286 (6th Cir. 2016), is instructive in this regard:

> [C]onsider a hypothetical defendant who joins a soccer team with some sex traffickers, who sponsor the team financially (i.e., pay for travel accommodations, uniforms and equipment, training, etc.) using the money they generate from sex trafficking activities. And assume that the sex traffickers do not conceal the source of this money from the rest of the team, such that our defendant knows (or recklessly disregards clear knowledge) that his teammate-sex-trafficker-sponsors are engaged in sex trafficking ….
>
> Ignoring the reprehensible amorality of our hypothetical defendant, who knowingly participates on a soccer team funded by sex trafficking money, the question is whether Congress criminalized his conduct in § 1591(a)(2). The district court thought not and, under its three-element construction, would require that a defendant actually participate and commit some "overt act" that furthers the sex trafficking aspect of the venture. The district court warned that the statute did not criminalize a defendant's "mere negative acquiescence," and to do so would create "a vehicle to ensnare conduct that the statute never contemplated." *See also United States v. Cain,* 583 F.3d 408, 414 (6th Cir.2009) ("The general rule is that criminal statutes are to be strictly construed against the Government.").
>
> We agree with the district court and find that § 1591(a)(2) targets those who participate in sex trafficking; it does not target soccer players who turn a blind eye to the source of their financial sponsorship. As a result, in this example, we would require the prosecution to prove that the defendant actually participated in a *sex-trafficking venture.*

3

Here, Plaintiff has not alleged any "overt act" by Choice that furthered the sex trafficking.

Relying on the Sixth Circuit's analysis in *Afayre*, Judge Robert Sweet in the Southern District of New York recently dismissed a claim brought pursuant to the TVPRA against Harvey Weinstein's brother, Robert Weinstein. *See Noble v. Weinstein*, 335 F. Supp. 3d 504 (S.D.N.Y. 2018). The plaintiff alleged that Harvey Weinstein sexually assaulted her at a hotel in 2014. *Id.* at 511. With regard to Harvey's brother Robert, the plaintiff alleged that he "knew about, and benefited from, Harvey's international business dealings in his position as co-founder of [The Weinstein Company]," "knew, or was in reckless disregard of the fact, that it was the pattern and practice of Harvey Weinstein to travel in interstate and foreign commerce to entice or recruit [ ] young female actors with the promise of roles," and further, that he "willfully caused" Harvey's sex acts with her by "supporting Harvey Weinstein's pursuit of their joint business interests." *Id.* at 513.

Judge Sweet recognized that "[t]o adequately allege 'participation in a venture in violation of 18 U.S.C. § 1591(a)(2),' [the plaintiff] must plead facts suggesting that [the defendant] (i) 'knowingly benefitted, (ii) from participation in a commercial sex trafficking venture, (iii) while knowing (or in reckless disregard of the fact) that means of force, fraud or coercion would be used to cause the trafficked person to engage in a commercial sex act.'" *Id.* at 523 (quoting *United States v. Afyare*, 632 F. App'x 272, 283 (6th Cir. 2016)). Critically, Judge Sweet found that a plaintiff "must allege *specific conduct that furthered the sex trafficking venture*." *Id.* (emphasis added). Further, "[s]uch conduct must have been undertaken with the knowledge, or in reckless disregard of the fact, *that it was furthering the alleged sex trafficking venture*. In other words, *some participation in the sex trafficking act itself must be shown*." *Id.*

Analyzing the plaintiff's allegations against Robert Weinstein, Judge Sweet concluded

4

that "factual allegations implicating Robert as a participant in Harvey's 2014 conduct toward Noble [were] required. *Without participation, there can be no violation of Section 1591(a)(2).*" *Id.* (citing *Afyare*, 632 F. App'x at 286 ("We agree with the district court and find that § 1591(a)(2) *targets those who participate in sex trafficking*")) (emphasis added). Judge Sweet noted that "[t]aken as true, the allegations against him suggest that Robert 'facilitated' Harvey's travel by virtue of his job responsibilities at TWC, and that he 'benefitted financially from Harvey Weinstein's promotion of films and other business-related activities in foreign commerce,'" but, "[w]hat [was] missing [were] factual allegations that link Robert's actions to Harvey's 2014 conduct toward [the plaintiff]." *Id.* (citing *Lawson v. Rubin*, 17-cv-6404, 2018 WL 2012869, at *11 (E.D.N.Y. Apr. 29, 2018) (dismissing claims against peripheral defendant, because plaintiffs failed to "allege any facts to show that [defendant] knowingly benefitted ... from *participation* in a venture.") (internal quotations omitted). Plaintiff's claim as to Robert Weinstein was dismissed. *Id.*

