# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO
## EASTERN DIVISION

| | | |
|---|---|---|
| M.A., an individual, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO.: 2:19-cv-00849-ALM-EPD |
| | ) | |
| WYNDHAM HOTELS & RESORTS, | ) | |
| INC., *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

**PLAINTIFF'S CONSOLIDATED RESPONSE
TO THE DEFENDANTS' MOTIONS TO DISMISS**[1]

---

[1] Prior to filing, counsel for the Plaintiff gave notice to counsel for the Defendants of her intent to file the instant responses to the Defendants' various motions to dismiss as a single, consolidated response. The Plaintiff acknowledges that the filing of this consolidated response does not in any way preclude the individual Defendants from filing separate replies to the Plaintiff's consolidated response.

## TABLE OF CONTENTS

Table of Contents .......................................................................................... i-ii

Introduction .................................................................................................... 1

I.      Relevant Alleged Facts in the Plaintiff's Complaint ............................ 3

        A.      Relevant Alleged Facts Pertaining to the Plaintiff ............... 3

        B.      Relevant Alleged Facts Pertaining to the Sex Trafficking
                Venture at the Defendants' Hotels ........................................ 3

        C.      Relevant Alleged Facts Pertaining to Defendants
                Wyndham and Choice .......................................................... 4

II.     Standard of Review ............................................................................ 5

III.    The Plaintiff's Complaint if Sufficient Under the TVPRA ................. 6

        A.      The Relevant History of the TVPRA ..................................... 7

        B.      The Defendants Knowingly Benefited Financially in
                Violation of § 1595 ............................................................. 10

        C.      The Movants Knew or Should Have Known of
                Their Respective Participation in a Sex Trafficking Venture 12

IV.     The Plaintiff's Complaint Meets All Other Pleading Requirements  19

        A.      The Complaint Meets the Requirements of *Iqbal / Twombly*
                and Therefore Withstands a Fed. R. Civ. P. 12(b)(6)
                Challenge ........................................................................... 19

        B.      The Movants Citations to Common Law Tort Claims
                Are Inapposite .................................................................... 20

        C.      The Movants Improperly Rely on Facts Not in Evidence
                at the Dismissal Stage and Prior to Discovery .................... 21

        D.      The Complaint Does Not Rely on "Group Pleading" ........... 28

                1.      Most Cases Cited By Defendant Wyndham Do Not Apply
                        Here ..................................................................... 28

2. Defendant Wyndham's Arguably Applicable Cases Underscore The Sufficiency Of The Plaintiff's Allegations                29

3. Rule 19 Does Not Require Dismissal                31

Conclusion                32

Certificate of Service                34

COMES NOW the Plaintiff, M.A., (the "Plaintiff"), by and through the undersigned counsel, and respectfully submits the instant Consolidated Response to the Defendants' Motions to Dismiss ("Consolidated Response") in accordance with this Honorable Court's Order dated May 28, 2019. (ECF No. 57.)[1]  In support of her opposition to the Defendants' Motions to Dismiss, the Plaintiff provides the following law and argument.[2]

## INTRODUCTION

Despite the six (6) Movants' sundry protestations that the Complaint in this case is insufficient on its face, three (3) of the nine (9) Defendants, IHG, S&S Airport, and TJM Columbus found the Plaintiff's initial pleading facially sufficient and answered the Complaint. Similarly, although the Movants contend the Complaint lacks sufficient information to investigate the Plaintiff's claims or defend against them, one of the Movants, Defendant Krrish, was able to investigate the Plaintiff's claims and identify a sex trafficker working out of its hotel.

---

[1] This Consolidated Response is submitted in opposition to Defendant Buckeye Hospitality, Inc.'s ("Buckeye" or "Comfort Inn Columbus") Mot. to Dismiss the Pl.'s Compl. (ECF No. 39.); Mot. of Def. First Hotel Mgmt., LLC ("First Hotel" or "Days Inn by Wyndham - Columbus East Airport"), to Dismiss Compl. Pursuant to Fed. R. Civ. P. 10(a), 12(b)(2), 12(b)(6), and (12)(b)(7) (ECF No. 40.); Def. Columbus Hospitality, LLC's ("Columbus Hospitality" or "Crowne Plaza Columbus - Downtown, an IHG Hotel") Mot. to Dismiss (ECF No. 42.); Def. Krrish Lodging, LLC's ("Krrish" or "Days Inn by Wyndham - Grove City Columbus South") Mot. to Dismiss the Compl. (ECF No. 43.); Def. Wyndham Hotels & Resorts, Inc.'s ("Wyndham") Mot. to Dismiss (ECF No. 52.); and Def. Choice Hotels International, Inc.'s ("Choice") Mot. to Dismiss the Pl.'s Compl. (ECF No. 53.).  The Complaint names a total of nine (9) Defendants. *See* ECF No. 1, Compl. at 5-10.  As referenced herein, six (6) of the nine (9) Defendants have moved to dismiss: Buckeye, First Hotel, Columbus Hospitality, Krrish, Wyndham, and Choice (collectively, the "Movants").  Three (3) of the nine (9) Defendants have filed answers:  S&S Airport Motel, LLC ("S&S Airport" or "Days Inn by Wyndham - Columbus Airport") filed its Answer on April 22, 2019 (ECF No. 30.); Inter-Continental Hotels Corporation ("IHG") filed its Answer on May 3, 2019 (ECF No. 37.); and TJM Columbus, LLC ("TJM Columbus" or "Crowne Plaza Columbus North - Worthington, an IHG Hotel") filed its Answer on May 24, 2019 (ECF No. 54.).

[2] On June 5, 2019, the Court entered a Stipulated Protective Order regarding the required measures to protect the Plaintiff's identity as a survivor of sex trafficking and which applies to all Parties and third-parties in the case. (ECF No. 60.)  The Stipulated Protective Order (ECF No. 60.) also fully resolves and moots the following Defendants' arguments: Def. Buckeye's argument that "the Plaintiff's Complaint should be dismissed for failure to name the Plaintiff or seek leave from the Court to proceed with a pseudonym" (ECF No. 39-1 at 2-3); and Def. First Hotel's argument that the "Plaintiff's anonymity...mandate[s] dismissal" (ECF No. 40 at 4-7).  Additionally, the Stipulated Protective Order (ECF No. 60.) resolves the Plaintiff's Mot. for a Protective Order (ECF No. 44.).  Thus, this Consolidated Response does not address these arguments pertaining to the Plaintiff's identity in the Defendant Buckeye's and Defendant First Hotel's pending motions to dismiss.

This alone belies the Movants' arguments both generally and specifically, that the Complaint is insufficient on its face.

Justices of the United States Supreme Court have discussed the tremendous toll human trafficking has taken on our society and the role of the hospitality industry in facilitating human trafficking: "The private pain and public costs imposed by human trafficking are beyond contention, and motels provide an obvious haven for those who trade human misery."[3]  The hospitality industry must not be permitted to continue to knowingly benefit financially in violation of the TVPRA by facilitating sex trafficking through renting rooms to sex traffickers who local hotels and their national brand management companies knew or should have known were engaging in sex trafficking ventures.  The hospitality industry continues to fail to protect women and children who are victims of human trafficking at hotel properties by failing to develop training to prevent human trafficking, failing to implement training to prevent human trafficking, and failing to conduct audits to confirm both that training has been implemented and that human trafficking is being prevented on hotel properties.  Any such efforts on the part of these Defendants could have prevented the horrors of sex trafficking the Plaintiff suffered at their hotels.  After years of suffering in silence, the Plaintiff has found her voice to speak up about and speak out against the sexual violence she suffered at the hands of a sex trafficker working out of the Defendants' hotels.  The Movants seek to prematurely silence the Plaintiff through their motion practice and their efforts should be summarily denied.

---

[3] *City of Los Angeles, Calif v. Patel*, 135 S.Ct. 257, 2461 (2015).  (Scalia, J., dissenting, joined by Roberts, C.J. and Thomas, J.).

## I.     RELEVANT ALLEGED FACTS IN THE PLAINTIFF'S COMPLAINT

### A.     Relevant Alleged Facts Pertaining to the Plaintiff

The Plaintiff is a survivor of sex trafficking.  *See* ECF No. 1, Compl. at ¶ 3.  She is a "victim" of sex trafficking within the meaning of the TVPRA.  *Id*. at ¶ 9.  She was repeatedly coerced, usually by violent force, into commercial sex acts at each of the individual Defendants' hotels.  *Id*. at ¶¶ 49–59.  At each and every Defendant hotel, the Plaintiff showed the obvious and well-known signs of human trafficking, including physical deterioration, bruising, failing to make eye contact with others, and lengthy stays.  *Id.* at ¶¶ 53, 54.

### B.     Relevant Alleged Facts Pertaining to the Sex Trafficking Venture at the Defendants' Hotels

The Plaintiff was sold for commercial sex acts at each and every Defendant hotel.  *Id.* at ¶ 51.  At each and every Defendant hotel, the Plaintiff's trafficker requested rooms near exit doors.  *Id.* at ¶ 52.  At each and every Defendant hotel, the trash can in each particular room often contained an extraordinary number of used condoms.  *Id.*  At each and every Defendant hotel, the trafficker regularly instructed the Plaintiff to refuse housekeeping services.  *Id.*  At each and every Defendant hotel, the hotel rooms were routinely paid for in cash.  *Id.*  Each of the rooms at each and every Defendant hotel in which the Plaintiff was trafficked showed noticeable signs of sex trafficking, including bottles of lubricants, boxes of condoms, a large number of used condoms in the trash, excessive requests for towels and linens, and continued cash payments.  *Id.* at ¶ 53.

