IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| M.A., an individual, | : | Case No.:  2:19-cv-00849 |
| | : | Judge Algenon L. Marbley |
| | : | Magistrate Judge Elizabeth Preston |
| | : | Deavers |
| Plaintiff, | : | |
| | : | |
| --vs.-- | : | |
| | : | |
| WYNDHAM HOTELS AND RESORTS, INC., et al., | : | |
| | : | |
| | : | |
| Defendants. | : | |

**REPLY MEMORANDUM OF DEFENDANT FIRST HOTEL MANAGEMENT, LLC, TO PLAINTIFF'S CONSOLIDATED RESPONSE TO DEFENDANTS' MOTIONS TO DISMISS**

Now comes Defendant First Hotel Management, LLC, ("First Hotel" or "First Hotel Management" or "Defendant"), by and through the undersigned counsel, and states the following as its Reply to Plaintiff's Consolidated Response to certain Defendants' Motions to Dismiss.

**I. First Hotel Did Not 'Participate' with Plaintiff's Captor in a 'Venture.'**

The Sixth Circuit has construed the meaning of the words "participate" and "venture" in the context of the TVPRA to mean an undertaking directed towards a single, defined end.  A hotel guest's for-profit criminal actions at the hotel do not give rise to a cause of action under the TVPRA unless the hotel had actual knowledge of the venture and profited *from the actual criminal* activity. Plaintiff's theory of liability would make hotels strictly liable for criminal activity that goes on in the hotel even when that activity is actively concealed from the hotel.  The TVPRA contemplates liability when there is some concerted plan to profit from the activity, and the Complaint in this case is devoid of any such allegations.

Plaintiff's legal position fails practical tests of statutory interpretation and application of Sixth Circuit case law. As noted by Plaintiff, "[a]ll of the definitions in § 1591 are expressly limited to the criminal context at issue in § 1591 by subsection § 1591(e) which begins, 'In this *section*.'" Plntf.'s Consolidated Response, Docket number ("Dkt.") 66, at 13. In that section, § 1591(e), the term "venture" is defined broadly as "any group of two or more individuals associated in fact, whether or not a legal entity." 18 U.S.C. § 1591(e)(6). However, in a case invoking the criminal context of this portion of the Trafficking Victims Protection Act, even where the term 'venture' is afforded broad meaning, the United States Court of Appeals for the Sixth Circuit has limited application of the term 'venture' as statutorily defined to mean actual participation in and the commission of some "'overt act' that furthers the sex trafficking aspect of the venture." *U.S. v. Afyare* (6th Cir. 2016), 632 Fed. Appx. 272, 286. In the context of a criminal prosecution, without more, evidence of co-defendants' interactions with one another by, for example, being in the same car, driving one another's cars, and dining together "is irrelevant and properly excluded." *Id.*; *see also id*. at 285, debasing any reference to a 'guilt by association' argument.

In the civil remedy provision of the Trafficking Victims Protection and Reauthorization Act, pled here, reference to the Sixth Circuit *Afyare* case remains instructive in understanding the statute's use of the term 'venture.' There, the Sixth Circuit noted that

> [a] "venture," according to Black's Law Dictionary, is "[a]n undertaking that involves risk; esp., a speculative commercial enterprise." And according to the Random House Webster's Unabridged Dictionary, a "venture" is "an undertaking involving uncertainty as to the outcome, esp. a risky or dangerous one"; or "a business enterprise or speculation in which something is risked in the hope of profit; a commercial or other speculation"; or "the money, ship, cargo, merchandise, or the like, on which risk is taken in a business enterprise or speculation." **Clearly, each of these definitions requires an undertaking of some kind directed to some defined end.**

2

632 Fed.Appx. at 279 (emphasis added). As explained in First Hotel's Motion to Dismiss, hotels receive rental revenue from every guest, regardless of a guest's purpose in staying at the hotel. Motion to Dismiss, Dkt. 40, at 7. In other words, the hotel's room rental revenue, in a fixed amount, is in no way indicative of the existence of any 'venture' between the hotel and its guest because receipt of payment for the room does not depend upon the reason the guest stays at the hotel, and is in no way tied to whether the guest receives money in a surreptitious manner by engaging in sex trafficking. The rent paid to the hotel does not increase or decrease based upon the success or failure of any criminal sex trafficking scheme. So, as supported by the Sixth Circuit's rationale in the *Afyare* case, a venture requires "an undertaking of some kind directed to some defined end." 632 Fed.Appx. at 279. The hotel's 'defined end' of providing shelter and a place to sleep stops markedly short of the criminal trafficker's 'defined end' in selling someone for sex. Thus, there is no venture present so as to invoke a hotel's liability under the TVPRA.

