**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | | |
|---|---|---|
| **M.A.**, *et al.*, | : | |
| | : | **Case No. 2:19-CV-849** |
| **Plaintiffs,** | : | |
| | : | **JUDGE ALGENON L. MARBLEY** |
| **v.** | : | |
| | : | **Magistrate Judge Deavers** |
| **WYNDHAM HOTELS &** | : | |
| **RESORTS, INC.**, *et al.*, | : | |
| | : | |
| **Defendants.** | : | |

**OPINION & ORDER**

This matter is before the Court on Defendants', Buckeye Hospitality, Inc., First Hotel

Management, LLC, Columbus Hospitality, LLC, Krrish Lodging, LLC, Wyndham Hotels and

Resorts, Inc., and Choice Hotels International, Inc., Motions to Dismiss. (ECF Nos. 39, 40, 42,

43, 52, 53). For the following reasons, Defendants' Motions are hereby **DENIED.**

## I. BACKGROUND

Plaintiff, M.A., was trafficked for sex from "the spring of 2014 until August 2015."

(ECF No. 1 at ¶ 51). She alleges that this trafficking took place at several Days Inn by

Wyndham, Comfort Inn, and Crowne Plaza locations in Columbus. (*Id.*). Plaintiff now seeks to

hold these hotels liable under the Trafficking Victims Protection Reauthorization Act

("TVPRA"), 18 U.S.C. § 1595(a).

Plaintiff alleges that these hotel Defendants knew or should have known M.A.'s

trafficking was happening on their properties. Plaintiff points to behavior that she alleges hotel

staff should have recognized as signs of her trafficking: her trafficker asked for rooms near

exits, "the trash cans in the rooms in which M.A. was trafficked would contain an extraordinary

number of used condoms," and M.A. was told to decline housekeeping, the rooms "were

frequently paid for with cash."  (ECF No. 1 at ¶ 52).  M.A. asserts other "obvious signs of human trafficking" including "physical deterioration, no eye contact, and duration of stay" and "bottles of lubricants, boxes of condoms, used condoms in the trash, excessive requests for towels and linens, [and] cash payments."  (ECF No.  1 at ¶ 53).  Plaintiff alleges that, while she was at each hotel property, "the hotel staff would have or should have observed visible physical changes, such as bruising," (ECF No. 1 at ¶ 54) and that "[d]espite her desperate pleas and screams for help, after being beaten or choked at the Defendants' hotel properties, the hotel staff ignored her and did nothing to prevent the ongoing and obvious torture she endured."  (ECF No. 1 at ¶ 55). Plaintiff finally escaped in August of 2015, and her trafficker has been sentenced.  M.A. alleges that these hotel brands—Wyndham, Choice Hotels, and IHG did not take adequate measures to prevent human trafficking.

## II.  STANDARD OF REVIEW

The Court may dismiss a cause of action under Federal Rule of Civil Procedure 12(b)(6) for "failure to state a claim upon which relief can be granted."  Such a motion "is a test of the plaintiff's cause of action as stated in the complaint, not a challenge to the plaintiff's factual allegations."  *Golden v. City of Columbus*, 404 F.3d 950, 958–59 (6th Cir. 2005).  The Court must construe the complaint in the light most favorable to the non-moving party.  *Total Benefits Planning Agency, Inc. v. Anthem Blue Cross & Blue Shield*, 552 F.3d 430, 434 (6th Cir. 2008). If more than one inference may be drawn from an allegation, the Court must resolve the conflict in favor of the plaintiff.  *Mayer v. Mylod*, 988 F.2d 635, 638 (6th Cir. 1993).  The Court cannot dismiss a complaint for failure to state a claim "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."  *Id*.  The Court is not required, however, to accept as true mere legal conclusions unsupported by factual

allegations. *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009).

Although liberal, Rule 12(b)(6) requires more than bare assertions of legal conclusions. *Allard v. Weitzman*, 991 F.2d 1236, 1240 (6th Cir. 1993) (citation omitted). Generally, a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A complaint's factual allegations "must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007). It must contain "enough facts to state a claim to relief that is plausible on its face." *Id.* at 570. A claim is plausible when it contains "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

### III. LAW & ANALYSIS

M.A. has sued under the Trafficking Victims Protection Reauthorization Act ("TVPRA"). The TVPRA has two provisions relevant to this case. First, the TVPRA provides for criminal penalties set forth in 18 U.S.C. § 1591. That section provides criminal penalties for:

(a) Whoever knowingly—

(1) in or affecting interstate or foreign commerce, . . . recruits, entices, harbors, transports, provides, obtains, advertises, maintains, patronizes, or solicits by any means a person; or

(2) benefits, financially or by receiving anything of value, from participation in a venture which has engaged in an act described in violation of paragraph (1),

knowing, or, except where the act constituting the violation of paragraph (1) is advertising, in reckless disregard of the fact, that means of force, threats of force, fraud, coercion described in subsection (e)(2), or any combination of such means will be used to cause the person to engage in a commercial sex act, or that the person has not attained the age of 18 years and will be caused to engage in a commercial sex act, shall be punished as provided in subsection (b).

