**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | | |
|---|---|---|
| M.A., an individual, | * | No. 2:19-cv-00849 |
| Plaintiff, | | Judge Algenon L. Marbley |
| v. | * | |
| WYNDHAM HOTELS AND RESORTS, INC., et al. | | **MOTION OF ERIE INSURANCE EXCHANGE TO INTERVENE** |
| | * | |
| Defendant. | * | |

Pursuant to Federal Rule of Civil Procedure 24, Erie Insurance Exchange ("Erie") moves this Court for an Order allowing it to intervene in this action. The purpose of intervention is to file a complaint for declaratory judgment regarding insurance coverage issues arising under a contract of insurance between Erie and defendant Buckeye Hospitality, Inc., under which Choice Hotels International, Inc. also claims insurance coverage. Erie seeks to participate in all aspects of this lawsuit, including discovery, to develop and be privy to the evidentiary record. A memorandum in support of this motion follows along with the proposed intervening complaint, attached as **Exhibit 1**.

Respectfully submitted,

*/s/ Gordon D. Arnold*
Gordon D. Arnold (0012195)
Bartholomew T. Freeze (0086980)
FREUND, FREEZE & ARNOLD
Fifth Third Center
1 South Main Street, Suite 1800
Dayton, OH 45402-2017
937-913-0103; 937-425-0203 (fax)
garnold@ffalaw.com; bfreeze@ffalaw.com
**Attorneys for Intervenor, Erie Insurance Exchange**

<u>**MEMORANDUM IN SUPPORT**</u>

**I.     INTRODUCTION**

Plaintiff M.A. filed this lawsuit alleging she was the victim of sex trafficking between Spring 2014 and August 2015. M.A. alleges, *inter alia*, that Defendants Buckeye Hospitality, Inc. ("Buckeye Hospitality") and Choice Hotels International, Inc. ("Choice Hotels") participated in or otherwise facilitated the sex trafficking activities described in her Complaint.

Buckeye Hospitality and Choice Hotels seek defense and indemnification from Erie for M.A.'s claims, under an insurance contract between Erie and Buckeye Hospitality. Erie is presently defending both Buckeye Hospitality and Choice Hotels in this lawsuit, subject to a reservation of rights. In brief summary, the insurance contract:

- requires an "occurrence" to trigger insurance coverage;

- insures Buckeye Hospitality's and/or Choice Hotels' employees only when acting within the scope of their employment or while performing duties related to the conduct of their business;

- excludes coverage for bodily injury expected or intended by an insured;

- excludes coverage—with some exceptions—for assumptions of liability in a contract or agreement; *and*,

- excludes coverage for punitive damages.

Those issues, incorporating the terms and conditions of the insurance contract as a whole, constitute the general basis of the reservation of rights.

Erie seeks to intervene in this lawsuit for the purpose of seeking a declaratory judgment regarding its obligations, if any, to defend and/or indemnify Buckeye Hospitality and Choice Hotels in relation to M.A.'s claims against them. Erie also seeks the right to participate in all aspects of the lawsuit including but not limited to discovery and, if necessary, trial.

- 2 -

## II.     STATEMENT OF FACTS

On March 8, 2019, Plaintiff M.A. filed this lawsuit.   M.A. identifies herself in the Complaint only by her initials, and alleges she is an adult survivor of sex trafficking who, beginning in Spring 2014, was advertised on www.backpage.com, and trafficked for sex at central Ohio hotels that included Wyndham, IHG, Choice brand hotels.  Doc. 1, ¶3.   She names as defendants, *inter alia*, Buckeye Hospitality, Inc. ("Buckeye Hospitality") and Choice Hotels International, Inc. ("Choice Hotels").

M.A. alleges she left home in 2014 to live with a friend who then demanded she have sex to keep her food and shelter.  Id., ¶49.  She then "met the person who eventually became her trafficker" by using violence or threats of violence against her, trafficking her from Spring 2014 until August 2015 at Days Inn by Wyndham, Comfort Inn, and Crown Plaza properties in the Columbus, Ohio area.  Id., ¶¶49–51.  M.A. alleges she escaped from being trafficked in August 2015 and her trafficker was criminally convicted in Fall 2017.  Id., ¶¶57–58.

