**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | | |
|---|---|---|
| M.A., an individual, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 2:19-cv-00849 |
| | ) | |
| v. | ) | Chief Judge Algenon L. Marbley |
| | ) | |
| WYNDHAM HOTELS & | ) | Chief Mag. Judge Elizabeth Preston Deavers |
| RESORTS, INC., *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

**PLAINTIFF M.A.'S MOTION FOR A PROTECTIVE ORDER TO PREVENT THE
VOLUNTARY DISCLOSURE OF PLAINTIFF'S IDENTITY TO HER TRAFFICKER(S)**

COMES NOW, the Plaintiff M.A. (the "Plaintiff" or "M.A."), by and through the undersigned counsel, and respectfully moves this Honorable Court to enter a protective order, pursuant to Fed. R. Civ. P. 26(c) and Fed. R. Civ. P. 5.2 to ensure that all parties in this matter do not volunteer or otherwise provide the Plaintiff's true identity to her trafficker(s) or any of his associates in order to safeguard against any unnecessary or unreasonable risk to the Plaintiff's safety.

**INTRODUCTION**

The Plaintiff is a survivor of sex trafficking. *See* Compl. at ¶ 3. As such, she is also a crime victim within the meaning of the Trafficking Victims Protection Reauthorization Act ("TVPRA"). *Id.* at ¶ 106. Due to the sensitive and private nature of the issues involved, and more importantly, the potential for retaliation, the Plaintiff is pursuing this case under a pseudonym consistent with the previously entered Stipulated Protective Order. (ECF No. 60-1). Per the Stipulated Protective Order, witnesses in this case may learn the Plaintiff's true identity subject to its terms and conditions. *See generally*, ECF No. 60-1. Since the entry of the

Stipulated Protective Order, one or more of the Defendants have expressed an interest in approaching the Plaintiff's trafficker(s) during the course of discovery. In advance of any such contact, the Plaintiff seeks a protective order that will clearly define the parameters under which contact with the Plaintiff's trafficker(s) shall occur to protect the Plaintiff from a risk of serious harm. If any party in this case is permitted to disclose the Plaintiff's true identity or identifying information to her trafficker(s) or his associates, it could subject her to the violent and dangerous harms she now seeks redress from in this litigation via the TVPRA's civil remedy provisions pursuant to 18 U.S.C. § 1595 that are not dependent upon on a criminal conviction of Plaintiff's trafficker, thus the Plaintiff is not automatically protected from her trafficker(s) because of his incarceration, and in any event is not protected from all of his associates.

In the instant case, the Plaintiff alleges Defendants failed to implement policies and procedures and other safeguards known to prevent human trafficking and that Defendants profited from the sex trafficking of the Plaintiff at their hotels in violation of the TVPRA. *See* Compl. at ¶¶ 63, 64, 72, 88, 91, 92, 94, and 97. As this Court and other courts have held, there need not be an overt act to pursue liability under § 1595. *M.A. v. Wyndham Hotels & Resorts, Inc.*, 425 F. Supp. 3d 959, 964 (S.D. Ohio 2019). Thus, these defendants can be liable to the Plaintiff without having violated the criminal sections of the TVPRA and independently of the trafficker's misconduct. *See Ricchio v. Bijal, Inc.*, 424 F. Supp. 3d 182, 194 (D. Mass. 2019); *A.B. v. Marriott Int'l Inc.*, No. 19-5770, 2020 WL 1939678, at *20 (E.D. Pa. Apr. 22, 2020). Section 1595 liability does not include the requirement that a plaintiff demonstrate defendants' direct engagement in a commercial sex act. Instead, it is the defendants' knowledge of trafficking and the knowledge of the signs of trafficking at Defendants' hotels that creates liability. At the outset, the testimony of Plaintiff's trafficker(s) has little to no probative value

into whether Brand defendants benefited from sex trafficking. Certainly, any such evidence to demonstrate whether or not Plaintiff was trafficked at a particular hotel could be obtained from Defendants' own files and systems, other witnesses, and from Plaintiff herself.