Similarly, Plaintiff's claim against Choice fails because she does not and cannot allege that Choice actually participated or was "engaged in some aspect of the sex trafficking." *See id.*; *Afayre*, 632 F. App'x. at 286. There are no factual allegations linking Choice's conduct and that of the perpetrator, much less a description of how Choice was a "participant" in his alleged sex trafficking venture. There is no allegation that the perpetrator was an employee or agent of Choice, or that he had any relationship to Choice whatsoever. Choice does not own or operate the Hotel.

### 2. Plaintiff does not and cannot allege sufficient facts showing Choice "knowingly benefitted."

Plaintiff must also allege that actual "participation" resulted in a "knowing" benefit. Plaintiff's Complaint makes no allegations regarding Choice's knowledge of any alleged

5

trafficking at issue *in this case*. Moreover, Plaintiff fails to explain how Choice could have possibly benefitted from any alleged trafficking beyond the basic allegation that Choice "receives a percentage of the gross room revenue from the money generated by the operations of Comfort Inn hotels" as contemplated under the Franchise Agreement. (Doc. #1, ¶ 17.) Plaintiff cannot dispute that such generation of funds would have occurred as to any use of any room for any purpose. The simple receipt of these contractually contemplated funds does not rise to the level of a "knowing benefit" or "participation" in any trafficking act. Plaintiff has made no allegation that Choice was aware that any funds paid as part of the normal course and operation of their contractual agreement were in any way connected to the alleged acts. The simple transfer of funds under a preexisting franchise agreement are not those contemplated under the statute as a means to create liability. To do so would far expand the statutory interpretation so as to make it limitless in numerous contexts. *See Afayre*, 632 F. App'x at 286 (agreeing with the district court's conclusion that the statute does not criminalize a defendant's "mere negative acquiescence," and to do so would create "a vehicle to ensnare conduct that the statute never contemplated").

**B. Plaintiff's agency allegations do not create liability under the TVPRA.**

Plaintiff's Complaint makes allegations that the franchisee is an actual or apparent agent of Choice, but stops short of explaining how those allegations relate to, much less create any, liability under the TVPRA. (Doc. #1, ¶¶ 93, 96, 99.) This is because such allegations do not impart liability under the TVPRA and do not establish a "knowing benefit" nor "participation in a sex trafficking venture" as required. There is no case law that supports the idea that a simple agency relationship – even if one existed, which it does not here – creates liability under the

6

TVPRA. Vicarious liability is not contemplated by the TVPRA as a means to impart liability or "participation." Further, the allegations themselves are insufficiently pled.

Plaintiff's Complaint does not contain any specific facts regarding alleged conduct on the part of Buckeye Hospitality and/or its employees related to *knowingly* benefitting from *participation* in a sex trafficking venture. Accordingly, Plaintiff's allegations are insufficient under *Twombly* and *Iqbal*, *supra*. But even if her Complaint did allege such conduct, Plaintiff has not articulated any legal basis under the TVPRA for holding a franchisor liable for its franchisee's alleged actions or inactions on the grounds that the franchisee is an alleged agent of the franchisor. The statute simply does not contemplate liability as to Choice under the facts as pled.

Furthermore, Plaintiff has not properly alleged actual agency between Choice and its franchisee. Plaintiff has made no allegations that Choice had any control over the operations of its franchisee.[1] "The determinative factor in deciding whether an agency relationship exists between a franchisor and a franchisee is the degree of control the franchisor has over the operations of the franchisee's business." *Puente v. Garcia*, No. C.A. L-86-134, 1986 WL 14372, at *2 (Ohio Ct. App. Dec. 12, 1986) (citing *Smith v. Cities Services Oil Co.*, 346 F2d 349 (7th Cir. 1965)); *City v. US. Slicing Machine Co.*, 373 NE2d 1371 (1978); *N & G Construction, Inc. v. Lindley*, 56 Ohio St.2d 415 (1978)). "If the franchisor has no power over the daily operations of the business, so as to vest the franchisor with control within the definition of agency, the franchisor cannot be held vicariously liable for the negligence of a franchisee." *Id.* (citing *Murphy v. Holiday Inns, Inc.*, 219 S.E. 2d 874 (Va. 1975)).