At each and every Defendant hotel, the Plaintiff saw and was seen by the hotel staff again and again.  *Id.* at ¶ 54.  Each and every Defendant hotel failed to take any action though each and every Defendant hotel's staff saw the Plaintiff's haggard and bruised appearance.  *Id.*  Staff at each and every Defendant hotel saw the Plaintiff escorted to her room by her trafficker after the

trafficker paid for the hotel rooms with cash. *Id.* At each and every Defendant hotel, the Plaintiff was subjected to physical violence in her room, including being beaten or choked, which caused the Plaintiff to scream for help. *Id.* at ¶ 55. At each and every Defendant hotel, Plaintiff's screams and the physical evidence of her beatings were ignored by the staff of each and every Defendant hotel. *Id.* at ¶¶ 54, 55. At each and every Defendant hotel, Plaintiff stayed for multiple days or weeks and was forced to commit commercial sex acts with approximately ten "johns" per day. *Id.* at ¶ 56. At each and every Defendant hotel, the Plaintiff appeared starved and was choked, beaten, and otherwise showed signs of being trafficked for sex. *Id.* at ¶ 59. Each and every Defendant hotel failed to recognize or take any action in response to the many obvious indicators that occurred at each individual Defendant hotel where Plaintiff was trafficked. *Id.* at ¶ 53.

### C.    Relevant Alleged Facts Pertaining to Defendants Wyndham and Choice

Defendants Wyndham and Choice each knew or should have known that sex trafficking regularly occurred at each of their branded Defendant hotels where the Plaintiff was trafficked for sex. *Id.* at ¶¶ 64, 91. Defendants Wyndham and Choice each signed the Code, each acknowledging the well-known and irrefutable fact that sex trafficking occurred at their respective branded hotel locations, including each of their branded Defendant hotels in which Plaintiff was trafficked. *Id.* at ¶¶ 63, 104. Armed with this knowledge that their profits were increased, in part, via revenue from sex trafficking, Defendants Wyndham and Choice each failed to take any action to cease profiting from sex trafficking at each of their branded Defendant hotels, including each of their branded Defendant hotels at which Plaintiff was trafficked for sex. *Id.* at ¶¶ 10, 17, 63, and 104.

In November 2010, Defendant Choice appeared to take steps to prevent human trafficking through the creation of a training module to educate its management and staff about the prevention of sex trafficking. *Id*. at ¶ 88. But Defendant Choice failed to properly implement the training or follow up with its branded hotels to ensure they were completing the training. *Id*. Defendant Wyndham first signed onto the Code in 2011. *Id.* at ¶ 63.

No policies, trainings, or other interventions to prevent sex trafficking were implemented by Defendants Wyndham and Choice at their branded Defendant hotels in which Plaintiff was trafficked for sex despite Defendants Wyndham and Choice each retaining the right and the obligation to exercise that type of control over each hotel in which Plaintiff was trafficked. *Id.* at ¶¶ 64, 72, 88, 91, 92, 94, and 97. Defendants Wyndham and Choice were each integrated enterprises, alter egos, joint employers, and in agency relationships with each of their branded Defendant hotels in which Plaintiff was trafficked for sex. *Id.* at ¶¶ 70, 71, and 93–103.

## II. STANDARD OF REVIEW

Federal courts are empowered to dismiss causes of action in complaints for "failure to state a claim upon which relief can be granted." *See* Fed. R. Civ. P. 12(b)(6). However, such a motion should not be brought as "a challenge to the plaintiff's factual allegations." *Golden v. City of Columbus*, 404 F.3d 950, 958-59 (6th Cir. 2005). When presented with a motion to dismiss, a court must construe the complaint in the light most favorable to the non-moving party. *Total Benefits Planning Agency, Inc. v. Anthem Blue Cross & Blue Shield*, 552 F.3d 430, 434 (6th Cir. 2008).[4] The Sixth Circuit has provided a three-step process for determining a

---

[4] The Court is not required to accept mere legal conclusions unsupported by factual allegations, *see Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), and a complaint's factual allegations "must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555 (2007). The plausibility standard "is not akin to a probability requirement" but is a "context-specific" inquiry drawing on our "judicial experience and common sense." *Iqbal*, 556 U.S. at 678, 679, (citing *Twombly*, 550 U.S. at 556, 557) (internal quotations omitted).

complaint's sufficiency under 12(b)(6), in which the trial court must: (1) accept all of plaintiff's factual allegations as true; (2) draw all reasonable inferences in plaintiff's favor; and (3) determine whether the alleged facts and inferences plausibly give rise to an entitlement to relief. *Doe v. Baum*, 903 F.3d 575, 581 (6th Cir. 2018).

### III.    THE PLAINTIFF'S COMPLAINT IS SUFFICIENT UNDER THE TVPRA[5]

The Trafficking Victim Protection Reauthorization Act (TVPRA), 18 U.S.C. § 1591, *et seq.*, criminalizes the sex trafficking of children and the sex trafficking of adults by force, fraud, or coercion. Separately, § 1595 of the TVPRA provides victims of sex trafficking with a civil remedy against the perpetrators of sex trafficking or the beneficiaries of sex trafficking. *See* 18 U.S.C. § 1595(a). Count One of the Plaintiff's Complaint, *i.e.*, "COUNT ONE Violation of the TVPRA 18 U.S.C. § 1595 (Against All Defendants)" explicitly and unequivocally states a beneficiary theory of liability against the Movants pursuant to § 1595 of the TVPRA, not a perpetrator theory of liability pursuant to § 1591. *See* ECF No. 1 at ¶¶ 105 - 109. The Plaintiff's references to § 1591(a) in her Complaint are directed toward the Plaintiff's status as a "victim" of human trafficking, *see* ECF No. 1 at ¶ 106, and the Movants' participation in a venture which they knew or should have known was engaged in sex trafficking. *See, e.g.*, ECF No. 1 at ¶¶ 105, 107.[6] Despite the Movants efforts to conflate the Plaintiff's factual allegations pursuant to her

---

[5] § III of this Consolidated Response addresses the TVPRA arguments in motions filed by Defendants First Hotel (ECF No. 40 at § III.B.); Columbus Hospitality (ECF No. 42-1 at 1-3, 5-10); Krrish (ECF No. 43 at § IV.); Wyndham (ECF No. 52 at 5-8); and Choice (ECF No. 53 at § III.). Defendant Buckeye does not specifically challenge the Plaintiff's TVPRA allegations. *See generally*, ECF No. 39-1.

[6] ¶ 105 of the Complaint "incorporates by reference each and every allegation contained in the preceding paragraphs of the Complaint as if fully set forth" in Count One, including, but not limited to the Plaintiff's allegations that each of the Movants "participat[ed] in a venture which it knew or should have known had engaged in sex trafficking." *See* ¶ 10(c) (alleging Defendant Wyndham "should have known"); ¶ 12 (alleging Defendant First Hotel "should have known"); ¶ 13 (alleging Defendant Krrish "should have known"); ¶ 15 (alleging Defendant Columbus Hospitality "should have known"); ¶ 17(c) (alleging Defendant Choice "should have known"); and ¶ 18 (alleging Defendant Buckeye "should have known"). The Plaintiff also alleges that Defendant Wyndham "should have known" about the use of its branded hotels for the facilitation of sex trafficking, including the Days Inn by Wyndham - Columbus East Airport. *See* ECF No. 1 at ¶¶ 62, 64. The Plaintiff further alleges that Defendant

stated beneficiary liability cause of action with a perpetrator liability cause of action, the Complaint clearly and sufficiently states a claim for relief under § 1595 of the TVPRA.

### A. The Relevant History of the TVPRA

Congress passed the Victims of Trafficking and Violence Protection Act in 2000 ("TVPA"). Pub. L. No. 106–386, 114 Stat. 1466 (2000) (codified as amended in Title 22, Chapter 78, and Title 18, Chapter 77, of the U.S. Code). The TVPA has been reauthorized several times in the years since including 2003, 2005, 2008, 2011, 2013, and 2017. With the enactment of the TVPA in 2000 and through its subsequent reauthorizations, Congress recognized that human trafficking constitutes "modern-day slavery." *See* Markup of H.R. 2620 before House Int'l Affairs Comm., 108th Cong., 1st Sess., at 298 (July 23, 2003) (statement of Rep. Christopher Smith). In both the text of the TVPA and the associated legislative history, Congress revealed a strong intent to provide a means of recovery for victims of sex trafficking by allowing them to pursue civil actions for human trafficking violations.