Plaintiff is correct in stating that the hospitality industry is very different from the "hypothetical soccer team" described in the *Afyare* opinion. *Cf*. Plntf.'s Consolidated Response, Dkt. 66, at 17-18. One unique aspect of the hospitality industry is its obligation to afford guests a right of privacy. It is doubtlessly true that all commercial premises or services, while not intrinsically dangerous, could possibly be used for nefarious ends. *See City of Los Angeles v. Patel* (2015), 135 S.Ct. 2443, at note 5. And as argued in First Hotel's Motion to Dismiss, Dkt. 40, police or security presence at a property serve to demonstrate that hotel management is not "in a venture" with guests regarding the commission of crime. *Cf*. Motion to Dismiss, Dkt. 40, at 14. A review of the Complaint itself supports the conclusion that when police are notified of concerns of human trafficking on hotel premises, by hotel staff or otherwise, there is no assurance of immediate liberation of those held captive. *Cf*. Complaint, Dkt. 1, at note 25 (restating headline

of a newspaper article as *Five Arrested After **Months-Long Investigation** Into Human Trafficking Ring*) (emphasis added). The contents of the Complaint itself thus undercut Plaintiff's gratuitous castigation of all Defendants, where the Consolidated Response states that the pending motions reveal that "their only real defense" is that they are not liable "because they turned a blind eye to sex trafficking in their businesses." Consolidated Response, Dkt. 66, at 18. It is equally plausible, however, that hotel staff informed police of suspected wrongdoing and allowed for the arrest and resulting prosecution of the trafficker. There is, as stated, no properly-pleaded or contemplated "venture" between the Defendant hotel and a criminal on its premises.

Plaintiff's position advanced in its Consolidated Response conspicuously gives no attention to the statutory term "participation" when setting up its so-called beneficiary theory of liability, in an attempt to "ensnare conduct that the statute never contemplated." *Cf. Afyare*, 632 Fed. Appx. 272, 286. The *Afyare* decision holds that for criminal liability to ensue, a defendant must "actually participate and commit some 'overt act,'" and not merely possess "negative acquiescence." *Id*. This is supported by the TVPRA's definition of the phrase "participation in a venture" which means "knowingly assisting, supporting, or facilitating a violation of subsection (a)(1)." 18 U.S.C. § 1591(e)(4). Plaintiff argues in its Consolidated Response that the parenthetical text of 18 U.S.C. § 1595(a) "create[s] a category of defendants that could be held liable civilly even in the absence of criminal culpability." Consolidated Response, Dkt. 66, at 7-8. Assuming this is true, proper candidates for this type of liability, under a sister Circuit's case law and involving the hospitality industry would be (at the pleading stage) the type of hotel operator named in the First Circuit *Ricchio* decision. There, the Complaint contained allegations of a prior course of commercial dealings between the hotel defendant and a captor/trafficker, which said parties intended to reinstate for profit, and the trafficker and hotel operator enthusiastically exchanged

4

high-fives in the parking lot about "getting this thing going again," and the trafficker's coercive and abusive treatment of the plaintiff as a sex slave was apparent. *Cf. Ricchio v. McLean* (1st Cir. 2017), 853 F.3d 553, 555. Allegations of First Hotel's purported knowledge in this case of Plaintiff's situation is decidedly different from those in *Ricchio*. Here there are no allegations of past business relationships and no indication of affirmative acts by hotel management to "getting [any]thing going again." All that is alleged is the hotel defendants' failure to protect victims, develop training, and implement appropriate measures. *See, e.g.*, Consolidated Response, Dkt. 66, at 2. The hotel's "original or primary association" with any purported trafficker is the benign purpose of renting a room. *Cf. Afyare* at 286 (the hypothetical parties' original or primary association was for playing soccer). The hotel's relationship with any alleged trafficker cannot morph into a sex trafficking venture without allegations of affirmative acts of both parties, as contemplated in *Afyare*, or the kind of acute knowledge alleged in the *Ricchio* decision.