18 U.S.C. § 1591(a). Section 1591 defines "participation in a venture" as "knowingly assisting, supporting, or facilitating a violation of subsection (a)(1)," § 1591(e)(4), and defines "venture" as "any group of two or more individuals associated in fact, whether or not a legal entity," § 1591(e)(6).

18 U.S.C. § 1595 sets forth the standard for civil liability under the TVPRA, and provides the basis for Plaintiff's claims. That section provides:

> An individual who is a victim of a violation of this chapter may bring a civil action against the perpetrator (or whoever knowingly benefits, financially or by receiving anything of value from participation in a venture which that person knew or should have known has engaged in an act in violation of this chapter) in an appropriate district court of the United States and may recover damages and reasonable attorneys fees.

18 U.S.C. § 1595(a).

As a threshold matter, this Court addresses Defendant Krrish's argument that § 1595(a) cannot be a standalone claim. Plaintiff's Response, Krrish argues, appears to proceed on a theory that Defendants are liable for violating § 1595(a), not for committing an underlying offense under the sex trafficking statute, § 1591. Krrish relies in part on *Paguirigan v. Prompt Nursing Emp. Agency LLC*, 286 F. Supp. 3d 430, 436 n.4 (E.D.N.Y. 2017). That court did find that § 1595 "is not a standalone claim," but it did so in a footnote and without further analysis. *Id.*

The plain text of § 1595(a) requires is that the plaintiff be "a victim of this chapter." § 1595(a). The text evidences Congress's intent to broaden the behavior that can form the basis of civil liability to participation in ventures where the defendant "knew or should have known" that the venture was involved in sex trafficking. Krrish cites to a Report from the Congressional Research Service that supports this reading of § 1595. There, the Congressional Research

Service interpreted the amendments to the TVPA to "create[] civil liability both for those who face criminal liability for their profiteering and those who do not."  Cong. Research Serv., R40190, The William Wilberforce Trafficking Victims Protection Reauthorization Act of 2008 (P.L. 110-457): Criminal Law Provisions, at 16 (Jan. 29, 2009).  The court in *Plaintiff A* noted that the 2008 amendments to the TVPA "ma[de] it easier for victims of trafficking violations to bring civil suits" including by broadening the parties who could be sued for trafficking violations from only the perpetrator under the original statutory scheme to "anyone who 'knowingly benefits, financially or by receiving anything of value from participation in a venture which that person knew or should have known has engaged in an act in violation of this chapter.'"  *Plaintiff A v. Schair*, No. 2:11-cv-00145-WCO, 2014 U.S. Dist. LEXIS 197819, at *6 (N.D. Ga. Sept. 9, 2014).  The court noted that § 1595 is similar to civil remedies authorized under the RICO statute in that both require a plaintiff to "prov[e] a qualifying 'predicate act.'"  *Plaintiff A*, 2014 U.S. Dist. LEXIS 197819, at **5–6.  Here, Plaintiff alleges that she is a victim of trafficking under § 1591.  (ECF No. 1 at ¶ 106).  Elsewhere, she represents that her trafficker has been indicted and sentenced through the criminal process and that he used physical violence to force her into trafficking.  (ECF No. 1 at ¶¶ 50, 58–59).  That is sufficient to withstand a Rule 12(b)(6) motion.

## B. Civil Liability Under the TVPRA § 1595

The requirements for liability under § 1595(a) on a "beneficiary" theory can be stated as follows: (1) the person or entity must "knowingly benefit[], financially or by receiving anything of value," (2) from participating in a venture, (3) that the "person knew or should have known has engaged in an act in violation of this chapter."  § 1595(a).

*1. Knowing benefit*

This Court begins with an analysis of whether M.A. has sufficiently alleged that Defendants "knowingly benefited" financially from the venture. Defendants have disputed that merely receiving revenue from the rental of a hotel room can constitute a benefit. Krrish, specifically, alleges that the proper standard for "benefit" is the standard articulated in *Geiss v. The Weinstein Company Holdings, LLC, et al.*, Case No. 1:17-cv-09554-AKH, 2019 WL 1746009 (S.D.N.Y. Apr. 18, 2019). (ECF No. 43 at 12). That is, Plaintiff must show that the trafficker "provided any of those benefits to [Defendants] because of [Defendants'] facilitation of [the trafficker's] sexual misconduct." *Geiss*, 2019 WL 1746009, at *8.

Other cases have not required such a specific definition of "benefit." For example, in *Gilbert v. United States Olympic Committee*, the District Court of Colorado interpreted § 1595 liability premised on § 1589(b) (the forced labor provision of the statute) not to "require[] the party to benefit from the [forced] labor or services for liability to attach." *Gilbert v. United States Olympic Committee*, No. 18-cv-00981-CMA-MEH, 2019 WL 4727636, at *16 (D. Colo. Sept. 27, 2019) (citation omitted). In examining a claim on behalf of a different plaintiff in *Gilbert*, the court found that the defendant had received a benefit through "collecting money through sponsorships, licensing, grants, publicity, [and] for medals achieved at competitions." *Id.* And, in *Ratha v. Phatthana Seafood Co., Ltd.*, the court looked to the relatively small portion of seafood a seller procured from a facility that engaged in human trafficking and that the defendant never actually sold any product that was made at the facility. *Ratha v. Phatthana Seafood Co., Ltd.*, No. CV 16-4271-JFW (ASx), 2017 WL 8293174, at *6 (C.D. Cal. Dec. 21, 2017).