M.A. alleges the defendant hotels, including Buckeye Hospitality dba Comfort Inn Columbus, "enabled, harbored, held, facilitated, or otherwise financially benefited, or any combination of the foregoing, from a sex trafficking venture in which M.A. was trafficked for sex…in violation of the Trafficking Victims Protection Reauthorization Act ("TVPRA"), 18 U.S.C. § 1595." Id., ¶¶6, 105–09.  M.A. alleges Choice Hotels "facilitated" the sex trafficking by "willful blindness to sex trafficking" of Plaintiff at Comfort Inn Columbus.  Id., ¶104.

M.A. alleges that "[t]hrough its relationship with Defendant Choice and the individual who trafficked M.A. at the Comfort Inn Columbus, Defendant Comfort Inn Columbus knowingly benefited or received something of value from its facilitation of or participation in a venture it should have known had engaged in sex trafficking." Id., ¶¶52–56, 87–92.  M.A. further alleges an agency relationship or joint enterprise between Buckeye Hospitality and Choice Hotels.  Id., ¶¶93–

- 3 -

96, 98–103. M.A. alleges emotional and physical injuries, and seeks compensatory and punitive damages, attorney fees, and costs.

## III.    INSURANCE COVERAGE AT ISSUE

### A.    <u>Pertinent Terms & Conditions of the Erie Insurance Contract</u>

Erie and Buckeye Hospitality, Inc. dba Comfort Inn, were parties to an insurance contract, Policy Number Q37-2450647-K (the "Policy"), with Buckeye as the name insured. The insurance contract had a policy period from January 24, 2014 to January 24, 2015, and a renewed policy period from January 24, 2015 to January 24, 2016. Choice Hotels International, Inc. is listed as an additional insured, as a "grantor of franchise."

<u>Coverage Issues for Determination</u>

Because of M.A.'s Complaint allegations, and the terms and conditions of the insurance contract, Erie is defending Buckeye Hospitality and Choice Hotels in this lawsuit subject to a reservation of rights. The basis for the reservation of rights include, but are not limited to, the following reasons.

- The insurance contract requires an "occurrence" to trigger coverage under the Commercial General Liability Coverage Form ("CGL Form"). Based on M.A.'s Complaint allegations, there is no "occurrence" to trigger coverage under the CGL Form.

- The insurance contract's CGL Form excludes coverage when a bodily injury is expected or intended by an insured, and insures an insured's employees only when acting "within the scope of their employment by you or while performing duties related to the conduct of your business."

- M.A. alleges Buckeye Hospitality and Choice Hotels "facilitated" her sex trafficking by "willful blindness to sex trafficking." Those allegations, if proven by M.A. during

- 4 -

the lawsuit, could result in findings of fact falling within the exclusion for bodily injury expected or intended from the standpoint of Buckeye Hospitality, Choice Hotels, and/or their employees.  Such findings of fact could also remove any complicit and/or culpable employee from the definition of "insured" under the CGL Form if the employee's act or omission was committed outside the scope of their employment or while performing duties unrelated to the conduct of Buckeye Hospitality's and/or Choice Hotel's business.

- The insurance contract's CGL Form excludes coverage, with enumerated exceptions, for "bodily injury" which the insured becomes obligated to pay damages by reason of the assumption of liability in a contract or agreement.

- The insurance contract's CGL Form excludes coverage for punitive damages "to the extent that is prohibited by law."  Ohio law prohibits insurance coverage for punitive damages.  E.g., *Neal-Pettit v. Lahman*, 125 Ohio St.3d 327, 331 (2010).

Intervention is necessary to evaluate and determine insurance coverage issues, including but not limited to those listed above.

The following are the pertinent terms and conditions of the insurance contract, based on M.A.'s claims and allegations against Buckeye Hospitality and Choice Hotels.