The ultimate issues before this Court are (1) whether the Plaintiff is forced to sacrifice the protections afforded to her as a crime victim under both federal and state law, and (2) whether the Defendants have the right to unilaterally engage in actions that would potentially endanger Plaintiff's life simply because she exercised her rights by filing a lawsuit under the TVPRA. The Plaintiff respectfully submits the answer to both questions is "no."

Under Fed. R. Civ. P. 26(c), this Court has the power, upon a demonstration of "good cause," to protect the Plaintiff's rights under the law because this case involves not only the Plaintiff's personal safety and privacy, but also involves issues important to the public. In fact, Magistrate Judge Fricke in the Western District of Washington recently acknowledged the importance of Plaintiff's safety and privacy and has suggested a protective order whereby consent of the parties is required before Plaintiff's identity is disclosed to the trafficker(s), affiliate(s), or "other persons or entities as needed to litigate any claims or defenses" after signing an acknowledgment and agreement to be bound. *M.L. v. Craigslist*, No. 19-cv-06153, Dkt. 128-1 at 5 (W.D. Wash. Jun. 18, 2020) (Fricke, M.J.).

While the Plaintiff agrees that all litigants have the right to adequately investigate the material issues in this case, she simply requests that the Court endorse the protections afforded to her as a survivor of sex trafficking. Moreover, Defendants do not have a right to engage in investigations that would put the Plaintiff's life in danger, specifically if a less drastic investigative process can be put in place that protects both Plaintiff's life and Defendants' right

to investigate their case. As such, the Plaintiff proposes that no party, nor counsel for any party, disclose the Plaintiff's Identity to the Plaintiff's trafficker(s) or his affiliates.

## I.     STANDARD OF REVIEW

Courts have broad discretion to direct discovery, including to protect litigants from harassment and abuse. *See Procter & Gamble Co. v. Bankers Trust Co*., 78 F.3d 219, 227 (6th Cir. 1996); *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 36 (1984) ("Rule 26(c) confers broad discretion on the trial court to decide when a protective order is appropriate and what degree of protection is required."). The Federal Rules of Civil Procedure underscore such discretion by explaining that courts may, for "good cause," issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense. *See* Fed. R. Civ. P. 26(c)(1). Accordingly, a court can issue a protective order "forbidding the disclosure of discovery" at issue, or "forbidding inquiry into certain matters, or limiting the scope of disclosure or discovery to certain matters." *Id.*

## II.     LEGAL ARGUMENT

### A.     Federal Statutory and Common Law Protects Crime Victims From Unnecessary Safety Risks or Potential for Intimidation From Their Assailants

Various federal and state laws mandate protections for crime victims, such as a right to "reasonable protection" from the perpetrator. *See, e.g.*, 18 U.S.C.A. § 3771 (a)(1) (crime victims have the "right to be reasonably protected from the accused."). The Plaintiff also has a common law right to privacy in matters of a personal nature. *See Barbe v. McBride*, 521 F.3d 443, 459 (4th Cir. 2008) (recognizing that the government has "a valid interest in protecting victims of sexual abuse from needless harassment, humiliation, and 'unnecessary invasions of privacy'"). This is often referred to as the right to "informational privacy." *Bloch v. Ribar*, 156 F.3d 673,

683 (6th Cir. 1998).  The right to informational privacy encompasses the victim's legal interest in the nondisclosure of certain personal information.  *Id*. at 684; *see Florida Star v. B.J.F.*, 491 U.S. 524, 536 (1989) (finding that "it is undeniable" that protecting the physical safety of sexual assault victims, "who may be targeted for retaliation if their names become known to their assailants," is a "highly significant" state interest and that such an interest, under certain circumstances, may warrant imposition of civil sanctions for publication of rape victim's name); *Anderson v. Blake*, 469 F.3d 910, 914 (10th Cir. 2006) (holding that a rape victim has a constitutionally protected privacy interest in videotape depicting her rape).