---

[1] There are no facts that would support Plaintiff's conclusory allegations that Buckeye Hospital is an agent of Choice. The Franchise Agreement governing the relationship between Choice and Buckeye Hospitality explicitly provides that Buckeye Hospitality is an independent contractor and not an agent or employee of Choice. The Franchise Agreement also unequivocally states that Buckeye Hospitality is solely responsible for business control of the Hotel, including employment matters and room pricing.

7

If a franchisor cannot be vicariously liable for the negligent actions of a franchisee, it goes without saying that a franchisor cannot be liable for intentional conduct under the TVPRA. As the Sixth Circuit explained with its soccer player hypothetical in *Afayre*, the statute "targets those who participate in sex trafficking; it does not target soccer players who turn a blind eye to the source of their financial sponsorship." *Afyare*, 632 F. App'x at 286. The TVPRA does not impart liability without actual and direct "participation in a sex trafficking venture." *See id.* There is simply no factual or legal basis under which Plaintiff could succeed on her claims against Choice.

As with her actual agency theory, Plaintiff does not allege how Choice could possibly be held liable under the TVPRA under a theory of apparent agency, nor could she. In order to establish apparent agency, "it must be shown that the principal held the agent out to the public as possessing sufficient authority to act on his behalf and that the person dealing with the agent knew these facts and, acting in good faith, had reason to believe the agent possessed the necessary authority." *Broock v. Nutri/Sys., Inc.*, 654 F. Supp. 7, 10 (S.D. Ohio 1986). "In other words, in order to find apparent agency the Court must find a representation of [Buckeye Hospitality's] agency status made by [Choice] to [Plaintiff], and reasonable reliance upon this representation by [Plaintiff]." *Id.* No such allegations have been made here.

In this case, Plaintiff simply asserts that "Defendant Choice *represented to the public* that it had authority to act on behalf of Comfort Inn[.]" (Doc. #1, ¶ 96.) Noticeably absent from Plaintiff's Complaint are any allegations that (1) a representation was made *to Plaintiff* by Choice, much less that (2) *Plaintiff herself* relied on any such representation by Choice. To the contrary, Plaintiff's own Complaint makes plain that she did not choose to stay at the Comfort Inn based on any representation that it was owned and operated by Choice. In fact, it was not

8

her decision to stay there at all – as a victim, Plaintiff has alleged that she was present by means of "force, fraud, and coercion." (Doc. #1, ¶ 4.) Thus, the fundamental premise of Plaintiff's Complaint in this case makes it impossible for her to prove the essential elements of apparent agency.

### C. Plaintiff's allegations about that Choice and Buckeye Hospitality were a "single employer" or "joint employer" do not provide a basis for liability under the TVPRA.

There is no legal basis under the TVPRA for a franchisor such as Choice to be held liable as a "single employer" or "joint employer" with its franchisee. The TVPRA requires Plaintiff to show that the alleged actor *knowingly* received a benefit from actual *participation* in an alleged sex trafficking venture. *See supra.* Plaintiff does not and cannot allege that Choice, Buckeye Hospitality, or any of Buckeye Hospitality's employees knowingly received a benefit from participation in a sex trafficking venture.

Even assuming Plaintiff's "single employer" and "joint employer" allegations were sufficient to impart liability under the TVPRA, they are deficiently pled and legally insufficient under Ohio law. The Sixth Circuit has recognized that the single employer theory and the agency theory are "essentially the same." *Satterfield v. Tennessee,* 295 F.3d 611, 618 n. 6 (6th Cir. 2002) (collecting cases). "In determining whether to treat two entities as a single employer, courts examine the following four factors: (1) interrelation of operations, i.e., common offices, common record keeping, shared bank accounts and equipment; (2) common management, common directors and boards; (3) centralized control of labor relations and personnel; and (4) common ownership and financial control." *Swallows v. Barnes & Noble Book Stores, Inc.*, 128 F.3d 990, 993 (6th Cir. 1997). "Unlike the single employer doctrine, which focuses on the interrelatedness of separate corporate entities, the joint employer doctrine focuses on whether

9

separate entities jointly control each others' employees, including 'the supervision of the employees' day to day activities, authority to hire or fire employees, promulgation of work rules and conditions of employment, work assignments, and issuance of operating instructions.'" *McFarland v. Breads of the World, LLC*, No. 1:09-CV-929, 2011 WL 801815, at *11-12 (S.D. Ohio Feb. 1, 2011), *report and recommendation adopted*, No. C-1-09-929, 2011 WL 801793 (S.D. Ohio Mar. 2, 2011) (quoting *Olynyk v. CRA Occupational Health, Inc.*, 2005 WL 1459547 (N.D. Ohio June 21, 2005)).