The 2003 version of 18 U.S.C. 1595(a) was a narrow remedial statute that looked solely to establish a statutory civil cause of action against perpetrators who were or could have been held criminally liable for their misconduct, to wit: "An individual who is a victim of a violation of section 1589, 1590, or 1591 of this chapter may bring a civil action against the perpetrator in an appropriate district court of the United States and may recover damages and reasonable attorneys fees." *See* Pub. L. No. 108–193, 117 Stat. 2878 (2003). Under the 2003 language, only those criminally liable under § 1591 could be held civilly liable under § 1595. However, in 2008 18 U.S.C. 1595(a) was intentionally amended with substantially different language that

---

Choice "should have known" about the use of its branded hotels for the facilitation of sex trafficking, including the Comfort Inn Columbus.

created a category of defendants that could be held liable civilly even in the absence of criminal culpability.

By amending 18 U.S.C. § 1595 in 2008 as part of the Trafficking Victim Protection Reauthorization Act ("TVPRA"), Congress required "whoever," *i.e.*, all businesses, including those in the hospitality industry, to comply with the new law or face new civil liability. *See* Amended Pub. L. No. 110–457, title II, § 221(2), Dec. 23, 2008 (the TVPRA was amended "by inserting '(or whoever knowingly benefits, financially or by receiving anything of value from participation in a venture which that person knew or should have known has engaged in an act in violation of this chapter)' after 'perpetrator'"). This amendment to the country's systemic human trafficking legislation necessitated a paradigm shift in the hospitality industry.[7] Since this amendment to the TVPRA, some businesses in the hospitality industry have elected to comply with § 1595, as amended, while others have chosen not to comply.

Compliance with the TVPRA requires businesses, including businesses in the hospitality industry, to conduct a proactive analysis to determine whether the business financially benefits from participation in a sex trafficking venture. Businesses in the hospitality industry must take affirmative steps to determine whether they financially benefit from sex trafficking - and if so, prevent sex trafficking on their properties and thus the attendant financial benefit derived from the occurrence of sex trafficking. To make this determination - to find out what they should know - brand managers and branded properties within the hospitality industry must exert some

---

[7] For example, Title VII of the Civil Rights Act of 1964, 42 U.S.C. 2000e, *et seq.*, introduced an even broader paradigm shift by requiring change nationally across all business sectors. Employers could no longer discriminate on the basis of race, religion, sex, or national origin. *Id.* Employers were of course free to maintain the status quo and continue to discriminate against their employees, but because of the new law they were liable for damages on a going forward basis for continuing to discriminate after discrimination was prohibited by law. Similarly, businesses within the hospitality industry are free to maintain the status quo pre-2008 and do nothing to determine whether they benefit financially from sex trafficking occuring on their hotel properties but choosing to maintain this status quo post-2008 following the amendment to § 1595 of the TVPRA exposes businesses in the hospitality industry to liability for their purposeful inaction and noncompliance with the law.

meaningful effort to apprise themselves of the activities - especially flagrant criminal activities - on location at their hotel properties.

It is axiomatic that the effects of sex trafficking are devastating to its victims. And it is facially evident that in amending the TVPRA in 2008, Congress attempted to address these devastating effects by providing a ten (10) year statute of limitations for sex trafficking claims because the trauma and harm sex trafficking inflicts on its victims are typically so debilitating that survivors face severe mental and emotional struggles that impact whether they decide to pursue a civil claim, sometimes for years. This ten (10) year statute of limitations accounts for survivors' understandable struggles with the decision to pursue litigation which are only compounded by the corresponding difficulties in obtaining remedies from the financial beneficiaries of sex trafficking - such as the Defendant hotels in this case, in which the Plaintiff was trafficked for sex. In light of the harsh realities of sex trafficking - both the horrors of its perpetrators' misconduct and the unimaginable trauma to its victims - Congress enacted a very broad remedial law, as of 2008, that imposed liability on businesses, such as those in the hospitality industry, that facilitate and financially benefit from sex trafficking.

The Plaintiff's assertions of the significance of this change in the statutory language are supported by well-established principles of statutory interpretation. As a general rule, when interpreting a statute one must "consider not only the bare meaning of the critical word or phrase but also its placement and purpose in the statutory scheme." *Holloway v. United States*, 526 U.S. 1, 6 (1999) (internal citation and quotations omitted); *see also Williams v. Taylor*, 529 U.S. 362, 364 (2000) ("In light of the cardinal principles of statutory construction that courts must give effect to every clause and word of a statute."). There is "a canon of construction that  remedial statutes should be liberally construed." *Peyton v. Rowe*, 391 U.S. 54, 65 (1968). This canon of

statutory construction is especially applicable to the TVPRA considering that the language of 18 U.S.C. §1595(a) was amended in 2008 to be even broader, for when a "statute is remedial in nature, its terms must be construed in a liberal fashion." *Sedima, S.P.R.L. v. Imrex Co., Inc.*, 473 U.S. 479, 499 (1985).

### B. The Defendants Knowingly Benefited Financially in Violation of § 1595

Although the law changed, these Defendants chose not to change in response. The Congressionally mandated mechanism to civilly enforce the TVPRA is explicitly stated in § 1595. Since 2008, victims of sex trafficking have been empowered to bring civil claims against whoever financially benefits from what they should have known was a sex trafficking venture. The Plaintiff has plausibly alleged these Defendants should have known they financially benefitted from their participation in a sex trafficking venture. *See, e.g.*, ¶¶ 10(c), 12, 13, 15, 17(c), 18, 62, 64, 73, and 74. Simply put, the Plaintiff's theory of beneficiary liability is expressed in her Complaint as follows: "Defendants knowingly benefited financially from the presence of traffickers at their hotel properties by consistently renting rooms where a trafficker repeatedly sold the Plaintiff for sex at Defendants' hotel properties and accordingly, participated in the trafficking venture that exploited her by the various means described herein." *See* ECF No. 1 at ¶ 108.

Since 2008 there have been at least three distinct causes of action under § 1595: 1) § 1595 perpetrator trafficking claims against a person who directly violates § 1591(a)(1); 2) § 1595 perpetrator financial beneficiary claims against a person who directly violates § 1591(a)(2); and 3) § 1595 financial beneficiary claims against a civil defendant who has not violated § 1591 at all, but who "knowingly benefits, financially or by receiving anything of value from participation

in a venture which that person *knew or should have known* has engaged in an act in violation of this chapter."  *See* 18 U.S.C.A. § 1595(a) (emphasis added).

To state either a perpetrator trafficking claim or a perpetrator financial beneficiary claim, a victim must allege actual knowledge and knowing participation in the sex trafficking venture itself because the plaintiff must prove the criminal violation of § 1591.  She must prove the defendant is a perpetrator.  A perpetrator trafficking claim requires knowing participation in the direct sex trafficking activities listed in § 1591(a)(1).  A perpetrator financial beneficiary claim requires allegations the defendant "knowingly assist[ed], support[ed], or facilitate[ed]" the direct sex trafficking violation of § 1591(a)(1) and financially benefitted therefrom.

A financial beneficiary claim, as alleged in this case, differs from the perpetrator claims in important ways.  In the 2008 amendment to the TVPRA, Congress determined that civil liability would attach to a financial beneficiary if that person or entity knew or should have known the venture in which it was engaged involved a violation of the TVPRA.  A financial beneficiary claim, therefore, need not allege knowing assistance or actual knowledge that the venture in which it participated violated the TVPRA, only that the entity should have known the venture from which it benefitted violated the TVPRA.  By providing an explicit constructive knowledge standard, Congress determined the definition of "participation in a venture" from § 1591(e)(6) did not apply to financial beneficiary claims under § 1595.  Thus, a financial beneficiary claim has three elements: (1) a knowing benefit; (2) participation in a venture; (3) that the person or entity knew or should have known the venture engaged in a violation of the TVPRA.  *See* 18 U.S.C. § 1595(a).

The availability of both a financial beneficiary claim and a perpetrator financial beneficiary claim has created confusion as litigants have stretched for cites from the scant case

11

law applying the neoteric statutory scheme. However, the distinction between the knowledge requirement in either a perpetrator claim and the constructive knowledge requirement in a financial beneficiary claim is significant in this case. Criminal cases under the TVPRA such as *United States v. Afyare*, 632 F. App'x 272, 286 (6th Cir. 2016) are inapposite to civil financial beneficiary claims because in *Afyare* the Sixth Circuit considered only the type of participation which Congress criminalized under § 1591(a)(2). As discussed, perpetrator claims alleging a criminal violation of § 1591(a)(1)–(2) do require actual knowing participation in the sex trafficking venture. A financial beneficiary claim does not require actual knowing participation in the sex trafficking venture.

### C. The Movants Knew or Should Have Known of Their Respective Participation in a Sex Trafficking Venture

The Movants misapply the legal standard of knowledge the Plaintiff must allege in this case. The legal standard stated in *Noble v. Weinstein* and cited by Defendant Wyndham is not applicable to this case. *See* ECF No. 52 at 5. The source of the appropriate legal standard in this case is 18 U.S.C. § 1595, as cited in the title of Count One of the Plaintiff's Complaint. Defendants are liable for Plaintiff's damages if they: (1) knowingly benefitted; (2) from participation in a venture; (3) that they knew *or should have known* engaged in sex trafficking. 18 U.S.C. § 1595(a) (emphasis added).