If Plaintiff were correct and a commercial enterprise could be held civilly liable under 18 U.S.C. § 1595(a) merely because the enterprise failed to recognize that the services were rendered to a sex trafficker and his or her victim, a deluge of unintended civil liability would result. For example, conceivably a taxi-service could be liable if its driver failed to identify signs of sex-trafficking in its passengers. A fast food restaurant or diner could be liable if its waitstaff failed to recognize and report signs of sex-trafficking in its patrons. Any service industry that receives payment from the sex trafficker and fails to recognize the signs of sex trafficking could arguably be the financial beneficiary of the sex-trafficking venture. This logical end to Plaintiff's proposed theory of liability reaches the absurd. It highlights the importance of the "participation" element in 18 U.S.C. § 1595(a) and exemplifies why the Sixth Circuit Court of Appeals held that

5

"participation" required the defendant to "actually participate and commit some 'overt act'" and not merely possess "negative acquiescence." *Afyare*, 632 Fed. Appx. at 286.

**II. The Complaint Still Fails to Conform to Recognized Pleading Standards.**

Plaintiff advances unworkable and illogical theories in its Consolidated Response, efiled and docketed herein as Dkt. 66. Initially, Plaintiff posits that because three of nine defendants "found Plaintiff's initial pleading facially sufficient and answered the Complaint[,]" *id*. at 1, the Motions to Dismiss should be somehow discredited. The legal assessment, investigation, and resulting choice of any of the named Defendants, as independent economic actors, in no way affect a particular litigant's position advanced herein. It would be equally puerile if Defendants were to propose that because a majority of them (six out of nine) did not find the Complaint to contain plausible allegations, the Complaint should fail because only one-third of the Defendants chose to plead in response. This case is not to be resolved by polling the Defendants, but rather by analyzing the statutory text and applicable decisional law.

Even more enthralling is Plaintiff's contention that because one of the moving Defendants "was able to investigate Plaintiff's claims and identify a sex trafficker working out of its hotel[,]" arguments that the Complaint is facially invalid are disproven. *Id*. at 1-2. Again, it is irrelevant that (only) one of the named Defendants was able to identify Plaintiff's trafficker despite this criminal not being named in the Complaint.[1] On this record, the other eight Defendants were arguably not able to determine Plaintiff's trafficker's identity. Though here, the Court should not be guided by polling the varying Defendants' responses to the Complaint. Instead, First Hotel's

---

[1] Because Plaintiff does not, in her Consolidated Response, challenge that portion of Defendant Krrish Lodging, LLC's Motion to Dismiss (Dkt. 43) concerning the identity of Plaintiff's trafficker, First Hotel assumes the accuracy of the criminal trafficker's identity contained in Krrish's Motion. *Cf.* Krrish Motion to Dismiss, Dkt. 43, at 2. First Hotel also certainly agrees with the general statements of co-Defendant Krrish condemning criminal activity of all types, and particularly human trafficking and its abuses of, mostly, women and children. *Id*.

pending Motion to Dismiss, Dkt. 40, draws into question the legal sufficiency of the Complaint itself, and whether it contains enough (alleged) facts "to state a claim to relief that is plausible *on its face*." *Bell Atl. Corp. v. Twombly* (2007) 550 U.S. 544, 570 (emphasis added).

Nowhere in the Complaint is Plaintiff's trafficker named or otherwise identified. Simply stated, it is not Defendant's burden at the pleading stage to investigate, assess, and establish the identity of Plaintiff's trafficker. Plaintiff should have done that in the Complaint as part of an attempt to state a plausible claim for relief and to place Defendant on adequate notice of the claim advanced. As a further example, according to Plaintiff, "[a]t each and every Defendant hotel, the trafficker regularly instructed the Plaintiff to refuse housekeeping services…[and] [e]ach of the rooms at each and every Defendant hotel in which Plaintiff was trafficked showed noticeable signs of human trafficking…" Plntf.'s Consolidated Response, Dkt. 66, at 3. Without a name attached to the trafficker, under whose name the rooms were presumably registered, Defendant simply cannot adequately investigate the plausibility of these allegations.