M.A. has alleged that Defendants rented rooms to the trafficker, and therefore benefited financially. This Court finds that the rental of a room constitutes a financial benefit from a relationship with the trafficker sufficient to meet this element of the § 1595(a) standard.

### 2. Knew or should have known the venture was engaged in trafficking

A defendant cannot be liable under 18 U.S.C. § 1595(a) unless it "knew or should have known" that the venture was engaged in sex trafficking. At least one Defendant has argued that Plaintiff has shifted her theory of the case between the time she filed the Complaint and the time she responded to the Motions to Dismiss from a theory of actual knowledge to one of constructive knowledge. (ECF No. 71 at 2). M.A.'s Complaint includes allegations of "willful blindness" against each of the Defendant hotel chains, and Count One of her Complaint states that "The Defendants knowingly benefited from participating in a venture which they knew was engaged in illegal sex trafficking in violation of the TVPRA, 18 U.S.C. § 1591(a)(2), by, inter alia, engaging in acts and omissions that were intended to support, facilitate, harbor, and otherwise further the trafficker's sale and victimization of the Plaintiff for commercial sexual exploitation." (ECF No. 1 at ¶ 107). Her Response focuses on what the hotels "should have known." (ECF No. 66 at 12).

Throughout the Complaint Plaintiff uses the phrase "willful blindness" to describe Defendants' conduct and contains some allegations that Defendants "knew" about the sex trafficking venture. Willful blindness is a higher standard, akin to actual knowledge. *See Global-Tech Appliances, Inc. v. SEB S.A.*, 563 U.S. 754, 766 (2011). As the Supreme Court has stated, willful blindness has "two basic requirements: (1) the defendant must subjectively believe that there is a high probability that a fact exists and (2) the defendant must take deliberate actions to avoid learning of that fact." *Id.* at 769. *See also United States v. Reichert*, 747 F.3d 445, 452

(6th Cir. 2014) (willful blindness is "a defendant's conscious decision to remain ignorant of the illegality of his conduct even when the defendant is aware of a high probability that his conduct is in fact illegal.").

However, this Court rejects Defendants' argument that M.A. relies solely on a theory of actual knowledge. M.A. brings a claim under § 1595(a), which uses the words "should have known," and therefore invokes a negligence standard, not knowledge through willful blindness. She includes allegations that Defendants "should have known" about her trafficking because of conduct that should have alerted them. (ECF No. 1 at ¶¶ 511-18, 60). She also references Defendants' "inattention" to the prevalence of sex trafficking more generally. (ECF No. 1 at ¶ 60). In construing the allegations in the complaint in the light most favorable to the Plaintiff, the Court find the allegations are not limited to actual knowledge. For these reasons, the Court will analyze Plaintiff's claims under the constructive notice standard.

In determining whether Plaintiff's allegations are sufficient, this Court is guided by two cases that could be said to form two ends of a spectrum for civil liability based for sex trafficking activities. At one end is *Ricchio v. McLean*, where allegations contained fairly strong evidence that the hotel owner and the trafficker were working together and that the hotel owner intended to profit from the trafficking scheme. The allegations included a "high-five" while discussing "getting this thing going again," a past business relationship between the trafficker and hotel owner, and allegations that one of the hotel owners had gone to the victim's room and "had shown indifference to Ricchio's obvious physical deterioration." *Ricchio v. McLean*, 853 F.3d 553, 555 (1st Cir. 2017). Ricchio alleged that while "in plain daylight view of the front office of the motel," her trafficker "kick[ed] her and force[d] her back toward the rented quarters when

she had tried to escape." *Id.* The Court concluded that the Defendants "acted, at least, in reckless disregard" of the nature of the venture for purposes of § 1589 and § 1595.

M.A.'s allegations do not rise to the level of obviousness present in *Ricchio*. M.A.'s facts do not suggest a direct agreement between her trafficker and any of the hotel defendants. M.A. does not allege that a specific hotel staff member saw her in a deteriorated state. But M.A. does not need to prove reckless disregard under § 1595(a), only that the Defendants "should have known" about the nature of the venture under a negligence standard. This does no require evidence of actual knowledge or conspiracy between Defendants and the trafficker.

On the other end of the spectrum is *Hillary Lawson v. Howard Rubin*, No. 1:17-cv-6404 (BMC), 2018 WL 2012869 (E.D.N.Y. Apr. 29, 2018). There, the plaintiffs sued Blue Icarus, the owner of a condo that it leased to Howard Rubin. Rubin, as it turned out, was procuring women who he then sexually assaulted and abused. The court found the plaintiff's allegations insufficient to hold Blue Icarus liable under § 1595 because Blue Icarus did not have reason to know about the human trafficking. The court explained as follows:

> First, plaintiffs have not cited any caselaw to support their argument that one visit by the police department and one ambulance sent to the residence over six years is sufficient to put the owner of the premises on notice of illegal activity. (Indeed, plaintiffs do not cite any cases at all for the standard for a property owner's duty to monitor the premises.). Plaintiffs did not claim that Blue Icarus had actual notice of the alleged activity, only that it should have known about alleged trafficking based on its duty to monitor the premises….