**COMMERCIAL GENERAL LIABILITY COVERAGE FORM**
**[CG 00 01 (Ed. 4/13) UF-9708]**

## SECTION I — COVERAGES

## COVERAGE A — BODILY INJURY AND PROPERTY DAMAGE LIABILITY

1. **Insuring Agreement**

   a.   We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies.  We will have the right and duty to defend the insured against any "suit" seeking those damages.  However, we will have no duty to defend the insured

- 5 -

against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply.  We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result.  But:

1) The amount we will pay for damages is limited as described in Section **III** — Limits Of Insurance; and

2) Our right and duty to defend ends when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages **A** or **B** or medical expenses under Coverage **C**.

No other obligations or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments — Coverages **A** and **B**.

b. This insurance applies to "bodily injury" and "property damage" only if:

1) The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

2) The "bodily injury" or "property damage" occurs during the policy period; and

3) Prior to the policy period, no insured listed under Paragraph **1.** of Section **II** — Who Is An Insured and no "employee" authorized by you to give or receive notice of an "occurrence" or claim, knew that the "bodily injury" or "property damage" had occurred, in whole or in part.  If such a listed insured or authorized "employee" knew, prior to the policy period, that the "bodily injury" or "property damage" occurred, then any continuation, change or resumption of such "bodily injury" or "property damage" during or after the policy period will be deemed to have been known prior to the policy period.

c. "Bodily injury" or "property damage" which occurs during the policy period and was not, prior to the policy period, known to have occurred by any insured listed under Paragraph 1. of Section II — Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim, includes any continuation, change or resumption of that "bodily injury" or "property damage" after the end of the policy period.

d. "Bodily injury" or "property damage" will be deemed to have been known to have occurred at the earliest time when any insured listed under Paragraph 1. of Section II — Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim:

1) Reports all, or any part, of the "bodily injury" or "property damage" to us or any other insurer;

**FREUND, FREEZE & ARNOLD**
**A Legal Professional Association**

2)     Receives a written or verbal demand or claim for damages because of the "bodily injury" or "property damage"; or

3)     Becomes aware by any other means that "bodily injury" or "property damage" has occurred or has begun to occur.

***

2.    **Exclusions**

This insurance does not apply to:

a.    **Expected Or Intended Injury**

"Bodily injury" or "property damage" expected or intended from the standpoint of the insured. This exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property.

b.    **Contractual Liability**

"Bodily injury" or "property damage" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages:

1)     That the insured would have in the absence of the contract or agreement; or

2)     Assumed in a contract or agreement that is an "insured contract", provided the "bodily injury" or "property damage" occurs subsequent to the execution of the contract or agreement. Solely for the purposes of liability assumed in an "insured contract", reasonable attorneys' fees and necessary litigation expenses incurred by or for a party other than an insured are deemed to be damages because of "bodily injury" or "property damage", provided:

a)    Liability to such party for, or for the cost of, that party's defense has also been assumed in the same "insured contract"; and

b)    Such attorneys' fees and litigation expenses are for defense of that party against the civil or alternative dispute resolution proceeding in which damages to which this insurance applies are alleged.

***

## SECTION II — WHO IS AN INSURED

***

2.    Your "volunteer workers" only while performing duties related to the conduct of your business, or your "employees", other than your "executive officers" (if you are an organization other than a partnership, joint venture or limited liability company) or your managers "if you are a limited liability company), but only for acts within the scope of their employment by you or while performing duties related to the conduct of your business. …

**FREUND, FREEZE & ARNOLD**
**A Legal Professional Association**

\*\*\*
## SECTION V — DEFINITIONS
\*\*\*
3.  "Bodily injury" means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.

\*\*\*
13. "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

\*\*\*

## PUNITIVE DAMAGES (DC, OH)
### [UL-PA (ED. 3/01) UF-9464]

This endorsement modifies insurance provided under the following:
COMMERCIAL GENERAL LIABILITY COVERAGE PART

The following is added to paragraph **1. Insuring Agreement of Section I – Coverage A – Bodily Injury and Property Damage Liability** and to Paragraph **1. Insuring Agreement of Section I – Coverage B – Personal and Advertising Injury Liability**:

**Insuring Agreement**

Coverage for punitive or exemplary damages is excluded to the extent that is prohibited by law.