All survivors of human trafficking should share in our fundamental constitutional right to access the courts without worry or fear that exercising their rights could unnecessarily put their safety at risk.  *See Chappell v. Rich*, 340 F.3d 1279, 1282 (11th Cir. 2003) ("Access to the courts is clearly a constitutional right, grounded in the [right to petition clause of the] First Amendment, the Article IV Privileges and Immunities Clause, the Fifth Amendment and/or the Fourteenth Amendment"); *Ryland v. Shapiro*, 708 F.2d 967, 971 (5th Cir. 1983) (noting that access to courts is a fundamental right).  The unnecessary disclosure of a crime victim's identity could interfere with this right and cause other victims and survivors to forfeit their right to pursue justice. *See, Globe Newspaper Co. Inc. v. Clerk of Suffolk Cnty Superior Court*, No. 01-5588*F, 2002 WL 202464, *6 (Mass Super. Feb. 4, 2002) (unpublished) ("If the identity of [sexual abuse] victims are not protected by the courts, then their access to the courts will be severely diminished, because they will not be able to turn to the courts for relief from or compensation of their emotional injuries without aggravating those same injuries."); *see also cf. Wilmink v. Kanawha County Board of Education*, No. 2:03-cv-179, 2006 WL 456021, *3 (S.D. W. Va. Feb. 23, 2006) ("If individuals are assured their identities will be protected in situations like those at issue in this

[sexual abuse case] and related cases, they are more likely to come forward and candidly recount their experiences.").

Under the Crime Victims' Rights Act, 18 U.S.C. § 3771 ("CVRA"), a crime victim has "[t]he right to be treated with fairness and with respect for the victim's dignity and privacy." *See* 18 U.S.C. § 3771(a)(8). The CVRA has served as a basis upon which a court issued a protective order limiting the use and disclosure of discovery materials. *See, e.g.*, *United States v. Hines*, Case No.: 17-CR-135, 2017 WL 1250844, *1-2 (N.D. Ill. Apr. 5, 2017) (unpublished) (issuing protective order limiting use and disclosure of discovery materials based upon, *inter alia*, the victim's rights to protection and to privacy under the CVRA. Congress also included several privacy protections in the 2013 reauthorization of the Violence Against Women and Department of Justice Reauthorization Act ("VAWA"). In VAWA's privacy protections, it is clear that one of the main purposes was to protect victims of sexual assault; therefore, the Plaintiff asserts that the objective of VAWA should be kept at the forefront of this Court's consideration when evaluating the Plaintiff's request that her trafficker(s) not be given her true identity by the litigants in this case.

**B.    Ohio's Marsy's Law Protects Crime Victims From Unnecessary Safety Risks or Potential for Intimidation From Their Assailants**

Furthermore, Ohio's version of Marsy's Law [Oh. Const. Art. I, § 10a(B)] reads as follows:

> **(B) The victim**, the attorney for the government upon request of the victim, **or the victim's other lawful representative, in any proceeding** involving the criminal offense or delinquent act against the victim or **in which the victim's rights are implicated, may assert the rights enumerated in this section** and any other right afforded to the victim by law. If the relief sought is denied, the victim or the victim's lawful

representative may petition the court of appeals for the applicable district, which shall promptly consider and decide the petition.

…

**(D)** As used in this section, "victim" means a person against whom the criminal offense or delinquent act is committed or who is directly and proximately harmed by the commission of the offense or act. The term "victim" does not include the accused or a person whom the court finds would not act in the best interests of a deceased, incompetent, minor, or incapacitated victim.