In *McFarland*, 2011 WL 801815, at *11, the court rejected a finding of "single employer" between a franchisor and its franchisee on the grounds that the franchisor "exercised the type of minimal control over [the franchisee's] labor relations that one would expect of a franchisor." Therefore, "[s]uch control is legally insufficient to prove that [the franchisor and franchisee] operated as a single employer." *Id.* (citing *Baetzel v. Home Instead Senior Care*, 370 F.Supp.2d 631, 640 (N.D. Ohio 2005) (guidance provided by franchisor to ensure uniformity and standardization in the services provided by all of its franchisees insufficient to prove that the entities were so interrelated as to constitute a single employer). The court also readily rejected the plaintiff's contention that the franchisor in that case could be held liable as a "joint employer" with the franchisee, finding that the franchisor played no role in the franchisee's employment issues and was not involved in the day-to-day supervision of the franchisee's employees. *See id.* at *12. In so doing, the court relied upon the language of the franchise agreement at issue which provided that the franchisee was an "independent contractor" and "solely responsible" for "employment decisions." *Id.* Plaintiff's allegations in this case fail for the same reason.

Further, Plaintiff's conclusory assertions of "single employer" and "joint employer" are unsupported by facts sufficient to satisfy *Twombly/Iqbal*. *See, e.g.*, *Bricker*, 804 F. Supp. 2d at 621 (granting franchisor's motion to dismiss for lack of plausibility that the franchisor was their employer where plaintiffs merely alleged that the franchisor was a "single employer or involved in a joint venture," as such allegations were "conclusory statements" and "legal conclusions rather than factual averments"). Nowhere in Plaintiff's Complaint does she allege any specific facts that would demonstrate that Choice and Buckeye Hospitality operate as a single or joint employer.

### D. Plaintiff's request for joint and several liability is improper.

The TVPRA provides no basis for joint and several liability. *See* 18 U.S.C. § 1595. Critically, Plaintiff has not alleged a "common plan or design to commit a tortious act" among the defendants. *See Aetna Cas. & Sur. Co. v. Leahey Const. Co.,* 219 F.3d 519, 546 (6th Cir. 2000) ("Under Ohio law, '[a] 'joint tortfeasor' has been defined as one who actively participates, cooperates in, requests, aids, encourages, ratifies, or adopts a wrongdoer's actions in pursuance of a common plan or design to commit a tortious act.'"). And she cannot. Although some Defendants have a contractual franchisor-franchisee relationship, all of the locations allegedly at issue are separately owned and operated. Plaintiff's attempt to hold each of these entities liable for the alleged actions or inactions of the others is improper.

### IV. CONCLUSION

For all the foregoing reasons, Choice's Motion to Dismiss Plaintiff's claims should be granted, and all claims asserted against Choice should be dismissed with prejudice.

11

Respectfully submitted,

*/s/ Jennifer Snyder Heis*
Jennifer Snyder Heis (0076181) (Trial Attorney)
ULMER & BERNE LLP
600 Vine Street, Suite 2800
Cincinnati, OH 45202
(513) 698-5058
jheis@ulmer.com

and

Alyson Terrell (#0082271)
ULMER & BERNE LLP
65 East State Street, Suite 1100
Columbus, Ohio 43215
(614) 229-0042
(614) 229-0043 FAX
aterrell@ulmer.com

and

Sara M. Turner (*pro hac vice*)
BAKER, DONELSON, BEARMAN, CALDWELL & BERKOWITZ
Wells Fargo Tower
420 20th Street North, Suite 1400
Birmingham, AL 35203
(205) 250-8316
smturner@bakerdonelson.com

***Attorneys for Defendant***
***Choice Hotels International, Inc.***

## CERTIFICATE OF SERVICE

    The undersigned hereby certifies that a true and accurate copy of the foregoing was electronically filed through the Court's Electronic Case Filing System (CM/ECF) on the 20th day of May, 2019, and Notice will thus be sent to all registered parties, per Civil Rule 5(b)(2)(E).

                                                    */s/ Jennifer Snyder Heis*
                                                    Jennifer Snyder Heis (0076181)
                                                    *Counsel for Defendant Choice Hotels International, Inc.*