*Noble* is inapposite because the plaintiff in *Noble* did not allege that any defendant in that case "should have known" anything. *Noble* brought only perpetrator claims against the defendants in that case.[8] The plaintiff in *Noble* did not allege a single financial beneficiary claim under § 1595. As discussed above, perpetrator claims are separate and distinct from financial

---

[8] The counts pled in *Noble* were specifically: (1) "Violation of 18 U.S.C. § 1591"; (2) Participation in a Venture in Violation of 18 U.S.C. § 1591"; (3) Participation in a Venture in Violation of 18 U.S.C. § 1591"; (4) Aiding and Abetting Violation of 18 U.S.C. § 1591"; (5) Aiding and Abetting Violation of 18 U.S.C. § 1591". *See* Pl. Ex. 3, Compl., *Noble v. Weinstein*, No. 1:17-cv-09260-RWS (Feb. 20, 2018).

beneficiary claims. *See, e.g.*, *Barrientos v. CoreCivic, Inc.*, 332 F. Supp. 3d 1305, 1312 (M.D. Ga. 2018) ("...Plaintiffs' Complaint arguably alleges a cause of action against CoreCivic as both a perpetrator and as a financial beneficiary."). Because the plaintiff's claims in *Noble* alleged only that the defendants were the actual perpetrators of violations of § 1591, the plaintiff had to prove those violations against the defendants. To do so, § 1591, a criminal statute, explicitly requires a showing of at least "reckless disregard."

Section 1595 explicitly does not require a showing of "reckless disregard" and does not restrict civil suits only against defendants who have actually violated § 1591 themselves. "Reckless disregard" and "should have known" are not interchangeable levels of scienter. Reckless disregard is conscious indifference, while "should have known" is the well-known standard of knowledge, also referred to as constructive knowledge. *See Brewster v. La Quinta Inns, Inc.*, 142 F.3d 432 (6th Cir. 1998) (analyzing a hotel's duty of care under Louisiana negligence law, the Sixth Circuit explained the standard as "should have known (*i.e.*, had constructive knowledge)"). Constructive knowledge is the "[k]nowledge that one using reasonable care or diligence should have, and therefore that is attributed by law to a given person." *Constructive Knowledge*, Black's Law Dictionary (11th ed. 2019).

A defendant's knowledge of the nature of the sex trafficking venture is required for a criminal conviction under § 1591. This *mens rea* standard is referenced explicitly in the definition of § 1591(e)(4): "The term 'participation in a venture' means knowingly assisting, supporting, or facilitating a violation of subsection (a)(1)." All of the definitions in § 1591 are expressly limited to the criminal context at issue in § 1591 by subsection § 1591(e) which begins, "In this *section*..." (emphasis added).

Furthermore, while courts at times may "presume that the same term has the same meaning when it occurs here and there in a single statute," that is not an "irrebutable" presumption, but instead "readily yields whenever there is such variation in the connection in which the words are used as reasonably to warrant the conclusion that they were employed in different parts of the act with different intent." *See Envtl. Def. v. Duke Energy Corp.*, 549 U.S. 561, 574 (2007) (quoting *Atlantic Cleaners and Dyers, Inc. v. United States*, 286 U.S. 427, 433 (1932). The Supreme Court has unanimously agreed that it "understand[s] that '[m]ost words have different shades of meaning and consequently may be variously construed, not only when they occur in different statutes, but when used more than once in the same statute or even in the same section.'" *Id.* (quoting *Atlantic Cleaners and Dyers, Inc. v. United States*, 286 U.S. at 433). The Supreme Court further explained:

> The point is the same even when the terms share a common statutory definition, if it is general enough, as we recognized in *Robinson v. Shell Oil Co.*, 519 U.S. 337, 117 S.Ct. 843, 136 L.Ed.2d 808 (1997). There the question was whether the term "employees" in § 704(a) of Title VII of the Civil Rights Act of 1964 covered former employees. Title VII expressly defined the term "employee," 42 U.S.C. § 2000e(f), but the definition was "consistent with either current or past employment," 519 U.S., at 342, 117 S.Ct. 843, and we held that ***"each section" of Title VII "must be analyzed to determine whether the context gives the term a further meaning that would resolve the issue in dispute,"*** *id.,* at 343–344, 117 S.Ct. 843.

*Id.* (emphasis added). These principles are especially true when "the language at issue has a plain and unambiguous meaning with regard to the particular dispute in the case. Our inquiry must cease if the statutory language is unambiguous and 'the statutory scheme is coherent and consistent.'" *Robinson*, 519 U.S. 337, 340 (1997) (quoting *United States v. Ron Pair Enters., Inc.*, 489 U.S. 235, 240 (1989)).

The plain language of § 1595 irrefutably demonstrates that the definition of "participation in a venture" from § 1591(e)(4) cannot apply to "participation in a venture" as used in § 1595(a).

If the definition from § 1591 did apply, civil liability would be limited only against a criminal perpetrator and most of § 1595(a)—everything in parentheses—would be rendered meaningless. That is because if a person knowingly supports or facilitates a violation of § 1591(a)(1) as the definition in § 1591(e)(4) provides, that person has criminally violated § 1591(a)(2) and is in fact a perpetrator. Thus, if the definition from § 1591 applied to § 1595, a civil cause of action would only be available against "the perpetrator" and the parenthetical in § 1595(a) would mean nothing. This interpretation cannot apply because courts must "avoid a reading which renders some words altogether redundant." *Gustafson v. Alloyd Co.*, 513 U.S. 561, 574 (1995). For example,

> If "communication" included every written communication, it would render "notice, circular, advertisement, [and] letter" redundant, since each of these are forms of written communication as well. Congress with ease could have drafted § 2(10) to read: "The term 'prospectus' means any communication, written or by radio or television, that offers a security for sale or confirms the sale of a security." ***Congress did not write the statute that way, however, and we decline to say it included the words "notice, circular, advertisement, [and] letter" for no purpose.***

*Gustafson v. Alloyd Co.*, 513 U.S. 561, 574–75 (1995) (emphasis added). *See also United States v. Ballinger,* 395 F.3d 1218, 1236 (11th Cir.2005) ("statutes should be construed so that 'no clause, sentence, or word shall be superfluous, void, or insignificant.'" (quoting *United States v. Aldrich*, 566 F.3d 976, 978–79 (11th Cir. 2009)). The words "should have known" in § 1595(a) were not included by Congress for no purpose.

Defendants repeatedly elide the specific and clear differences between criminal liability and associated civil claims against perpetrators under § 1591 and civil liability of beneficiaries under § 1595. In order to state a claim, the Plaintiff must merely allege that Defendants should have known they were benefitting financially from a sex trafficking venture. The Plaintiff has so alleged.

Defendants also argue the Plaintiff cannot show "some participation in the sex trafficking act itself[.]"  *Noble v. Weinstein*, 335 F. Supp. 3d 504, 524 (S.D.N.Y. 2018).  As discussed herein, in order to state a financial beneficiary claim the Plaintiff does not have to show that the Defendants participated in any sex trafficking act itself.  Again, the Defendants attempt to blur the lines between the civil and criminal statutes and blur the lines between very different cases.

The two cases from the Southern District of New York involving Harvey Weinstein (the "Weinstein Cases") are completely inapposite to the case at hand, particularly with regard to the standards of knowledge or participation in a sex trafficking venture required for civil liability in this case.[9]

As discussed herein regarding *Noble*, the Weinstein Cases allege only perpetrator claims, which require alleging a direct violation of § 1591, criminal conduct.  A direct violation of § 1591 requires knowledge or reckless disregard.  A financial beneficiary claim under § 1595, however, requires only that the financial beneficiary "should have known" (or had constructive knowledge) the venture was violative of § 1591, *i.e.*, that the venture involved unlawful sex trafficking.  There are no claims in the Weinstein Cases that allege a defendant is civilly liable for the criminal conduct of another solely because the defendant benefitted financially from a venture the entity should have known involved sex trafficking.

In addition to this important legal distinction, there are important factual distinctions between the Weinstein Cases and this case wherein suing movie studio executives for sex trafficking is appreciably different than suing Defendants in the hospitality industry for the provision of hotel rooms to a sex trafficker and financially benefitting from doing so.  As courts, and the hospitality industry itself, have acknowledged, sex trafficking occurs in hotel rooms

---

[9] *See Noble v. Weinstein*, No. 1:17-cv-09260-RWS (filed Feb. 20, 2018); *Canosa v. Ziff*, No. 1:18-cv-04115-PAE (filed Oct. 4, 2018).

throughout America.  There is insufficent data for the proposition that sex trafficking occurs in major movie studios throughout America.  Thus, there was a known risk legally (via the financial beneficiary claim under the TVPRA) and a known risk factually (via the prevalence of sex trafficking in hotels) which the Movants ignored.

In *Ricchio v. McLean*, 843 F. 3d 553, 555-556 (1st Cir. 2017), the First Circuit accepted the allegations in a sex trafficking victim's complaint that renting hotel rooms which are used for sex trafficking can constitute "knowingly benefits" under § 1595.  Here, the sex trafficking venture which exploited the Plaintiff took place in the hotel rooms owned and/or operated by the Movants.  The sex trafficking venture is inextricably intertwined with the Movants the provision of hotel rooms and consequential financial benefits from the provision of hotel rooms in which the sex trafficking of the Plaintiff occurred.