The day after First Hotel moved to dismiss the Complaint, Plaintiff moved for a protective order. *See* Dkt. 40, 44. While the parties have subsequently agreed to terms of a Stipulated Protective Order, *see* Dkt. 60, resolution of Plaintiff's Motion for a protective order does not address, or otherwise cure, Plaintiff's failure to name her trafficker. With conceivably many thousands of guests traveling in and out of a hotel's doors each year, an aggrieved individual, such as Plaintiff, cannot plausibly allege against a hotel that some unnamed individual with whom the hotel was allegedly "in a venture" took Plaintiff to a private hotel room, thereby making the hotel responsible under a federal statute for some very bad things that happened on hotel property some four to five years ago.

7

Defendant does not wish to sound overly crass or dismissive of Plaintiff's plight and her presumed truthful status as a survivor of sex crimes, yet this is why Plaintiff's Complaint, which at first contained her identification as a pseudonym, and persists in failing to identify her criminal trafficker, must be dismissed pursuant to standards governing pleading in federal cases.

### III. Plaintiff Has Not Adequately Responded to First Hotel's Arguments Concerning Joint and Several Liability, and Necessary Parties.

Plaintiff's position advanced conflates her claimed culpability of different economic actors. As an example, Plaintiff highlights paragraph 62 of the Complaint alleging that the Wyndham franchise and its Days Inn brand know that sex traffickers use hotels based on activities of the Crips gang in San Diego, California. Once more, Defendant does not want to appear obtuse to Plaintiff's (presumably truthful) status as a victim of sex trafficking, but allegations of crime occurring over 2,000 miles away from Columbus does little to support an allegation of a venture between a hotel brand in Columbus and a sex trafficker. Defendants cannot be held to account for actions, or inactions transpiring on business premises that they each do not own, control, or have no right to control. Plaintiff's request for a favorable result on "all counts against each and every Defendant, jointly and severally," Complaint, Dkt. 1 at 35, must be stricken at the very least.

Similarly, on this record, First Hotel cannot be held to account for a prior owner and operator's conduct of the business premises at issue. Plaintiff has not plead or thus far supported any valid reason for nonjoinder of the prior owner, MGH Hospitality, Ltd. Plaintiff should be ordered to join all necessary parties in the event the matter progresses.

### IV. Conclusion

The Sixth Circuit has construed the meaning of the words "participate" and "venture" in the context of the TVPRA to mean an undertaking directed towards some single, defined end. A hotel's guests have many reasons for staying at a hotel. Some reasons are, unfortunately and often

8

unavoidably, nefarious.  The hotel's purpose is to provide a room.  That is all.  The fact that guests have a myriad of purposes, some nefarious, does not ensnare a hotel business into liability under the TVPRA.  Plaintiff's Complaint should be dismissed.

Respectfully submitted,

| | |
|---|---|
| JOSEPH L. PICCIN CO., LLC | GALLAGHER SHARP, LLP |
| */s/ Joseph L. Piccin*	 | */s/ Steven D. Strang* |
| JOSEPH L. PICCIN (0072553) | STEVEN D. STRANG (0085444) |
| 3010 Hayden Road | STEVEN A. KESLAR (0090743) |
| Columbus, OH  43235 | Sixth Floor – Bulkley Bldg. |
| Tel.:  614-659-9616 | 1501 Euclid Avenue |
| Fax:  614-798-1935 | Cleveland, OH  44115 |
| Mobile:  614-354-1099 | Tel.:  216-241-5310 |
| E-mail:  JLP@joepiccin.com | Fax:  216-241-1608 |
| **Lead Trial Counsel for Defendant First Hotel Management, LLC** | E-mail:  sstrang@gallaghersharp.com    skeslar@gallaghersharp.com |
| | **Counsel for Defendant First Hotel   Management, LLC** |

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and accurate copy of the foregoing Reply Memorandum was uploaded for electronic filing through the Court's Electronic Case Filing System (CM/ECF), and Notice will thus be sent to all registered parties, per Civil Rule 5(b)(2)(E), on this 24th day of Jun., 2019.

*/s/ Joseph L. Piccin*
JOSEPH L. PICCIN
Ohio Bar Reg. No. 0072553
**Lead Trial Counsel for Defendant
  First Hotel Management, LLC**