> The only instance of polic[e] being called to the penthouse described in the amended complaint was when Cacciola called them after getting into a fight with Hallman. Assuming the facts in the complaint to be true and even assuming that Blue Icarus had a duty to investigate any time the police were called, there would not have been any reason for it to infer illegal conduct by Rubin or his employees based on why the police were called. In the only two instances of an ambulance or the police being called to the penthouse, any investigation by Blue Icarus would not have led to any more information about the alleged human-trafficking enterprise.

9

*Lawson v. Rubin*, 2018 WL 2012869, at **13–14.

Plaintiff's claims in this case fall somewhere between *Ricchio* and *Lawson*.  Plaintiff has alleged, as to the individual hotel locations, the following relevant allegations:

- The "trafficker often requested rooms near exit doors.  Frequently the trash cans in the rooms in which M.A. was trafficked would contain an extraordinary number of used condoms.  The trafficker routinely instructed M.A. to refuse housekeeping services.  The hotel rooms in which M.A. was trafficked were frequently paid for with cash."  (ECF No. 1 at ¶ 52).
- The hotels "failed to recognize or report Plaintiff M.A.s trafficking."  (ECF No. 1 at ¶ 53).
- "The Plaintiff observed some of the same hotel staff over the course of the time she was trafficked for sex at the Defendant hotel properties."  (ECF No. 1 at ¶ 54).
- "At each of the Defendants' hotel properties, M.A. was routinely escorted by her trafficker in view of the front desk after her trafficker paid in cash for the reserved room out of which the sex trafficking venture was housed."  (ECF No. 1 at ¶ 54).
- "Despite her desperate pleas and screams for help, after being beaten or choked at the Defendants' hotel properties, the hotel staff ignored her and did nothing to prevent the ongoing and obvious torture she endured while she was regularly trafficked for sex at Defendants' hotel properties."  (ECF No. 1 at ¶ 55).
- "The Plaintiff's trafficker operated the sex trafficking venture out of the same hotel room for multiple days or weeks in succession."  (ECF No. 1 at ¶ 56).
- "The Plaintiff was forced into sexual encounters with approximately ten (10) "johns" per day, and these johns would enter and leave the hotel guest room."  (ECF No. 1 at ¶ 56).

In addition to the above allegations, M.A. has alleged, generally against each defendant hotel chain that the chains "knew or should have known" that its Defendant hotel locations were in "an area known for sex trafficking activity."  (ECF No. 1 at ¶¶ 64, 74).  To support this allegation against the Wyndham Defendants, M.A. has cited to various news articles but none of the articles appear to be involving Columbus Wyndham locations.[1]

---

[1] Plaintiff alleges: "[F]rom 2006 to 2011, members of the Crips gang in San Diego, California ran a child sex trafficking ring of approximately sixteen (16) girls out of various area hotels. Two (2) of the properties on which many of the tragic occurrences of child sex trafficking took place were Defendant Wyndham branded properties," (ECF No. 1 at ¶ 62).

M.A.'s allegations against Choice are the most detailed. She cites an online review of a Columbus-area Quality Inn that alleges the review was "solicited for drugs and by prostitutes" and the reviewer "told the hotel staff about it and they seem to turn a blind eye to the problem because these people are also buying rooms." (ECF No. 1 at ¶ 87 n.24). M.A. also alleges Choice Hotels "breached its duties and did not implement or enforce anti human trafficking policies that could have saved the Plaintiff from being sex trafficked at its branded hotels," (ECF No. 1 at ¶ 91), and "despite knowledge of the problem of sex trafficking in its hotels, Defendant Choice did not require that employees participate in training to prevent sex trafficking," (ECF No. 1 at ¶ 92).

This Court must decide whether these allegations are sufficient to state a claim that Defendants knew or should have known the venture was engaged in sex trafficking. With respect to claims of actual knowledge, this Court finds M.A.'s allegations are not sufficient. She alleges that the front desk staff saw her with her trafficker, but does not allege any behavior that indicated the staff knew trafficking that was taking place other than that the trafficker paid for the room in cash. She alleges that she screamed out for help but while she alleges that the staff "ignored" her, she does not allege that any of them were actually around to hear her pleas. She does not allege that she ever alerted any particular staff member to her need for help.