## IV.   LAW & ANALYSIS

### A.   <u>Erie is entitled to intervene as of right.</u>

Ohio law holds that determinations in the underlying case can determine coverage, where a determination is made in the underlying action of a fact that also determines coverage. *Howell v Richardson*, 45 Ohio St.3d 365, 544 N.E.2d 878 (1989). *Howell* allows the insurance company to defend under reservation of rights, but also to move to intervene and directly participate in the underlying action against the insured, so as to defeat any contractual liability, for example, by demonstrating that the acts of the insured defendant were intentional. *Howell*, 45 Ohio St.3d at 367. Under Ohio law, a failure of the insurance company to intervene binds it under collateral estoppel. *Id.*; but see *Gehm v. Timberline Post & Frame*, 112 Ohio St. 3d 514, 2007-Ohio-607, 861 N.E.2d 519 (2007), holding that if the insurer is denied intervention, collateral estoppel will not prohibit future litigation of similar issues.

- 8 -

If allowed to intervene, insurance coverage issues can often be resolved by summary judgment, or the factual issues material to both the underlying liability of the insured and resulting insurance coverage can often be determined by interrogatories submitted to the jury, without the jury being informed of the potential insurance coverage implications, avoiding anti-insurance prejudice. The insurer's lawyer participates in the trial by appearing only before the judge, arguing law and requesting specific jury interrogatories, but not appearing before the jury.

Federal Rule of Civil Procedure 24(a) governs when a person may "intervene as of right" as follows:

> On timely motion, the court must permit anyone to intervene who:
>
> (1)    is given an unconditional right to intervene by a federal statute; or
>
> (2)    claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest.

*Fed.R.Civ.P. 24(a)*.

When no unconditional federal statutory right to intervention exists, a proposed intervener—to intervene as of right—must establish: "(1) timeliness of the application to intervene, (2) the applicant's substantial legal interest in the case, (3) impairment of the applicant's ability to protect that interest in the absence of intervention, and (4) inadequate representation of that interest by parties already before the court." *U.S. v. Tennessee*, 260 F.3d 587, 591–92 (6th Cir. 2001).

The Sixth Circuit "subscribe[s] to a rather expansive notion of the interest sufficient to invoke intervention of right[.]" *Grutter v. Bollinger*, 188 F.3d 394, 398 (6th Cir. 1999). It disfavors a technical, narrow construction of Rule 24's requirements. See *Providence Baptist Church v. Hillandale Comm., Ltd.*, 425 F.3d 309, 314–15; see *Purnell v. Akron*, 925 F.2d 941, 950

- 9 -

(6th Cir. 1991) (Rule 24 is liberally construed and doubts are resolved in favor of the proposed intervenor.).

The relevant "factual circumstances considered under Rule 24(a) should be 'broadly construed in favor of potential intervenors.'" *Davis v. Lifetime Capital, Inc.*, 560 F. App'x 477, 489 (6th Cir. 2014) (quoting *Purnell*, 925 F.2d at 950); see *Liberte Capital Group v. Capwill*, No. 5:99 CV 818, 2011 U.S. Dist. LEXIS 360, at *15 (N.D. Ohio Jan. 4, 2011) (A Rule 24(a) inquiry should focus on the particular facts and procedural posture of the application.).  Erie satisfies each of the four elements governing intervention of right.

### 1.    Erie timely seeks to intervene.

In determining timeliness of a motion to intervene, courts in the Sixth Circuit consider five factors: (1) the point to which the suit has progressed; (2) the purpose for which intervention is sought; (3) the length of time preceding the application during which the proposed intervenor knew or should have known of his interest in the case; (4) the prejudice to the original parties due to the proposed intervenor's failure to promptly intervene after he knew or reasonably should have known of his interest in the case; and (5) the existence of unusual circumstances militating against or in favor of intervention. *Blount-Hill v. Zelman*, 636 F.3d 278, 283 (6th Cir. 2011) (citing *Jansen v. City of Cincinnati*, 904 F.2d 336, 340 (6th Cir. 1990)).  "The determination of whether a motion to intervene is timely should be evaluated in the context of all relevant circumstances." *Jansen*, 904 F.2d at 340.  As set forth in the following sections, Erie timely seeks to intervene.