(emphasis added). Black's Law Dictionary defines "proceeding" to include the "regular or orderly progression of a lawsuit, including all acts and events between the time of commencement and the entry of judgment." Admittedly, the protections afforded to victims under Marsy's Law is typically applied by Courts within the criminal justice system, §10a(B) references "any proceeding" which the Plaintiff contends includes this case.

The aforementioned state and federal crime victims' rights laws exist without competing with the compelling constitutional rights of criminal defendants, including the right to confront witnesses against them. *See* U.S. Const. amend. VI. In this case, no such balancing of constitutional rights are implicated by any Defendant. This is civil litigation, and the Plaintiff's criminal traffickers are not parties to this case, and at least one of the traffickers and some of their associates are still at large – all weighing in favor of greater protections for the Plaintiff as the most prudent course. As discussed above, trial courts have discretion to make discovery determinations based on prudence, even if a particular state or federal crime victims' rights law does not have direct application to the issues in this case. These built-in protections were designed to protect the victim consistently from unnecessary risk of harm or humiliation.

**C.** **Proper Protections Are Required to Prevent Intimidation and Risk of "Destroying the Cause of Action."**

Additionally, to ensure the Plaintiff's safety, counsel for Plaintiff proposes that the parties be prohibited from volunteering or otherwise disclosing the Plaintiff's true identity to her trafficker(s) or any of his associates.  Additionally, Defendants should put Plaintiff's counsel on notice of the nature and character of investigations related to the sex trafficker or his associates prior to engaging in such investigations.  This will allow the Parties to confer regarding the nature of any proposed investigation and fashion appropriate safeguards and protocols related to these investigations.

In the instant action, the risk of danger to Plaintiff cannot be overstated.  While she was being trafficked and exploited for sex, the Plaintiff was subjected to severe violence and abuse. *See, e.g.*, Compl. at ¶¶ 4, 50, 55.  Prohibiting the disclosure of Plaintiff's identity to the Plaintiff's trafficker(s) or his associates would not inhibit Defendants' ability to defend this case. Indeed, it is impossible to conceive of why Defendants believe such an action could possibly benefit their case.  The Defendants have access to sufficient facts alleged in the Complaint and discovery without communicating directly with the Plaintiff's trafficker from which they can investigate and defend the Plaintiff's claims.  Therefore, there is not an absolute need to disclose the Plaintiff's true identity as the party Plaintiff or any information that could lead to discovering the Plaintiff's identify by the very perpetrators who trafficked her for sex.

Furthermore, Defendants have utterly failed to demonstrate how speaking with Plaintiff's trafficker(s) or his associates would lead to relevant information to their defense, let alone why they need to disclose the Plaintiff's identity to her trafficker(s).  Even if such discovery were critical to any defenses (which it is not) the risk of injury to the Plaintiff, if such information were disclosed, outweighs the need for its disclosure.  *See Flores v. Albertsons, Inc* 2002 U.S. Dist. LEXIS 6171, 2002 WL 1163623, No. CV 01-00515 AHM (SHX), (C.D.Cal. April 9, 2002)

at 6 (citing *Flynn v. Goldman, Sachs & Co.* (S.D.N.Y. Sept. 16, 1993) 1993 U.S. Dist. LEXIS 12801, 1993 WL 362380, No. 91 Civ. 0035 (KMW)).  Allowing the Defendants to reveal the Plaintiff's identity to her trafficker(s) unnecessarily opens the door to "the danger of intimidation, the danger of destroying the cause of action" and would inhibit plaintiffs in pursuing their rights. *Zeng Liu v. Donna Karan Int'l, Inc.*, 207 F. Supp. 2d 191 *citing Ansoumana v. Gristede's Oper. Corp.* (S.D.N.Y. Nov. 8, 2000) No. 00 Civ. 0253 (AKH) (hearing tr. at 12); *see also In re Reyes* 814 F.2d at 170.  Defendants' proposed course of action, without reasonable justifications, i.e., disclosing the Plaintiff's true identity to her trafficker(s), serves only to chill the litigation and discourage others who may want to stand up against the horrors of sex trafficking from bringing additional lawsuits against hotel defendants.