Movants also cite the Sixth Circuit soccer-team hypothetical from *United States v. Afyare* as a basis to attack the Plaintiff's Complaint.  *See, e.g.*, ECF No. 42-1 at 7.  *Afyare* merely states analogously that under the criminal provisions of § 1591(a)(2), Congress did not intend to "target soccer players who turn a blind eye to the source of their financial sponsorship."  *United States v. Afyare*, 632 F. App'x 272, 286 (6th Cir. 2016).  However, under the constructive knowledge or "should have known" standard applicable to financial beneficiary claims under § 1595(a), Congress in fact did target those who turn a blind eye to the source of their income if that income derived from a sex trafficking venture via § 1595.  At most, *Afyare* stands for the proposition that criminal liability will not follow sex trafficking money to all the potential persons or entities those proceeds may reach after the sex trafficking venture has been completed.

The hospitality industry is a very different posture to the hypothetical soccer team.  None

of the Defendants in this case are non-profit entities or sponsors of one another. None of the Defendants lacked information about the occurrence of sex trafficking in the hospitality industry generally or the occurrence of sex trafficking at their hotel properties.

The alleged facts in this case seeking to hold Defendants liable are very different than holding a movie studio (or further removed, a soccer team) liable for sex trafficking unrelated to their daily business operations. In those examples the entities were organized to make movies or play soccer. These Defendants are in the business of renting hotel rooms, and in the instant matter, to a sex trafficker so that the sex trafficker was able to comfortably advertise the sale of the Plaintiff for sex in their hotel rooms and so that johns would feel secure in the knowledge that they could frequent the Defendants' hotel properties to purchase sex with no repercussions. These Defendants know sex trafficking occurs in hotel rooms and in their hotel rooms and they directly participated in the sex trafficking venture by harboring it. However, the threshold for liability in this case is simply premised on whether Defendants should have known about the sex trafficking venture operating out of their hotels for which they provided a venue and from which they financially benefitted.

The Defendants' motions to dismiss in this case indicate that their only real defense is that their participation in a sex trafficking venture, by renting rooms to the sex trafficking venture and financially benefitting from those rentals, cannot amount to liability because they turned a blind eye to sex trafficking in their businesses. While that kind of willful blindness is no doubt the industry status quo, Congress determined in 2008 that willful blindness was no longer a defense to liability under § 1595. *See also Global-Tech Appliances v. SEB*, 131 S. Ct. 2060, 2070 (2011) (applying the established criminal law doctrine in the civil context in a patent case and stating, "It is also said that persons who know enough to blind themselves to direct

proof of critical facts in effect have actual knowledge of those facts.") (internal citations omitted).

### IV.     THE PLAINTIFF'S COMPLAINT MEETS ALL OTHER PLEADING REQUIREMENTS

In addition to their specific TVPRA arguments, the Movants make several generalized attacks on the Plaintiff's Complaint as well as some specific arguments also unrelated sex trafficking.  The Plaintiff addresses those arguments *infra*.

### A.     The Complaint Meets the Requirements of *Iqbal* / *Twombly* and Therefore Withstands a Fed. R. Civ. P. 12(b)(6) Challenge

Several Movants express a general dissatisfaction with the allegations in the Complaint independent of their analysis of the Complaint through the lens of the TVPRA.  These Movants argue that the Plaintiff's Complaint must be dismissed because the alleged facts lack specificity or are conclusory.   For example, Defendant Buckeye, despite the Answers filed by its Co-Defendants, makes an unadorned Fed. R. Civ. P. 12(b)(6) argument which it summarizes as follows, "There is no way for Defendant Buckeye to effectively defend themselves against this complaint because there is no way to verify any of this without the Plaintiff pleading more facts."[10]

To survive a motion to dismiss under Rule 12(b)(6),  the complaint must contain: (1) enough facts to state a claim to relief that is plausible; (2) more than a formulaic recitation of the cause of action elements; and (3) allegations that suggest a right to relief above a speculative level. *Estate of Smith ex rel. Richardson v. United States*, 590 Fed. Appx. 436, 439 (6th Cir. 2012) (internal quotation marks omitted). All three requirements are met in this case.   The

---

[10] Defendant Buckeye's motion to dismiss only attacks the Complaint via a generic *Iqbal* and *Twombly* analysis, but does not mount a challenge specific to the manner in which the Complaint details its TVPRA allegations.  *See, e.g.*, ECF No. 39-1 at 3-5.

Plaintiff specifically pled facts about how and when she was trafficked, which occurred at every Defendant Hotel. *See* § II *supra*. Her allegations were certainly sufficient to put all Defendant Hotels on notice of their wrongdoing.[11] *Erickson v. Pardus*, 551 U.S. 89, 93 2197 (2007) (holding that the complaint need only "give the defendant fair notice of what the claim is and the grounds upon which it rests").

### B. The Movants Citations to Common Law Tort Claims Are Inapposite

The sole cause of action in the Plaintiff's Complaint is statutory. Nevertheless, the Movants appear to argue against tort law claims absent from the Plaintiff's Complaint. *See, e.g.*, ECF No. 40 at 9, 12 ("Hotels are not absolute insurers of guests' safety."). Since the TVPRA contains its own mechanism for civil liability via 18 U.S.C. § 1595(a), any discussion of common law jurisprudence sounding in tort law claims not advanced in this case is a non-sequitur. The TVPRA was drafted in the context of extant common law and sought to enforce certain existing liabilities and fill perceived gaps in common law jurisprudence to directly combat domestic sex trafficking. *See Isbrandtsen Co. v. Johnson*, 343 U.S. 779 (1952) (there is a presumption that general statutory language incorporates established common-law principles unless a statutory purpose to the contrary is evident.) *See* also *U.S. v. Lacy*, 952 F.2d 350 (1991) (certain common law defenses may have some application to non-common law crimes except when they would eviscerate the statute).

Nevertheless, since the Movants raise the subject of common law tort claims, it is important to consider why historically there was greater responsibility proscribed to innkeepers. *See, e.g.*, ECF No. 40 at 9 (referencing "the fundamental rule of American tort law" and citing to the Restatement (Second) of Torts). This duty consists of protecting guests against unreasonable

---

[11] In Section III, *supra*, the Plaintiff responds more specifically to Defendants' argument that even if the facts were sufficient to give notice of Plaintiff's overall allegations, they fail to demonstrate a claim under TPVRA.

risk of physical harm, and providing first aid after knowledge or reason to know that a guest is ill or injured, and, "to care for them until they can be cared for by others." *See* Restatement (Second) of the Law of Torts, § 314A (2). At common law, the degree or kind of care required of an innkeeper "is the highest kind of care known to the law, like that required of a common carrier, and it is imposed by public policy." *Fuller v. Coats*, 18 Ohio St. 343, 348 (1868). The source of the innkeeper's liability still holds true in that "the wayfaring traveler...exposed on his journey … ha[s] little protection when [seeking] at night temporary refuge at the wayside inns … and [that] hence there grew up the salutary principle that a host owed to his guest the duty not only of hospitality, but also of protection." *Crapo v. Rockwell*, 48 Misc. 1, 94 N. Y. Supp. 1122 (1905). Under Ohio law specifically, the once respected innkeeper owes "a standard of ordinary care in providing security for its guests [and] [i]f there are special circumstances such as previous assaults in the motel or that the motel is located in a high crime area, ordinary care may require additional security measures." *Meyers v. Ramada Inn of Columbus* 14 Ohio App.3d 311, 313 (10th Dist. 1984).[12] The Complaint sets forth myriad examples of inadequate guest safety that would create liability for the Defendants under a traditional analysis of an innkeeper's duties, but certainly allege liability pursuant to the TVPRA as discussed herein.

### C.   The Movants Improperly Rely on Facts Not in Evidence at the Dismissal Stage and Prior to Discovery

As previously discussed in § III *supra*, the Plaintiff alleges that each and every Defendant is liable pursuant to the TVPRA's financial beneficiary civil remedy created by 18 U.S.C. § 1595(a) in part because Defendants Choice and Wyndham knew or should have known for years that sex traffickers, including the Plaintiff's trafficker, were routinely using their brand hotel

---

[12] Defendant First Hotel cites to *Malone v. Courtyard by Marriott* 74 Ohio St.3d 440 (Sup. Ct. Oh. 1996). *See* ECF No. 40 at 10. This case can be distinguished in that the opinion was rendered after a jury trial in which the only reliable accounts regarding what information was relayed to the hotel staff involved vague noise complaints.