The question, then, is whether Plaintiff has alleged sufficient facts at this stage to show Defendants *should have known* about the sex trafficking venture. Several courts have found failure to implement policies sufficient to combat a known problem in one's operations can rise to the level of willful blindness or negligence. *See Brown v. Corr. Corp. of Am.*, 603 F.Supp.2d

73, 81 (D.D.C. Mar. 26, 2009) (finding that complaint stated sufficient allegations under § 1983, based on willful blindness, where defendants knew that a supervisor at a correctional facility raped his employee, sexual harassment at the facility "was not an isolated incident," and defendants failed "to implement and effectuate the appropriate policies . . . to remedy and/or prevent the discriminatory conduct, sexual abuse and sexual harassment and rape"); *Trollinger v. Tyson Foods, Inc.*, 2007 WL 1574275, at *12 (E.D. Tenn. May 29, 2007) (finding that a "willful blindness policy" could be sufficient to show a RICO violation). This Court finds that M.A.'s allegations are sufficient to meet the negligence standard in § 1595 for purposes of surviving a Motion to Dismiss.  M.A. has alleged that Defendants were on notice about the prevalence of sex trafficking generally at their hotels and failed to take adequate steps to train staff in order to prevent its occurrence.  She also alleges facts specific to her own sex trafficking, including a number of signs she alleges should have alerted staff to her situation.  These allegations are sufficient to survive a 12(b)(6) motion to dismiss.

### 3. *Participation in a venture*

Finally, the Court must decide whether Plaintiff alleged sufficient facts that show Defendants' conduct constituted "participation in venture" under § 1595(a).  Here, M.A.'s trafficker had a sex trafficking venture.  The question is whether the Defendant hotels were participating in that venture through "renting rooms to the sex trafficking venture and financially benefitting from those rentals."  (ECF No. 66 at 18).

The Defendants rely extensively on *United States v. Afyare*, 632 F. App'x 272 (6th Cir. 2016), which addresses the meaning of "participation in a venture" under § 1591.  In *Afyare*, a panel of the Sixth Circuit affirmed the district court's finding that § 1591(a)(2) "require[s] that a defendant actually participate and commit some 'overt act' that furthers the sex trafficking aspect

of the venture." *Afyare*, 632 F. App'x at 286. As the panel explained, the venture had to be a sex-trafficking venture and the "participation" had to be an "'overt act' that furthers the sex trafficking aspect of the venture." *Id.* The plaintiff must show that "the defendants associated for the purpose of furthering the sex trafficking." *Id.*

Plaintiff, M.A., argues that the Sixth Circuit's construction of "participation in a venture" under § 1591 should not bind this Court's interpretation of "participation in a venture" under § 1595. Plaintiff argues that the analysis in *Afyare* "stands for the proposition that criminal liability will not follow sex trafficking money to all the potential persons or entities those proceeds may reach after the sex trafficking venture has been completed." (ECF No. 66 at 17). Section 1595, unlike § 1591, contains a "constructive knowledge" standard through use of the "should have known" language. M.A. argues that she need only "allege that Defendants should have known they were benefitting financially from a sex trafficking venture." (ECF No. 66 at 15).

In construing a statute, this Court "start[s], as [it] must, with the language of the statute." *Bailey v. United States*, 516 U.S. 137, 145 (1995). But even a textual analysis is informed "not only [by] the bare meaning of the word but also [by] its placement and purpose in the statutory scheme." *Id.* Where, as here, a statute is "remedial," it "should be liberally construed." *Peyton v. Rowe*, 391 U.S. 54, 65 (1968). *See also Noble v. Weinstein*, 335 F.Supp.3d 504, 515 (S.D.N.Y. 2018) (finding that § 1595 is a "remedial provision" that "requires broad interpretation"). In *Afyare*, the Sixth Circuit panel looked to the statutory definitions and to the surrounding context. The language of § 1591 differs from the language of § 1595—the former does not have a constructive knowledge element manifested by "should have known" language.

Additionally, the *Afyare* panel relied on concepts of criminal law that are relevant, but less salient, here.

Some Defendants have relied on the definition of "participation in a venture" supplied in § 1591(e)(4). Generally, "there is a natural presumption that identical words used in different parts of the same act are intended to have the same meaning." *Atlantic Cleaners & Dyers v. United States*, 286 U.S. 427, 433 (1932). But this presumption does not apply where "there is such variation in the connection in which the words are used as reasonably to warrant the conclusion that they were employed in different parts of the act with different intent." *Id.* Here, § 1591(e) purports to only apply to "this section," i.e., § 1591. *See, e.g.*, *Gilbert v. United States Olympic Committee*, No. 18-cv-00981-CMA-MEH, 2019 WL 1058194, at *9, *10 (D. Colo. Mar. 6, 2019) (noting that "there are persuasive reasons to conclude . . . that the term 'venture' is defined differently in § 1591(a)(2) than it is in § 1589(b)" and "neither §§ 1589 nor 1595 define 'venture'").