### a.    This lawsuit is in its initial stages.

The Sixth Circuit looks to the totality of the circumstances to determine timeliness.  "[T]he absolute measure of time between the filing of the complaint and the motion to intervene is one of

FREUND, FREEZE & ARNOLD
A Legal Professional Association

the least important circumstances." *Stupak-Thrall v. Glickman,* 226 F.3d 467, 475 (6th Cir. 2000); see also *Sierra Club v. Espy,* 18 F.3d 1202, 1205 (5th Cir. 1994) (when measuring timeliness of a motion to intervene, "absolute measures of timeliness should be ignored"); *United States v. Pitney Bowes, Inc.,* 25 F.3d 66, 70 (2d Cir. 1994) (timeliness defies precise definition and certainly is not confined strictly to chronology).

The trial court should look to its case-management plan to determine the progress of a suit. See *Davis,* 560 F.App'x at 490–91. Limiting a finding of substantial progress to cases with clearly defined and enforced litigation schedules aligns with the practice of other courts allowing intervention after substantial time unless "a lot of water has passed under . . . the litigation bridge." *United States v. Alisal Water Corp.,* 370 F.3d 915, 922 (9th Cir. 2004); see *Mountain Top Condo. Assoc. v. Dave Stabert Master Builder, Inc.,* 72 F.3d 361, 370 (3d Cir. 1995) (allowing intervention as of right where four years had passed between the filing of the complaint and the motion to intervene, but there were no depositions taken, dispositive motions filed, or decrees entered); *United States v. State of N.Y.,* 820 F.2d 554, 557 (2d Cir. 1987) (allowing intervention three years after money was seized and four years after the start of the lawsuit).

This lawsuit is in its initial stages. Plaintiff filed her Complaint in March 2019. On July 9, 2019, this Court issued its Preliminary Pretrial Order, setting deadlines as follows:

| Initial Disclosures | September 27, 2019 |
|---|---|
| Primary Expert Reports Due | April 10, 2020 |
| Plaintiff Must Make a Settlement Demand | April 24, 2020 |
| Defendants Must Respond to Settlement Demand | June 12, 2020 |
| Rebuttal Expert Reports Due | July 12, 2020 |
| Motion to Amend or Join Additional Parties | August 23, 2020 |
| Discovery Cutoff | August 24, 2020 |
| Dispositive Motions Due | September 21, 2020 |

- 11 -

See Doc. 86.  Of those dates, only the initial disclosure date has passed.  The next deadline is not until April 10, 2020, over four months away.  According to the Court's docket, the parties have conducted little to no discovery.

So far, this lawsuit has primarily involved briefing and deciding the defendants' motions to dismiss.  See Doc. 136 (deciding motions at Doc. 39, 40, 42, 43, 52, 53).  The Court, beginning on July 9, 2019, held the motions to intervene filed by American Family Insurance Company (Doc. 64) and Nationwide Property & Casualty Insurance Company (Doc. 65) in abeyance pending resolution of the defendants' motions to dismiss.  See Doc. 86.  This Court has not yet ruled on those motions to intervene. Erie's motion to intervene joins the previous motions to intervene.

In sum, Erie's intervention is timely because almost no "water has passed under . . . the litigation bridge."  This lawsuit is in its initial stages.  Erie's participation in the lawsuit, from this point forward, will not disrupt or delay the proceedings.

### b.      Erie has a valid legal purpose for intervention.

District courts should evaluate the purpose of intervention in terms of the importance of the legal interests asserted.  See *Blount-Hill,* 636 F.3d at 285.  Where future progress remains and the intervenor's interests are relevant, intervention may be the most effective way to achieve a full and fair resolution of the case.  *United States v. City of Detroit*, 712 F.3d 925, 931 (6th Cir. 2013)

Erie has a valid legal purpose for intervention.  Erie is party to a contract of insurance with Defendant Buckeye Hospitality, under which both Buckeye Hospitality and Choice Hotels seek defense and indemnification from Erie.  Erie is defending both Buckeye Hospitality and Choice Hotels, in this lawsuit, subject to a reservation of rights.  That means, at present, Erie is paying their legal fees and costs to defend against M.A.'s claims.  In addition, if M.A. obtains a judgment against Buckeye Hospitality and/or Choice Hotels, those entities will presumably seek indemnification from Erie against that judgment.