While the Plaintiff understands and appreciates the Defendants' need to defend and present their case, these interests must be balanced between a course of discovery which is unlikely to reveal relevant evidence and instead will serve to indimitate and otherwise endanger the Plaintiff's life.  Thus, based on courts' discretion to protect litigants from harassment and abuse in the discovery process, the particular facts of this case, and the crime victims' rights currently recognized in multiple jurisdictions, this Court should enter a protective order limiting the disclosure of Plaintiff's Identity.

Pursuant to the Stipulated Protective Order, Plaintiff is proceeding under a pseudonym and she has provided her true identity to the hotel Defendants. Plaintiff's pursuit of this case under a pseudonym evidences her desire to avoid the embarrassment, harassment and oppression that may flow from asserting her rights as a sex trafficking survivor.  *See* ECF No. 60-1.  In the Stipulated Protective Order, the Plaintiff agreed that witnesses in this case can know her true identity subject to the conditions of the protective orders in this case, including the

requirement that any such witness sign the acknowledgement to be bound to the confidentiality and protective orders in this case. *Id*. at 2-3. However, earlier this year, since the entry of Stipulated Protective Order, one or more of the Defendants proposed directly approaching the Plaintiff's trafficker(s) during the course of discovery in this case and disclosing the Plaintiff's true identity. Therefore, in advance of any such contact, the Plaintiff seeks a case management order that would prevent any party from simply volunteering or otherwise providing the Plaintiff's true identity or any of her identifiers to the Plaintiff's alleged trafficker or his associates. Moreover, prior to engaging in such an investigation, Defendants should notify Plaintiff's counsel of the nature and character of such an investigation. This request will not and does not prejudice the Defendants' ability to defend this litigation. Furthermore, Plaintiff's substantial privacy and safety interest would substantially outweigh any potential prejudice such a condition would cause a Defendant in this case.

The Plaintiff seeks to remove the risks inherent in any irrelevant or tangential course of action the Defendants may pursue by reaching out to her trafficker(s) about his crimes. Good cause clearly exists to preclude the disclosure of Plaintiff's identity to her trafficker(s) or his associates, because such disclosure would likely put her at severe risk of serious harm.

Relatedly, courts have protected whistleblowers' and informants' true identities for safety reasons. *See e.g.*, *G.K. Las Vegas Ltd. P'ship v. Simon Prop. Grp., Inc.*, No. 204CV01199DAEGWF, 2008 WL 11388585, at *5 (D. Nev. June 18, 2008) (not requiring plaintiffs to disclose employee whistleblower's identity, due in part to the risk to his or her job); *Bennett v. Kingsbridge Heights Rehab. Care Ctr.*, No. 07 CIV. 9456 LAK/DFE, 2009 WL 3294301, at *3–4 (S.D.N.Y. Oct. 8, 2009) (denying motion to compel disclosure of informants' identities). Although informants are protected by a particular privilege, *Bennett* did not rely on

that alone, but on the court's authority "to preclude certain discovery if the burden . . . of the proposed discovery outweighs its likely benefit, or if preclusion is needed to protect a party or person from annoyance, embarrassment, or oppression," even where no privilege applies, and noted that a burden could be "risks to . . . physical security and privacy."  2009 WL 3294301, at *3–4 (internal citations omitted).

Courts have even forbidden disclosures of identities to protect people from harassment or reprisals for their political or civil rights involvement.  *See*, *e.g.*, *NAACP v. State of Ala. ex rel. Patterson*, 357 U.S. 449, 462–63 (1958) (an order requiring the advocacy group to reveal member names in a state-initiated lawsuit to enjoin the organization violated due process).