21

properties to host or harbor sex trafficking ventures as indicated in the Plaintiff's Complaint by the numerous, documented accounts of sex trafficking at the Defendants' branded properties. *See* ECF No. 1 at ¶¶ 61-65, 87-88.  Accordingly, as the Plaintiff has outlined in detail throughout this Consolidated Response, the Complaint sufficiently states a claim for which relief can be granted under the TVPRA against the brand manager Defendants, Choice and Wyndham.  *See, e.g.*, § III, *supra*.  The Plaintiff alleges that Defendants Choice and Wyndham are each directly liable to the Plaintiff as financial beneficiaries from sex trafficking but also are each vicariously liable to the Plaintiff as financial beneficiaries of sex trafficking by virtue of the conduct of their agents at their respective branded properties where the Plaintiff was trafficked for sex.  *See* ECF Doc. 1 at ¶¶66-72, 91-104, 107-108.  In their motions, Defendants Choice and Wyndham each self-servingly seek to define their respective relationships with their respective branded properties as exclusively the legal relationship between a franchisor and a franchisee.[13]  *See* ECF No. 52 at 1, 4-5 and ECF Doc. 53 at 1.  This so-called "franchisor / franchisee" designation is not found anywhere on the face of the Plaintiff's Complaint nor is it properly considered in a review of the Plaintiff's claims at the dismissal stage because the argument necessarily relies on evidence, *i.e.*, the actual, legal relationship among and Defendants asserting this "franchisor / franchisee" designation or defense as dispositive.  For example, in a footnote to its motion to dismiss, Defendant Choice goes so far as citing specific contractual provisions which Defendant Choice alleges are contained in its franchise agreement with Defendant Buckeye as a basis for dismissing the Plaintiff's Complaint. *See* ECF Doc. 53 at 7.  Any such agreement is evidentiary by definition, beyond the four corners of the Complaint, and otherwise not part of the record before the Court.

---

[13] Wyndham alleges it is the ultimate parent company of the franchisor. *See* ECF Doc. 52 at 1.  This assertion obviously requires factual development and cannot be accepted on its face as a basis for dismissal.

Beyond this fatal flaw in Defendants Choice and Wyndham's "franchisor / franchisee" arguments, even if the Court were to evaluate the argument on its merits, it still fails.  It is well established under Ohio law that a franchisor may be vicariously liable for a franchisee's conduct under recognized agency principles.[14]  *See Cooley v. Valero Energy Corp.*, 2012 U.S. Dist. LEXIS 40291, *11 (S.D. Ohio, Mar. 20, 2012) (internal citations omitted).  Therefore, Choice and Wyndham's separate allegations that a "franchisor / franchisee" agreement exists between the brand manager Defendants and their respective branded properties does not alone preclude the existence of a principal-agent relationship between them.  *See* ECF Doc. 52 at 1, 4-5 and ECF Doc. 53 at 1.  To determine whether a principal-agent relationship exists between Choice or Wyndham and their respective branded properties, the Court should consider the same factors to determine agency as in the absence of any "franchisor / franchisee" relationship.  Under Ohio law, the determinative factor in deciding whether an agency relationship exists between a franchisor and a franchisee is the degree of control the franchisor has over the operations of the franchisee's business.  *See Cooley*, 2012 U.S. Dist. LEXIS 40291 at 11-12.  Whether the degree of control exerted is sufficient to establish an agency relationship in this case is a question for the trier of fact and is not properly considered pre-discovery without any factual development.

In denying a motion for summary judgment filed by Choice in this District, the court held that a franchisor (Choice) may be held liable for the franchisee's misconduct under applicable principles of agency.  *See Ross v. Choice Hotels Int'l, Inc.,* 882 F. Supp. 2d 951, 956 (S.D. Ohio 2012).  More specifically, in a case involving the alleged financial benefit from a sex trafficking venture at one of their branded motel properties in violation of Alabama's anti human trafficking

---

[14] Even Defendant Choice's own authority supports the proposition that a franchisor may be liable for a franchisee's conduct.  In its Motion to Dismiss, Defendant Choice cites the Court to *Starks v. Choice Hotels Int'l*, 887 N.E.2d 1244, 1246 (Ohio Ct. App. 2007) wherein a *pro se* Plaintiff sued the wrong people, in the wrong place, for a wrong that did not exist.  *See* ECF No. 53 at 1.  The portion of the referenced holding which Choice failed to include is the critical phrase that franchisors are not liable for the acts of their franchisees "unless an agency relationship exists."

statute, an Alabama trial court denied Choice's motion to dismiss, *see* Pl.'s Ex. 1, after Choice raised the same or similar "franchisor / franchisee" arguments it has now raised in the instant case. *See* Pl. Ex. 2. In opposition to Choice's motion to dismiss in the Alabama case, the plaintiff submitted to the trial court an article co-authored by Defendant Choice's general counsel and trial counsel in that case (and its trial counsel in this case) in which Choice's lawyers agreed that courts have recognized at least "two paths in cases where franchisors have been found liable under an agency theory" for actions of franchisees.[15] The article explains a franchisor can either create an actual agency relationship with its franchisee by exerting day-to-day control over the franchisee or the franchisor can create an apparent agency with a franchisee if a plaintiff reasonably believes the franchisor controls the operation of the business.[16] Nevertheless, Defendant Choice now attempts to persuade this Court that the Plaintiff's theories of liability against Choice are not valid simply because of its conclusory allegation that it is a franchisor uninvolved in the day-to-day operations of the franchisee hotel, Defendant Buckeye, without offering any evidentiary basis.

Defendants Choice and Wyndham are businesses in the hospitality industry that manage and operate hotel brands including their respective Defendant branded properties in Columbus, Ohio where the Plaintiff was trafficked for sex. *See* ECF No. 1 at ¶¶ 10, 17-18, 64, 91. Self-asserted franchisors, like Defendants Choice and Wyndham, can also be liable for a franchisee's violations of federal law under a theory of agency. *See Cooley* 2012 U.S. Dist. LEXIS 40291, at *20; *Thomas v. Freeway Foods*, 406 F. Supp. 2d 610, 619 (M.D.N.C. 2005).

---

[15] *See* Pl. Ex. 2 at Ex. 1, Sara Turner and Stuart M. Kreindler, *Franchisor Liability for Franchisee Actions*, Sept. 19, 2011, *available at* https://www.bakerdonelson.com/Franchisor-Liability-for-Franchisee-Actions-09-19-2011. Defendant Choice Hotels' then Senior Counsel, Stuart M. Kreindler co-authored the article included with the submission; therefore, it would be admissible under Federal Rule of Evidence 801(d)(2). *Id.*
[16] *Id.*

Courts have also held that self-described franchisors, like Defendants Choice and Wyndham, can be directly liable if the franchisor retains responsibility for an aspect of franchisee's operations. *See, e.g., Kosters v. Seven-Up Co.,* 595 F.2d 347, 353 (6th Cir. 1979) (holding that a franchisor can be found liable for breach of warranty when the franchisee sells a defective product, which gave the intended impression that the franchisor was responsible for and stood behind the product); *Whitten v. Kentucky Fried Chicken Corp.*, 570 N.E.2d 1353, 1357 (Ind. Ct. App. 1991) (negligent selection by franchisor of items a franchisee will use in its business operations can lead to direct liability against the franchisor); *see also O'Boyle v. Avis Rent-A-Car Sys., Inc.,* 78 A.D.2d 431, 439-440 (2d Dept. 1981) (affirming a jury verdict against franchisor and franchisee in an action arising out of an automobile accident caused by an unlicensed, underage employee who drove a car off the franchisee's premises, where testimony established that the franchisor's representatives had frequently observed underage employees driving company vehicles around the premises); *Vaughn v. Columbia Sussex Corp.*, 1992 U.S. Dist. LEXIS 820, *5-6 (S.D.N.Y. Jan. 28, 1992) (denying a summary judgment motion brought by franchisor in an action arising out of the plaintiff's slip and fall on a wet floor in a franchisee's lobby on grounds that the franchisor was involved in the training of the franchisee's employees, the construction of the franchisee's building, and it reserved the right to inspect the franchisee's property and order upgrading at any time); and *Hilton v. Holiday Inns, Inc.,* 1990 U.S. Dist. LEXIS 9466, *8-9 (S.D.N.Y. Aug. 1, 1990) (denying a summary judgment motion brought by the franchisor in a damages action concerning an accident involving a shuttle bus operated by the franchisee's employee on the basis that the franchisor required its franchisees comply with the franchisor's company standards manual).

In the instant case, Defendant Choice, after public pressure, assumed the duty to set policies and procedures relative to how its franchisees should prevent sex trafficking on its branded properties.  *See* EFC No. 1, Compl. at ¶ 88.  The Plaintiff alleges that Defendant Choice failed or otherwise refused to implement its own or other appropriate policies and procedures because it valued financially benefitting from sex trafficking over the safety of victims of sex trafficking and compliance with the TVPRA.  *Id*.  Specifically, the Plaintiff alleges that in November 2010, after an advocacy group petitioned Defendant Choice to develop and implement policy changes to prevent sex trafficking at Choice branded hotels, only then did Choice finally work with End Child Prostitution, Pornography and Trafficking of Children for Sexual Purposes ('ECPAT-USA') "to develop a training module to educate its management and staff in the prevention of sex trafficking."  *Id*.