In addition to the language in § 1591(e) limiting the definitions to that section, applying the definition of "participation in a venture" provided for in § 1591(e) to the requirements under § 1595 would void the "known or should have known" language of § 1595. Such a construction would violation the "'cardinal principle of statutory construction' that 'a statute ought, upon the whole, to be construed so that, if it can be prevented, no clause, sentence, or word shall be superfluous, void, or insignificant.'" *TRW Inc. v. Andrews*, 534 U.S. 19, 31 (2001) (quoting *Duncan v. Walker*, 533 U.S. 167, 174 (2001)). Section 1591(e)(4) provides the following definition of "participation in a venture": "knowingly assisting, supporting, or facilitating a violation of subsection (a)(1)." The term "participation in a venture" in § 1591 thus imports a state of mind requirement—the participation must be "knowing." Although § 1591(a)(2) also

14

criminalizes some action taken with less than actual knowledge, that is, "reckless disregard, such "reckless disregard" provision applies only to the requirement "that means of force, threats of force, fraud, coercion described in subsection (e)(2), or any combination of such means will be used to cause the person to engage in a commercial sex act, or that the person has not attained the age of 18 years and will be caused to engage in a commercial sex act." § 1591 (a). It does not lessen the scienter requirement of actual knowledge as to *participation* or the *venture's true ends*.

At least one other court has likewise found that liability under § 1595 can attach when an individual participates in a venture that is not specifically a sex trafficking venture and participation is not direct participation in the sex trafficking. In *Jean-Charles v. Perlitz*, the District of Connecticut found that defendants participated in a venture where they maintained affiliations with a school where sexual abuse of minors was taking place. *Jean-Charles v. Perlitz*, 937 F.Supp.2d 276, 288–89 (D. Conn. 2013). The school, Project Pierre Toussaint ("PPT") was run by Haiti Fund, Inc. The District of Connecticut denied a motion to dismiss Fairfield University, where Fairfield was alleged, among other things, to have co-founded the school and hired individuals, including the perpetrator, to run the school. It also declined to dismiss Father Carrier, the Chairman and President of Haiti Fund's Board of Directors, where "he was a frequent visitor to PPT" and witnessed the perpetrator show a student a pornographic video and "shunned a Haitian administrator at PPT after she tried to stop [the perpetrator's] sexual abuse of PPT students." *Id.* at 280, 288.

Having found that "participation" under § 1595 does not require actual knowledge of participation in the sex trafficking itself, this Court must then examine whether there was "participation in a venture" here. Plaintiff's theory here is that the defendants "engag[ed] in acts

15

and omissions that were intended to support, facilitate, harbor, and otherwise further the trafficker's sale and victimization of the Plaintiff for commercial sexual exploitation." (ECF No. 1 at ¶ 107). M.A. alleges that the hotels repeatedly rented rooms and thereby "participated in the trafficking." (ECF No. 1 at ¶ 108). In the absence of a direct association, Plaintiff must allege at least a showing of a continuous business relationship between the trafficker and the hotels such that it would appear that the trafficker and the hotels have established a pattern of conduct or could be said to have a tacit agreement. *See, e.g.*, *In re Polyurethane Foam Antitrust Litigation*, 152 F. Supp. 3d 968, 983 (N.D. Ohio 2015) (citing *In re Baby Food Antitrust Litig.*, 166 F.3d 112, 126 (3d Cir. 1999) (acknowledging that price-fixing can be shown be tacit agreement); McGuire v. Lewis, No. 1:12-cv-986, 2014 WL 1276168, at *6 (finding allegations sufficient "to identify the individuals alleged to have conspired, to plausibly suggest some joint action among the individuals, and to explain how the purported joint action led to the alleged deprivation of [plaintiff's] rights. In particular, they plausibly show a tacit agreement . . . ."). This requirement also comports with a principle implied in *Ricchio*. There, the First Circuit found sufficient allegations that, among other things, the trafficker and hotel owner had prior dealings. *Ricchio*, 853 F.3d at 555.

Defendants have also relied on *Ricchio* to argue that the Defendants' alleged conduct here cannot, as a matter of law, form the basis for "participation in a venture" for purposes of civil liability under § 1595(a). In *Ricchio*, the plaintiff had alleged the following facts involving her trafficker, McLean, and the hotel owners, the Patels:

> McLean physically and sexually abused Ricchio, repeatedly raping her, starving and drugging her, and leaving her visibly haggard and bruised. . . . McLean had prior commercial dealings with the Patels, which the parties wished to reinstate for profit. McLean and Mr. Patel enthusiastically expressed this intent by exchanging high-fives in the motel's parking lot while speaking about "getting

this thing going again," in circumstances in which McLean's coercive and abusive treatment of Ricchio as a sex slave had become apparent to the Patels. Ms. Patel had not only nonchalantly ignored Ricchio's plea for help in escaping from McLean's custody at the motel but, when visiting the rented quarters to demand further payment, had shown indifference to Ricchio's obvious physical deterioration. And in plain daylight view of the front office of the motel, either of the Patels on duty there would have seen McLean grab Ricchio, kick her, and force her back toward the rented quarters when she had tried to escape. In these circumstances, it was a plausible understanding that McLean was forcing sex in the motel room where he held Ricchio hostage, and fairly inferable that the gainful business that Mr. Patel and McLean spoke of had been and would be in supplying sexual gratification. It is likewise inferable that the Patels understood that in receiving money as rent for the quarters where McLean was mistreating Ricchio, they were associating with him in an effort to force Ricchio to serve their business objective.

*Ricchio*, 853 F.3d at 555. The First Circuit explained that it did not present that "summary [of the facts] as necessarily exhausting every variant of statutory violation and basis for civil liability that could survive the general Rule 12(b)(6) motion." *Id.* at 557.