- 12 -

Under Ohio law, Erie could be precluded from being heard on coverage and be bound by determinations in the underlying case, where a determination is made in the underlying action of a fact that also determines coverage, giving Erie a right to intervene. *Howell*, 45 Ohio St.3d at 367. Under Ohio law, a failure of the insurance company to intervene binds it under collateral estoppel. *Id.*; but see *Gehm*, 112 Ohio St. 3d 514, holding that if the insurer is denied intervention, collateral estoppel will not prohibit future litigation of similar issues.

In sum, Erie seeks this Court's guidance regarding its coverage obligations, if any, owed under the subject insurance contract to Buckeye Hospitality and/or Choice Hotels. Under Ohio law, Erie is potentially bound by determination made in the case if Erie does not intervene and assert its position on issues determining coverage. Erie seeks the opportunity to participate in all aspects of this lawsuit, including discovery, to develop and be privy to the evidentiary record potentially relevant to any determinations made in the underlying action of a fact that also determines insurance coverage

      c.      **Erie did not know of the claims against Buckeye Hospitality and Choice Hotels until M.A. filed this lawsuit.**

"A party must have been aware of the risk that his interest may be affected by the litigation, and that its interest may not be fully protected by the existing litigants." *Stotts v. Memphis Fire Dep't*, 679 F.2d 579, 583 (6th Cir. 1982) (citations omitted). Under Ohio law, Erie's insured's will not protect Erie's interest, and yet Erie could be precluded from being heard on coverage and be bound by determinations in the underlying case, where a determination is made in the underlying action of a fact that also determines coverage, giving Erie a right to intervene. *Howell*, 45 Ohio St.3d at 367.

Erie did not know about the claims against Buckeye Hospitality and Choice Hotels until M.A. filed this lawsuit. This lawsuit, as set forth *supra*, is still in its initial stages. When aware

- 13 -

of the claims against Buckeye Hospitality and Choice Hotels, Erie sought to timely intervene in this lawsuit in a manner that will not disrupt the proceedings or otherwise prejudice the parties already involved.

      *d.*      ***No prejudice will befall the parties because of Erie's intervention.***

The only prejudice relevant to the timeliness determination is incremental prejudice from a would-be intervenor's delay in intervening, not prejudice from the intervention in and of itself.  See *Stotts*, 679 F.2d at 584; see also *Stallworth v. Monsanto Co.,* 558 F.2d 257, 267 (5th Cir. 1977) (relevant issue is not how much prejudice would result from allowing intervention, but rather how much prejudice would result from the would-be intervenor's failure to request intervention as soon as he knew or should have known of his interest in the case).

The parties will suffer no prejudice if this Court allows Erie to intervene.  As set forth *supra*, intervention will cause no delay in the lawsuit.  The parties have conducted little to no discovery.  The next deadline under this Court's case management order is not until April 10, 2019. Moreover, this Court has yet to rule on the motions to intervene filed by American Family and Nationwide.

Ultimately, intervention to obtain a declaratory judgment on available insurance coverage and the duty to defend has the advantage of allowing all parties in interest to be heard, in one case, with one judge to promptly determine what issues should be decided first, with an orderly procedure for disposition of those issues.  If this Court does not allow Erie to intervene, it will need to file a separate action naming as parties—at a minimum—Buckeye Hospitality, Choice Hotels, and M.A.  That separate lawsuit will involve many of the same issues and factual inquiries as this lawsuit.

- 14 -

### e.      There are no special circumstances.

There are no special circumstances at issue.  This lawsuit presents claims that appear to be outside the coverage afforded by the Policy, but for which Buckeye Hospitality and Choice Hotels seek defense and indemnification.  A declaratory judgment action is the appropriate vehicle to resolve those issues.  Given the overlap of issues between M.A.'s allegations and the coverage determination at issue, it will preserve resources if this Court allows Erie to intervene in this lawsuit rather than file a separate lawsuit.