The Plaintiff, like the whistleblowers in *G.K. Las Vegas*, faces repercussions if her identity is disclosed.  She is at risk if there are no protections in place to prevent the disclosure of her identity to her trafficker(s) during the discovery process.  As the *Bennett* case noted, physical danger and threats to privacy are both burdens that judicial discretion over discovery is designed to mitigate, even when a specific privilege against disclosure does not apply.

Similar to *Penzato*, the Plaintiff here is a survivor of sex trafficking and sexual assault, and thus should be afforded additional protections, particularly for her privacy.  Moreover – as in the *NAACP* case – the Plaintiff has similar reasons to fear reprisal from people who committed abuses against her, just as members of the NAACP feared violent reprisal in Alabama by those opposed their civil rights work.  In this case, disclosing the Plaintiff's identity to her trafficker(s) presents a danger to her person and she is understandably concerned for her safety.

Given the extensive, related reasoning in federal statutory and case law for curtailing otherwise permissible discovery, it is reasonable to determine that the Defendants should not be allowed to have *ex parte* contact with the Plaintiff's trafficker(s) and should not be able to reveal

the Plaintiff's identity to the trafficker(s) or his associates, and certainly not without proper protocols in place.

The Plaintiff proposes that the Defendants demonstrate good cause prior to making contact with the Plaintiff's trafficker(s) and that, if needed, the Court appoint a special master or institute a protocol whereby Defendants may demonstrate what circumstances warrant contact with the Plaintiff's trafficker(s) and whether the Defendants propose to disclose the Plaintiff's true identity to her trafficker(s). For example, if during a duly noticed deposition, the trafficker(s) or his associates voluntarily and for the first time, testifies either that he or she: (1) has knowledge of commercial sex activity involving a Defendants' hotel during the time period alleged in Plaintiff's Complaint; or (2) volunteers the Plaintiff's true identity, the question or relevance shifts. Courts have permitted this approach in other cases, specifically for *ex parte* contacts between defendants and non-party plaintiffs' treating physicians, where the primary concern was protecting the physician-patient relationship.[1] The *Vioxx* court noted that the discovery limits would "provide a safeguard against improper influence by any party." *In re Vioxx Prod. Liab. Litig.,* 230 F.R.D. 470, 473 (E.D. La. 2005). Similarly, another court expressed concern about improper collusion between the defendants and a non-party treating physician. *Manion v. N.P.W. Med. Ctr. of N.E. Pennsylvania, Inc.*, 676 F. Supp. 585, 594–95 (M.D. Pa. 1987). Protecting sex trafficking survivors, such as the Plaintiff, from non-party

---

[1] *See, e.g.*, *Saucier v. Lakeview Corp.*, No. 1:14CV249-LG-JCG, 2014 WL 12906612, at *3–4 (S.D. Miss. Dec. 30, 2014) (protective order forbidding *ex parte* contact; discovery from a treating physician had to be through a deposition); *In re Kugel Mesh Hernia Repair Patch Litig.*, No. MDL 07-1842ML, 2008 WL 2420997, at *1 (D.R.I. Jan. 22, 2008), *objections overruled*, No. MDL 07-1842 ML, 2008 WL 2433253 (D.R.I. Feb. 25, 2008), and *order clarified*, No. MDL 07-1842ML, 2008 WL 2810207 (D.R.I. July 21, 2008) (citing the *Vioxx* case and forbidding *ex parte* communications with plaintiffs' treating physicians); *In re Vioxx Prod. Liab. Litig.*, 230 F.R.D. 470, 472 (E.D. La.), *modified on reconsideration*, 230 F.R.D. 473 (E.D. La. 2005), and *modified*, No. MDL 1657, 2005 WL 2036797 (E.D. La. July 22, 2005) (requiring both parties to serve five days notice if they wished to interview plaintiffs' physicians, who were not parties but were potential defendants); *Manion v. N.P.W. Med. Ctr. of N.E. Pennsylvania, Inc.*, 676 F. Supp. 585, 594–95 (M.D. Pa. 1987) (forbidding *ex parte* contact without "reasonable advance notice").

traffickers is an even more compelling justification than protecting physician-patient privilege, especially since the traffickers are unlikely to be witnesses as the plaintiffs' physicians were. Improper collusion is also more likely where the non-party risks felony criminal charges for the conduct at issue instead of a malpractice suit.