Defendants Choice and Wyndham separately argue that the responsibility for preventing the sex trafficking of the Plaintiff at their branded hotels in Columbus, Ohio, was exclusively borne by their branded hotels, Defendants Buckeye, S&S, First Hotel, and Krrish, respectively.  *See, e.g.*, ECF Doc. 53 at 1, 5, 7.  These arguments lack the factual support in the record before the Court which they necessarily require and also directly contradict or ignore the Plaintiff's allegations that Defendants Choice and Wyndham separately assumed responsibility to implement processes and procedures to prevent human trafficking in their respective branded hotels.  *See* ECF No. 1 Compl. at ¶¶ 63, 88.  Therefore, each of these Defendants' self-serving assertions that neither Defendant brand manager had any control or reserved no control over their Defendant hotel brands to prevent sex trafficking, specifically the sex trafficking the Plaintiff suffered is a question of fact that will be tested in in the course discovery and is prematurely raised in motion practice at the dismissal stage.

The Plaintiff separately contends that Defendants Choice and Wyndham are joint employers because of the brand specific controls that each separately requires their branded hotel properties to follow, they are each a joint employer of the staff at their respective branded hotels. *See* ECF Doc. 1 at ¶¶ 67-70, 99-102. Like the control test for determining agency, when applying a joint employer test courts focus on the entities' relationships to an employee or class of employees, where a staff member may be employed onsite by one entity but her work is subject to control by another entity offsite. Thus, two (2) entities may both be a worker's employer if they share or co-determine those matters governing the essential terms and conditions of employment. *See*, *Carrier Crop. v. NLRB*, 768 F.2d 778 (6th Cir. 1985); *Sizova v. Nat'l Inst. Of Standards & Tech*., 282 F.3d 1320, 1330 (10th Cir. 2002). Courts also examine whether an entity is an employer pursuant to agency principles where one entity consents to act on behalf of another and is subject to the other's control. *See Deal v. State Farm County Mut. Ins. Co*., 5 F.3d 117 (5th Cir. 1993). But as with Defendants Choice and Wyndham's arguments regarding "franchisor / franchisee" liability, their arguments challenging the Plaintiff's allegations regarding joint employer status in relation to each of their Defendant hotels requires factual development to overcome and which has not yet occurred.

Here, the Parties have yet to engage in any discovery that would support Defendant Choice and Wyndham's separate conclusory allegations that as self-declared "franchisors" neither Defendant brand manager maintained any control over the day-to-day operations of their respective branded properties in Columbus, Ohio. Similarly, the Parties have conducted no discovery on whether Defendant Choice or Defendant Wyndham exercise control over employees at their respective Defendant branded hotels such that either is considered a "joint

employer."  Therefore, Defendants Choice and Wyndham's "franchisor / franchisee" and "joint employer" arguments in their motions to dismiss are due to be denied.

### D. The Complaint Does Not Rely on "Group Pleading"

#### 1. Most Cases Cited By Defendant Wyndham Do Not Apply Here

Defendant Wyndham contends generally that the Plaintiff has improperly "grouped" the Defendants in this case.  *See* ECF No. 52 at 4-5.  Defendant Wyndham ignores the special meaning of the term "group pleading," which is a term of art that applies in fraud cases within the framework of Rule 9(b) and the heightened pleading standard in cases alleging fraud.  *Id.* The Plaintiff does not allege fraud.  Thus, Defendant Wyndham's discussion of "group pleading" is an attempt to shoehorn inapplicable reasoning into their facial attack on the Complaint.  *See id.* (citing *Gamrat v. Allard*, 320 F. Supp. 3d 927, 942 (W.D. Mich. 2018) (discussing "group pleading" as a term of art in the context of fraud cases and the heightened pleadings standards imposed by Rule 9(b), even though the Plaintiff does not allege fraud in this matter); *United States ex rel. Takemoto v. Nationwide Mut. Ins. Co.*, 674 Fed. Appx. 92, 95 (2d Cir. 2017) (discussing "group pleading" as a term of art in fraud cases and noting that the statutory language at issue required individualized pleading, unlike some fraud statutes which do not).

Separately, several of Defendant Wyndham's cited cases address complaints that stated claims pursuant to 42 U.S.C. § 1983 and named individual government employees as individuals.  *See id.* (citing *Mhoon v. Metro. Gov't of Nashville & Davidson County, Tennessee*, No. 3:16-cv-01751, 2016 U.S. Dist. LEXIS 148301, *6, 2016 WL 6250379 (M.D. Tenn. Oct. 26, 2016) (analyzing constitutional claims against individuals pursuant to 42 U.S.C. § 1983, which requires a plaintiff to allege that any individual named was personally involved in the alleged constitutional deprivations); *Zola H. v. Snyder et al.*, No. 12-14073, 2013 U.S. Dist. LEXIS

125199 *24-27, 2013 WL 4718343 (E.D. Mich. Sept. 3, 2013) (finding, again in the context of Section 1983 litigation against state entities, officials, and individuals, that a complaint which addresses all the defendants collectively and does not allege specific conduct of any defendant separately from the others falls short of the Rule 8 notice standard); *Safari Childcare, Inc. v. Penny*, No. 17-C-8547, 2018 U.S. Dist. LEXIS 147943, *6, 2018 WL 4144637 (N.D. Ill. Aug. 30, 2018) (citing to *Colbert v. City of Chicago*, 851 F.3d 649, 657 (7th Cir. 2017) and correctly stating the general rule -- wholly inapplicable in this case -- that "pleading a government employee's liability under § 1983 'requires [allegations of] personal involvement in the alleged constitutional deprivation.'"); *Harrison v. Wexford Health Sources, Inc.*, No. 1:17-cv-01383-JBM, 2018 U.S. Dist. LEXIS 16375, * 6-8, 2018 WL 659862 (C.D. Ill. Feb. 1, 2018) (addressing Section 1983 claims for abuse by prison guards and finding the individual allegations were insufficient to state with required level of specificity which individual committed which unconstitutionally impermissible act).  Notably, each of these cases acknowledges that for various reasons -- including Eleventh Amendment concerns -- lawsuits asserting constitutional claims against individual government employees demand allegations beyond those which suffice in other types of claims.  And even in Section 1983 cases, courts have denied motions to dismiss in situations where a complaint's alleged facts suggest a "common knowledge" of the risk to Plaintiff.[17]

### 2.    Defendant Wyndham's Arguably Applicable Cases Underscore The Sufficiency Of The Plaintiff's Allegations

Two cases cited by Defendant Wyndham do not fall into the categories of 1983 cases or fraud cases.  *See Del Castillo v. PMI Holdings N. Am. Inc.*, No. 4:14-CV-3435, 2015 U.S. Dist.

---

[17] *See, e.g., Q.F. v. Daniel*, No. 17-10983, 2019 WL 1546686, at *7-9 (11th Cir. Apr. 9, 2019) (holding allegations were sufficient to allege officials, including some who were not on site or operating the facility, disregarded known risks and ignored a risk of violence to the plaintiff inmate).

LEXIS 80301, *19-20, 2015 WL 3833447 (S.D. Tex. June 22, 2015) (addressing insufficiency of complaint's allegations where three defendants "[were] not even mentioned in the body of the complaint, save where Plaintiffs list information about how to serve them" and "[t]he only allegations that could plausibly apply to them are allegations directed at all 28 Defendants"); *Ingris v. Borough of Caldwell*, No. 14-855 (ES), 2015 U.S. Dist. LEXIS 74255, *23-25, 2015 WL 3613499 (D.N.J. Jun. 9, 2015) (addressing complaint in which "Plaintiff simply incorporated all of his previous allegations by reference, set forth a list of the defendants he intended to include in each count, and then pled a series of legal conclusions, alleging in each instance that 'all defendants named in this count' engaged in the conduct at issue"). Neither of these cases applies because in the instant case, Defendant Wyndham is "mentioned in the body of the complaint." *Del Castillo*, at *19; *see also* Compl. ¶¶ 10, 60-72. (setting forth allegations specifically with regard to Defendant Wyndham, in addition to the allegations addressing Defendant Wyndham's knowledge as alleged in the paragraphs concerning Wyndham-branded properties).

Rather than "grouping" Defendant Wyndham with other defendants, the Complaint instead makes specific allegations to put Defendant Wyndham on notice of how it is alleged to have violated the statute by citing particular bases of knowledge and timelines well beyond the basic requirements of Fed. R. Civ. P. 8. Notably, the Complaint includes allegations about the minimum period of time during which Defendant Wyndham has known of sex trafficking, and the basis for Wyndham's knowledge. *See* Compl. at ¶ 62 (alleging Defendant Wyndham and the Days Inn by Wyndham Defendants knew or should have known that pimps and sex traffickers use hotels, including the Days Inn by Wyndham branded hotels, to facilitate the trafficking of women and children for sex because, for example, "from 2006 to 2011, members of the Crips

gang in San Diego, California ran a child sex trafficking ring of approximately sixteen (16) girls out of various area hotels" and "[t]wo (2) of the properties on which many of the tragic occurrences of child sex trafficking took place were Defendant Wyndham branded properties."). As another example, the Complaint alleges that when Defendant Wyndham undertook to participate in measures purportedly directed at curbing human trafficking at its Wyndham-branded properties, even though "Defendant Wyndham's adoption of the Code appears to have been nothing more than a strategic maneuver through which it sought a shield against liability but not a sword against human trafficking." *See* Compl. ¶ 63. These allegations go well beyond "group pleadings" or any other notice concerns which Fed. R. Civ. P. 8 is intended to protect against.