Plaintiff argues that "Defendants . . . directly participated in the sex trafficking venture by harboring it." (ECF No. 66 at 18). Defendants need not have actual knowledge of the sex trafficking in order to have participated in the sex trafficking venture for civil liability under the TVPRA, otherwise the "should have known" language in § 1595(a) would be meaningless. This Court finds Plaintiff has alleged sufficient facts to show Defendants "participated in a venture" under § 1595 by alleging that Defendants rented rooms to people it knew or should have known where engaged in sex trafficking. These acts and omissions by Defendants, M.A. alleges, facilitated the sex trafficking venture.

### B. Joint and Several Liability

Defendants Choice Hotels, International and First Hotel Management have argued that Plaintiff's request that all Defendants be held jointly and severally liable is improper because they cannot be "responsible for acts occurring on properties not owned or managed by them."

(ECF No. 40 at 15). Plaintiff has not addressed this argument. Therefore, this Court will consider Plaintiff to have conceded the point.

## C. Vicarious Liability

Choice Hotels argues that Plaintiff's allegations are insufficient to support a claim of an agency relationship between Choice and its individual hotel locations. (ECF No. 53 at 6–7). Alternatively, Choice Hotels has argued that, even if an agency relationship exists, the TVPRA does not contemplate liability based on an agency relationship between Choice Hotels and its individual hotel locations. (ECF No. 53 at 6–7). Choice Hotels and Wyndham also argue that the TVPRA does not provide for a plaintiff to hold a franchisor liable as a single or joint employer with its franchisee. (ECF No. 53 at 9); (ECF No. 52 at 2).

### 1. Agency and Vicarious Liability

It is a long-standing principle of law in Ohio that "[a] principal is chargeable with the knowledge of, or notice to, his agent that is received by the agent in the due course of the agent's employment and is related to the matters within the agent's authority." *Liggett v. Chesapeake Energy Corp.*, 591 F. App'x 305, 309 (6th Cir. 2014). In determining whether there is an agency relationship, the question is how much the agent "retained control, or the right to control, the mode and manner of doing the work contracted for." *Beddia v. Goodin*, 957 F.2d 254, 257 (6th Cir. 1992) (quoting *Councell v. Douglas*, 163 Ohio St. 292, 126 N.E.2d 597, 599 (1955)). Although Plaintiff's Complaint does contain mere legal conclusions such as "The Days Inn by Wyndham Defendants are alter egos, representatives, agents, or co-conspirators of Defendant Wyndham," (ECF No. 1 at ¶ 66), she later details what aspects of the individual hotel locations Wyndham controlled: employee training, "standardized or strict rules of operation," the prices that the hotels could charge, and "regular inspection of the Days Inn by Wyndham Defendants

18

and operation by Defendant Wyndham." (ECF No. 1 at ¶ 71). M.A. makes similar allegations as to Choice Hotels, (ECF No. 1 at ¶ 103), and has additionally alleged that Choice Hotels, among other things, hosts an online platform for customers to use in booking hotels at the individually-owned locations, that the individual hotels must participate in Choice Hotels' rewards program, that Choice Hotels sets employee pay, has standardized employee training, requires "building and maintaining the facility in a manner specified by the owner," and sets prices. (ECF No. 1 at ¶ 95). These allegations are sufficient to meet the pleading standards of Rule 8.

### 2. Single or Joint Employer Status

Similar to the agency relationship inquiry, whether two employers are a joint employer often turns on how much control one exercises over the other. See, e.g., *Int'l Longshoremen's Ass'n, AFL-CIO, Local Union No. 1937 v. Norfolk Southern Corp.*, 927 F.2d 900, 902 (6th Cir. 1991) (quoting *Metropolitan Detroit Bricklayers Dist. Council v. J.E. Hoetger & Co.*, 672 F.2d 580, 584 (6th Cir. 1982)) (articulating test for joint employer status under the NLRA as "the interrelation of operations between the companies, common management, centralized control of labor relations, and common ownership."); *Sanford v. Main Street Baptist Church Manor, Inc.*, 327 F. App'x 587, 594 (6th Cir. 2009) (quoting *United States EEOC v. Custom Companies,* Case Nos. 02 C 3768, 03 C 2293, 2007 WL 734395, at *5–8, 2007 U.S. Dist. LEXIS 16691, at *15–24 (N.D.Ill. March 8, 2007)) (adopting the test for Title VII joint employer status: "(1) the extent of the employer's control and supervision over the worker, including directions on scheduling and performance of work; (2) the kind of occupation and nature of skill required, including whether skills are obtained in the work place; (3) responsibility for the costs of operation, such as equipment, supplies, fees, licenses, workplace, and maintenance of operations; (4) method and form of payment and benefits; and (5) length of job commitment and/or expectations."). As

19

Choice Hotels noted, the Sixth Circuit has recognized the employer control theory and the agency theory are "essentially the same." *Satterfield v. Tennessee*, 295 F.3d 611, 618 n.6 (6th Cir. 2002). Although M.A. has not alleged additional facts specific to the joint employer allegation, her facts supporting an agency relationship could plausibly show some element of control to establish joint employer status. Therefore, her allegations meet the pleading standard for the same reasons as above.