### 2.      Erie has a "substantial legal interest" in this lawsuit.

The Sixth Circuit "subscribe[s] to a rather expansive notion of the interest sufficient to invoke intervention of right[.]"  *Grutter*, 188 F.3d at 398.  A proposed intervenor must show it has a substantial interest in the subject matter of litigation.  See *Jansen,* 904 F.2d at 341.  The Sixth Circuit rejects, however, the requirement of a "specific legal or equitable interest."  *Id.* (quoting *Purnell,* 925 F.2d at 948); see *Beckman Indus. v. Int'l Ins. Co.,* 966 F.2d 470, 472–73 (9th Cir. 1992) (rejecting the argument that an intervenor must have a claim relating to the merits of the action).

A proposed intervenor need only claim an interest "relating" to the property or transaction that is the subject of the action.  *Fed. R. Civ. P. 24(a)(2).*  The Sixth Circuit generally construes that interest liberally, *Bradley v. Milliken*, 828 F.2d 1186, 1192 (6th Cir. 1987), and an inquiry into the substantiality of the interest is "necessarily fact-specific."  *Michigan State v. Miller*, 103 F.3d 1240, 1246 (6th Cir. 1997).

"[M]ost courts have found that a contested duty to defend is a substantial interest for intervention purposes."  *Microsoft Corp. v. World Tech Invests. LLC*, No. 1:18-CV-2915, 2019 U.S. Dist. LEXIS 91754, at *3–4 (N.D. Ohio May 31, 2019). "[C]lose cases should be resolved in

- 15 -

favor of recognizing an interest under Rule 24(a)." *Grutter*, 188 F.3d at 398 (quoting *Miller*, 103 F.3d at 1247).

Erie has a "substantial legal interest" in this lawsuit. Erie issued a policy of insurance to Defendant Buckeye Hospitality, under which both Buckeye Hospitality and Choice Hotels seek defense and indemnification against M.A.'s claims. Erie is defending both Buckeye Hospitality and Choice Hotels, in this lawsuit, subject to a reservation of rights. Erie seeks this Court's guidance regarding its coverage obligations, if any, owed under the subject insurance to contract to Buckeye Hospitality and/or Choice Hotels.

To the extent that any determination of coverage owed is argued to be premature at this juncture, under Ohio law, Erie's insured's will not protect Erie's interest, and yet Erie could be precluded from being heard on coverage and be bound by determinations in the underlying case, where a determination is made in the underlying action of a fact that also determines coverage, giving Erie a right to intervene. *Howell*, 45 Ohio St.3d at 367. Erie seeks the opportunity to participate in all aspects of this litigation, including discovery, to develop and be privy to the evidentiary record.

### 3. Erie's ability to protect its interest against Plaintiff will be impaired absent intervention.

"To satisfy [the impairment] element of the intervention test, a would-be intervenor must show only that impairment of its substantial legal interest is possible if intervention is denied. This burden is minimal." *Grutter*, 188 F.3d at 399 (citations omitted).

If this Court does not allow Erie to intervene in this matter, Erie will have no opportunity to participate in all aspects of this litigation, including discovery, to develop and be privy to the evidentiary record. Access to the factual record is paramount to evaluate and determine coverage issues under the Policy.

- 16 -

Moreover, it is possible that M.A. along with Buckeye Hospitality and/or Choice Hotels may direct this lawsuit in a manner designed to trigger insurance coverage.  If Erie cannot participate in this lawsuit, it will have no prospect of participating in the development of a complete and accurate factual record.  Likewise, if a judgment or stipulation is reached in this lawsuit, Erie may be foreclosed from later challenging that factual finding.

Finally, given M.A.'s anonymous status, it is unclear if and how Erie can obtain her identity for the purpose of joining her, and serving process upon her, in a separate declaratory judgment action.  Even if Erie successfully joins her in the separate lawsuit, litigating the coverage issues separate from M.A.'s claims against Buckeye Hospitality and Choice Hotels will necessitate overlapping written discovery, depositions, and trial presentations.

### 4.    The parties in the lawsuit do not adequately represent Erie's interests.

An "[a]pplicant for intervention bear[s] the burden of proving that they are inadequately represented by a party to the suit."  *United States v. Michigan*, 424 F.3d 438, 443 (6th Cir. 2005). The respective interests need only be different, not "wholly" adverse in order to support intervention.  *Purnell*, 925 F.2d at 950.  This burden has been described as minimal because it need only be shown "that there is a *potential* for inadequate representation."  *Grutter,* 188 F.3d at 400.  "If the interest of the absent party is not represented at all, or if all existing parties are adverse to the absent party, then she or he is not adequately represented."  *Grubbs,* 870 F.2d at 347.