## **CONCLUSION**

WHEREFORE, premises considered, the Plaintiff respectfully requests that this Honorable Court grant this motion for Protective Order regarding her identity and identifying information and that such information not permitted to be disclosed to the trafficker or his affiliates.

DATED: June 23, 2020         Respectfully Submitted,

*/s/ Steven C. Babin, Jr.*
Steven C. Babin, Jr. (0093584)
Babin Law, LLC
1320 Dublin Road, #100
Columbus, Ohio 43215
T: 614.384.7035
E: steven.babin@babinlaws.com

Kimberly L. Adams, *pro hac vice*
Fla. State Bar. No.: 0014479
Kathryn L. Avila, *pro hac vice*
Fla. State Bar No.: 1019574
LEVIN, PAPANTONIO, THOMAS, MITCHELL,
RAFFERTY & PROCTOR, P.A.
316 S. Baylen Street, Suite 600
Pensacola, Florida 32502-5996
T: 850.435.7056
F: 850.436.6056
E: kadams@levinlaw.com

Gregory M. Zarzaur, *pro hac vice*
Ala. State Bar No.: ASB-0759-E45Z
Anil A. Mujumdar, *pro hac vice*

Ala. State Bar. No.: ASB-2004-L65M
ZARZAUR
2332 Second Avenue North
Birmingham, Alabama 35203
T: 205.983.7985
F: 888.505.0523
E: gregory@zarzaur.com / anil@zarzaur.com

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on June 23, 2020, I electronically filed the foregoing with the

Clerk of the Court using the CM/ECF System, which will send notification of such filing to all

counsel of record.

Dated this 23rd day of June 2020.

Christopher B. Donovan (*pro hac vice*)
**DLA PIPER LLP**
1000 Louisiana Street, Suite 2800
Houston, Texas 77002
T: 713-425-8449
F: 713-425-8401
E: christopher.b.donovan@dlapiper.com
*Counsel for Defendant Wyndham Hotels & Resorts, Inc.*

David S. Sager (*pro hac vice*)
**DLA Piper LLP (US)**
51 John F. Kennedy Parkway, Suite 120
Short Hills, New Jersey  07078-2704
T: 973-520-2550
F: 973-520-2551
E: david.sager@us.dlapiper.com
*Counsel for Defendant Wyndham Hotels & Resorts, Inc.*

Michael R. Reed
Elise K. Yarnell
**HAHN LOESER PARKS LLP**
65 East State Street, Suite 1400
Columbus, Ohio 43215
T: 614-233-5165
F: 614-221-5909
E: mreed@hahnlaw.com/ eyarnell@hahnlaw.com
*Counsel for Defendant Wyndham Hotels & Resorts, Inc.*

John M. Hamrick
Georgia Bar No. 322079
(admitted *pro hac vice*)
**HOLLAND & KNIGHT LLP**
1180 West Peachtree Street, NW
Suite 1800
Atlanta, GA 30309

Telephone: (404) 817-8500
Facsimile: (404) 881-0470
john.hamrick@hklaw.com
*Counsel for Defendant Inter-Continental Hotels Corp.*

William N. Shepherd
**HOLLAND & KNIGHT LLP**
Florida Bar No. 88668
(admitted *pro hac vice*)
222 Lakeview Avenue
Suite 1000
West Palm Beach, FL 33401
Telephone: (561) 883-2000
Facsimile: (561) 650-8399
William.shepherd@hklaw.com
*Counsel for Defendant Inter-Continental Hotels Corp.*