### 3. Rule 19 Does Not Require Dismissal

Defendant First Hotel offers the converse of Defendant Wyndham's misplaced "group pleading" arguments by contending the Plaintiff did not group *enough* Defendants in her Complaint and asserts that an entity named "MGH Hospitality Ltd." ("MGH Hospitality") is a necessary party. *See* ECF No. 40 at 16-18. Further, the mere fact that the Plaintiff did not include MGH Hospitality in her Complaint is not grounds for dismissal.[18] Defendant First Hotel's argument points to Fed. R. Civ. P. 19(a), which permits dismissal of an action only *after* the court determines that a person described should be joined but cannot be. *Three Rivers Cablevision, Inc. v. Pittsburgh*, 502 F. Supp. 1118, 1137 (W.D. Pa 1980). The rule imposes "no burden on the plaintiff in the first instance to take the initiative to join such a party" and dismissal is "a last resort measure to be taken only when for reasons of jurisdiction or venue such a person cannot be brought into the action." *Id*.

---

[18] The Plaintiff is not reflexively opposed to joining additional parties, and is considering whether it is in her interest to do so with respect to the party identified by Defendant First Hotel.

While Plaintiff may confirm through discovery that additional or necessary parties should be included, Plaintiff does not find MGH an indispensable party as it relates to the trafficking events and failures that occurred on Defendant First Hotel's watch and operation at this time. Whether or not MGH is brought in as a party will have no bearing on the wrongdoing alleged against Defendant First Hotel.  Instead, even by the allegations against MGH would address a different time period when MGH allegedly owned and operated the property on Brice Road.

## **CONCLUSION**

The Plaintiff's Complaint thoroughly and robustly states the factual basis for her claim and otherwise properly states her claim for relief pursuant to § 1595 of the TVPRA.  To the extent the Court has any reservations about any aspect of the Plaintiff's Complaint and is inclined to grant some or all of the Movants' requested relief, the Plaintiff respectfully requests that the Court grant any dismissals without prejudice and with leave to amend.  However, as the Plaintiff has asserted throughout this Consolidated Response, the Movants' requests for dismissal in unfounded and premature and contradicted by the face of the Complaint.  This is especially true where three (3) of the Defendants in the case have already found this Complaint facially sufficient as evidenced by their Answers on file in this case.  Accordingly, their motions to dismiss are due to be denied in their entirety.

WHEREFORE, premises considered, the Plaintiff respectfully requests that this Honorable Court deny the Movants' requests for dismissal and enter an Order denying Defendant Buckeye's (ECF No. 39.); Defendant First Hotel's (ECF No. 40.); Defendant Columbus Hospitality's (ECF No. 42.); Defendant Krrish's (ECF No. 43.); Defendant (ECF No. 52.); and Defendant Choice's (ECF No. 53.) motions to dismiss the Plaintiff's Complaint.

Done this the 10th day of June 2019.

32

Respectfully submitted,


**/s/ Steven C. Babin, Jr.**
Steven C. Babin, Jr. (0093584)
Babin Law, LLC
1320 Dublin Road, #100
Columbus, Ohio 43215
T: (614) 384-7035
E: steven.babin@babinlaws.com
*Counsel for the Plaintiff*

**OF COUNSEL:**
Kimberly L. Adams (Fla. State Bar. No.: 0014479) *admitted via pro hac vice*
LEVIN, PAPANTONIO, THOMAS, MITCHELL,
RAFFERTY & PROCTOR, P.A.
316 S. Baylen Street, Suite 600
Pensacola, Florida 32502-5996
T: 850.435.7056
F: 850.436.6056
E: kadams@levinlaw.com


Gregory M. Zarzaur (Ala. State Bar No.: ASB-0759-E45Z) *admitted via pro hac vice*
Anil A. Mujumdar (Ala. State Bar. No.: ASB-2004-L65M) *admitted pro hac vice*
ZARZAUR
2332 Second Avenue North
Birmingham, Alabama 35203
T: 205.983.7985
F: 888.505.0523
E: gregory@zarzaur.com / anil@zarzaur.com

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing was served on all counsel of record in this matter via the Court's CM/ECF system on this the 10th day of June 2019.

Gregory Paul Barwell
Jessica A. Barwell
Jud R. Mauger
WESP/BARWELL, LLC
100 East Broad Street
Suite 2350
Columbus, Ohio 43215
T: 614.456.0488
F: 614.456.0488
E: gbarwell@wesplaw.com / jbarwell@columbushospitality.com / jmauger@wesplaw.com
*Attorneys for Defendant Columbus Hospitality, LLC*

Quintin Franc Lindsmith
Victoria Flinn McCurdy
BRICKER & ECKLER LLP
100 South Third Street
Columbus, OH 43215
T: 614.227.2300
F:  614.227.2390
E: qlindsmith@bricker.com / vflinnmcurdy@bricker.com
*Attorneys for Defendant Columbus Hospitality, LLC*

Chenee M. Castruita
Douglas Paul Holthus
MAZANEC, RASKIN & RYDER CO., LPA
175 South Third Street
Suite 1000
Columbus, Ohio  43215
T: 614.228.5931
F: 614.228.5934
E: ccastruita@mrrlaw.com / dholthus@mrrlaw.com
*Attorneys for Defendant S&S Airport Motel, LLC*

Joshua James Fravel
GRIFFITH LAW OFFICES
522 N. State St
Westerville, Ohio 43082
T: 614.890.4543
F: 614.426.1114
E: josh.f@griffithlaw.org
*Attorney for Defendant Buckeye Hospitality, Inc.*

Michael R. Reed, Esq.
HAHN LOESER PARKS LLP
65 East State Street, Suite 1400
Columbus, Ohio 43215
T: 614.233.5165
F: 614.233.5184
E: mreed@hahnlaw.com
*Counsel for Wyndham Hotels & Resorts, Inc.*

Wyndham Hotels & Resorts, Inc.
℅ David S. Sager
DLA PIPER
51 John F. Kennedy Parkway
Suite 120
Short Hills, New Jersey  07078
T: 973.520.2570
F: 973.520.2550
E: david.sager@dlapiper.com
*Attorney for Wyndham Hotels & Resorts, Inc.*

Jennifer Snyder Heis
Alyson A. Terrell
ULMER & BERNE LLP
600 Vine Street
Suite 2800
Cincinnati, Ohio 45202
T: 513.698.5058
F: 513.698.5059
E: jheis@ulmer.com / aterrell@ulmer.com
*Attorneys for Defendant Choice Hotels International, Inc.*

John Frederick Stock
Thomas Kern
BENESCH FRIEDLANDER COPLAN & ARONOFF LLP
41 South High Street
26th Floor
Columbus, OH 43215
T: 614.223.9300
F: 614.223.9345
E: jstock@beneschlaw.com / tkern@beneschlaw.com
*Attorney for TJM Columbus, LLC*

Sara M. Turner
BAKER, DONELSON, BEARMAN, CALDWELL & BERKOWITZ, PC
Wells Fargo Tower
420 20th Street North, Suite 1400
Birmingham, Alabama  35203
T: 205.250.8316
F: 205.488.3716
E: smturner@bakerdonelson.com
*Attorney for Defendant Choice Hotels International, Inc.*

Samuel Neal Lillard
Mathew A. Parker
FISHER & PHILLIPS, LLC
250 West Street, Suite 400
Columbus, Ohio 43215
T: 614.453.7612
F: 614.221.1409
E: slillard@fisherphillips.com / mparker@fisherphillips.com
*Attorneys for Defendant Krrish Lodging, LLC*

Joseph L. Piccin
JOSEPH L. PICCIN CO., LLC
3010 Hayden Road
Columbus, Ohio 43235
T: 614.659.9616
F: 614.798.1935
E: JLP@joepiccin.com
*Attorney for First Hotel Management, LLC*

Steven D Strang
GALLAGHER SHARP
Gallagher Sharp
1501 Euclid Ave., 6th Floor
Cleveland, OH 44115
T: 216.241.5310
F: 216.241.1608
E: sstrang@gallaghersharp.com
*Attorney for First Hotel Management, LLC*

Judd R. Uhl
LEWIS BRISBOIS BISGAARD & SMITH LLP
909 Wright's Summit Parkway
Suite 230
Fort Wright, Kentucky 41011
T: 859.663.9830
F: 859.663.9829
E: judd.uhl@lewisbrisbois.com
*Attorney for Inter-Continental Hotels Corp.*

Bruce A Curry
Trent Michael Lee Thacker
CURRY, ROBY & MULVEY CO., LLC
30 Northwoods Blvd.
Suite 300
Columbus, OH 43235
T: 614.430.8885
F:  614.430.8890
E:  bcurry@crmlaws.com / tthacker@crmlaws.com
*Attorney for Intervenor Plaintiff American Family Insurance Company*

Gregory E. O'Brien
CAVITCH FAMILO & DURKIN LPA
1300 East 9th St., 20th Floor
Cleveland, OH 44114
T: 216.621.7860
F: 216.621.3415
E: gobrien@cavitch.com
*Attorney for Intervenor Nationwide Property & Casualty Insurance Company & Nationwide Mutual Fire Insurance Company*

/s/ Steven C. Babin, Jr.
OF COUNSEL