### D. Group Pleading

Defendant Wyndham Hotels & Resorts, Inc. argues that the Complaint impermissibly alleges facts against "Defendants" generally, without specifying which Defendant took which actions. (ECF No. 52 at 4). M.A. argues that much of the case law Wyndham relies on with respect to "group" allegations pertain to the specialized fraud and § 1983 contexts. (ECF No. 66 at 28-29). Furthermore, M.A. argues that she has made claims specific to Wyndham. (*Id.* at 30).

Federal Rule of Civil Procedure 8 requires a complaint contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The complaint must "give the defendant fair notice of what the… claim is and the grounds upon which it rests." *Bell Atlantic Corp v. Twombly*, 550 U.S. 544, 545 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). The impermissibility of "group pleading" is often spoken of in the fraud context because plaintiffs alleging fraud must meet the requirements set out in Federal Rule of Civil Procedure 9(b)—that is, "a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). Fraud cases aside, however, Wyndham has argued that the Plaintiff's lack of specificity regarding Wyndham's alleged actions has effectively deprived Wyndham of "fair notice of what it is alleged to have done." (ECF No. 52 at 3).

M.A. has pleaded sufficient facts particular to Wyndham to meet the Rule 8 notice requirement for purposes of surviving he Motion to Dismiss. Paragraphs 60–72 include allegations specific to Wyndham, including that Wyndham "knew or should have known" about sex trafficking generally at its properties and in the area (ECF No. 1 at ¶¶ 62–64), and that Wyndham "failed to take adequate measures to prevent the sex trafficking of the Plaintiff." (*Id.* at ¶ 65). While Plaintiff has made similar allegations against the other Defendants, this is not a situation where defendants "[were] not even mentioned in the body of the complaint" and "[t]he only allegations that could plausibly apply o hem are allegations directed at all… Defendants." *Ingris v. Borough of Caldwell*, No. 14-855 (ES), 2015 WL 3613499 (D.N.J. Jun. 9, 2015). Plaintiff has clearly named Wyndham in her Complaint and made allegations specific to their failure to prevent her sex trafficking. This Court agrees with Plaintiff that the allegations in the complaint contain sufficient specificity to address the notice concerns the Rule 8 is designed to protect.

### E. Failure to Join

Defendant First Hotel Management argues that Plaintiff's Complaint is deficient for failure to join a necessary party under Federal Rule of Civil Procedure 19. First Hotel alleges that, MGH Hospitality, Ltd. owned the Days Inn by Wyndham on Brice Road until early 2015, when First Hotel Management took over. (ECF No. 40, Ex. B). First Hotel argues that complete relief cannot be afforded if MGH Hospitality is not joined and that the Court should order joinder of MGH Hospitality and dismiss the case if Plaintiff fails to do so. (ECF No. 40 at 16-17). Plaintiff has responded that she does not believe MGH is a necessary party, and furthermore that failure to join in the first instance is not grounds for dismissal. (ECF No. 66 at 31-32).

In determining whether a party should be joined under Rule 19, this Court considers: 1) whether the absent party is a necessary party 2) if the absent party is a necessary party, whether it is feasible to join that party; and 3) if joinder is not feasible, whether the absent party is indispensable. *Glancy v. Taubman Ctrs., Inc.*, 373 F.3d 656, 666 (6th Cir. 2004). To answer whether MGH is a necessary party, this Court must assess whether MGH has "an interest relating to the subject of the action and is so situated that the disposition of the action in the person's absence may (i) as a practical matter impair or impede the person's ability to protect the interest; or (ii) leave an existing party subject to substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest." Fed. R. Civ. P. 19(a). First Hotel Management has alleged that MGH has an interest in the action because it owned one of the hotels during the relevant time period of Plaintiff's allegations. First Hotel Management does not allege failure to join MGH impairs or impede their ability to protect their interests or otherwise defend against this action. Rather, they suggest that without joinder of MGH, "complete relief cannot be accorded among the existing parties." (ECF No. 40 at 17). Whether "complete relief" can be afforded, is not the question under Rule 19. Rather, this Court looks to whether First Management is at "substantial risk of incurring double, multiple, or otherwise inconsistent obligations." Fed. R. Civ. P. 19(a)(ii). This Court has already held that Plaintiff has conceded that joint and several liability is not appropriate, thus, with each Defendant potentially liable only for its own actions, Plaintiff will not be able to recover against Defendant First Hotel Management for any events that occurred while MGH owned the property. Failure to join MGH does not prevent this Court from determining liability as to the other parties. Therefore, this Court finds MGH is not a necessary party, and denies First Hotel Management's Motion to Dismiss on these grounds.

22

## IV. CONCLUSION

For the foregoing reasons, Defendants' Motions to Dismiss are hereby **DENIED.**

**IT IS SO ORDERED.**

          **s/Algenon L. Marbley**
         **ALGENON L. MARBLEY**
         **UNITED STATES DISTRICT JUDGE**

**DATE:  October 7, 2019**