The parties in the lawsuit do not represent Erie's interests.  It is possible that M.A. along with Buckeye Hospitality and/or Choice Hotels may direct the lawsuit in a manner designed to trigger insurance coverage.  M.A. has some incentive *not* to prove a willful and malicious injury caused by the defendants' conduct since such a determination will result in an exclusion from insurance coverage and, perhaps, less likelihood of recovery.  M.A. would also have incentive *not*

- 17 -

to appeal a determination that the defendants' conduct was merely negligent since such conduct is covered by the subject insurance policy and, therefore, increases the likelihood of a monetary recovery.

If Erie cannot participate in this lawsuit, it will have no opportunity to participate in the development of a complete and accurate factual record.  If a judgment or stipulation is reached in this lawsuit, Erie may be foreclosed from later challenging that factual finding.  See *Howell*, 45 Ohio St.3d at 367, earlier discussed.

**B.** **Erie is also entitled to permissive intervention under Fed.R.Civ.P. 24(b).**

Federal Rule of Civil Procedure 24(b)(1) generally governs "permissive intervention" as follows:

> On timely motion, the court may permit anyone to intervene who:
>
> (A)  is given a conditional right to intervene by a federal statute; or
>
> (B)  has a claim or defense that shares with the main action a common question of law or fact.

*Fed.R.Civ.P. 24(b)(1).*

When no conditional federal statutory right to intervention exists, the court may permit intervention if the proposed intervenor establishes that the motion for intervention (1) is timely and (2) "has a claim or defense that shares with the main action a common question of law or fact."  See *Michigan*, 424 F.3d at 445.  If the proposed intervenor establishes these two requirements, the court must "balance undue delay and prejudice to the original parties, if any, and any other relevant factors to determine whether, in the court's discretion, intervention should be allowed."  Id.

Erie's motion (1) is timely and (2) alleges at least one common question of law or fact.  As set forth *supra*, Erie's motion is timely.  Moreover, Erie has a protectable legal interest that is

FREUND, FREEZE & ARNOLD
A Legal Professional Association

subject to court evaluation and determination.  The basis for that evaluation and determination will be the factual record developed between the parties in this lawsuit.  Intervention to obtain a declaratory judgment on available insurance coverage and the duty to defend has the advantage of allowing all parties in interest to be heard, in one case, with one judge to promptly determine what issues should be decided first, with an orderly procedure for disposition of those issues.

There is no practical reason for the parties to litigate the same factual record multiple times in separate actions.  Indeed, if Erie cannot intervene in this lawsuit, it will need to file a separate declaratory judgment action regarding the coverage issues.  It is likely that American Family and Nationwide, if unable to intervene in this lawsuit, will also file separate declaratory judgment actions.  M.A. will be a party to not only this lawsuit, but also the three separate declaratory judgment actions.  Erie's intervention, at this juncture, will not delay the proceedings or prejudice the parties.  If anything, the parties will suffer more inconvenience if required to litigate the coverage issues separate from this action.

## V.      CONCLUSION

For the reasons set forth herein, Erie requests this Court grant its Motion to Intervene.


Respectfully submitted,


*/s/ Gordon D. Arnold*
Gordon D. Arnold (0012195)
Bartholomew T. Freeze (0086980)
FREUND, FREEZE & ARNOLD
Fifth Third Center
1 South Main Street, Suite 1800
Dayton, OH 45402-2017
937-913-0103; 937-425-0203 (fax)
garnold@ffalaw.com; bfreeze@ffalaw.com
**Attorneys for Intervenor, Erie Insurance Exchange**

- 19 -

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that a true and accurate copy of the foregoing was served this 2nd day of December, 2019, by the Court's electronic filing system, upon all counsel of record.


<u>*/s/ Gordon D. Arnold*</u>
Gordon D. Arnold (0071376)
Bartholomew T. Freeze (0086980)

**FREUND, FREEZE & ARNOLD**
**A Legal Professional Association**