D. Patrick Kasson
Steven A. Chang
Francesca R. Boland
**REMINGER CO., LPA**
200 South Civic Center Drive, Suite 800
Columbus, Ohio 43215
T: 614-232-2418
F: 614-232-2410
E: pkasson@reminger.com / schang@reminger.com / fboland@reminger.com
*Counsel for Defendant Inter-Continental Hotels Corp.*

Sara M. Turner *(admitted pro hac vice)*
**Baker, Donelson, Bearman, Caldwell & Berkowitz, PC**
420 20th Street North, Suite 1400
Birmingham, AL 35203
Phone: 205-250-8316
Fax: 205-488-3716
E-mail: Smturner@bakerdonelson.com
*Counsel for Defendant Choice Hotels International, Inc.*

Alyson A. Terrell
Jennifer S. Heis
**ULMER & BERNE LLP**
65 E. State Street, Suite 1100
Columbus, Ohio 43215
T: 614-229-0042
F: 614-229-0043
E: aterrell@ulmer.com / jheis@ulmer.com

*Counsel for Defendant Choice Hotels International, Inc.*

Kevin C. Connell
**BRUNS CONNELL VOLLMAR & ARMSTRONG**
40 North Main Street, Suite 2010
Dayton, Ohio 45423
T: 937-999-6261
F: 937-999-6290
E: kconnell@bcvalaw.com
*Counsel for Defendant Choice Hotels International, Inc.*

Chenee M. Castruita
Douglas P. Holthus
**MAZANEC, RASKIN & RYDER, CO., LPA**
175 South Third Street, Suite 1000
Columbus, Ohio 43215
T: 614-228-5931
F: 614-228-5934
E: ccastruita@mrrlaw.com / dholthus@mrrlaw.com
*Attorneys for Defendant S&S Airport Motel, LLC*

Joseph L. Piccin
**JOSEPH L. PICCIN, CO., LLC**
3010 Hayden Road
Columbus, Ohio 43235
T: 614-659-9616
F: 614-798-1935
E: jlp@joepiccin.com
*Counsel for Defendant First Hotel Management, LLC*

Steven A. Keslar
Steven D. Strang
**GALLAGHER SHARP, LLP**
35 North Fourth Street, Suite 200
Columbus, Ohio 43215
T: 314-340-2304
F: 314-340-2301
E: skeslar@gallaghersharp.com / sstrang@gallaghersharp.com
*Counsel for Defendant First Hotel Management, LLC*

Mathew A. Parker
Samuel Neal Lillard
**FISHER & PHILLIPS, LLP**
250 West Street, Suite 400
Columbus, Ohio 43215

T: 614-453-7608
F: 614-221-1409
E: mparker@fisherphillips.com / slillard@fisherphillips.com
*Counsel for Defendant Krrish Lodging, LLC*

Ali I. Haque
Quintin Franc Lindsmith
**Bricker & Eckler, LLP**
100 S. Third Street
Columbus, OH 43215
T: 614-227-2359
F: 614-227-2390
E: ahaque@bricker.com / qlindsmith@bricker.com
*Counsel for Defendant Columbus Hospitality, LLC*

Gregory P. Barwell
**WESP/BARWELL, LLC**
100 East Broad Street, Suite 2350
Columbus, Ohio 43215
T: 614-456-0488
F: 614-456-0488
E: gbarwell@wesplaw.com
*Counsel for Defendant Columbus Hospitality, LLC*

Paul Bernhart
Daniel T. Downey
**FISHEL, HASS, KIM & ALBRECHT DOWNEY, LLP**
7775 Walton Parkway, Suite 200
New Albany, Ohio 43054
T: 614-221-1216
E: ddowney@fisheldowney.com / pbernhart@fisheldowney.com
*Counsel for Defendant Buckeye Hospitality, Inc.*

*/s/ Kathryn L. Avila*
Kathryn L. Avila, Esq.