## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO
## EASTERN DIVISION

| | | |
|---|---|---|
| M.A., an individual, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO: 19-cv-00849 |
| | ) | |
| | ) | |
| WYNDHAM HOTELS AND RESORTS, | ) | Chief Judge Algenon L. Marbley |
| INC; INTER-CONTINENTAL HOTELS | ) | Chief Magistrate Judge Elizabeth P. |
| GROUP PLC; SIX CONTINENTS HOTELS | ) | Deavers |
| INC.; HOLIDAY HOSPITALITY | ) | |
| FRANCHISING, LLC; CHOICE HOTELS | ) | |
| INTERNATIONAL, INC.; S&S AIRPORT | ) | |
| MOTEL, LLC, d/b/a Days Inn by Wyndham - | ) | |
| Columbus Airport; FIRST HOTEL | ) | |
| MANAGEMENT, LLC, d/b/a Days Inn by | ) | **JURY TRIAL DEMANDED** |
| Wyndham  Columbus East Airport; MGH | ) | |
| HOSPITALITY, LTD, d/b/a Days Inn by | ) | |
| Wyndham - Columbus East Airport; BRICE | ) | |
| HOTEL, INC., d/b/a Days Inn by Wyndham - | ) | |
| Columbus East Airport; KRRISH LODGING, | ) | |
| LLC, d/b/a Days Inn by Wyndham - Grove | ) | |
| City Columbus South; ASH MANAGEMENT | ) | |
| CORPORATION, d/b/a Dasy Inn by | ) | |
| Wyndham - Columbus North; COLUMBUS | ) | |
| HOSPITALITY, LLC, d/ba/ Crowne Plaza | ) | |
| Columbus - Downtown, an IHG Hotel; | ) | |
| BUCKEYE HOSPITALITY, INC., d/b/a | ) | |
| Comfort Inn North Conference Center; | ) | |
| DREAM LAND HOTELS, LLC, d/b/a Super | ) | |
| 8; | | |
| | | |
| Defendants. | | |

## <u>FIRST AMENDED COMPLAINT</u>

COMES NOW the Plaintiff M.A., by and through the undersigned counsel, and respectfully submits her First Amended Complaint for damages and makes the following averments.

## INTRODUCTION

1.     For years, sex trafficking ventures have brazenly operated out of hotels throughout this country, and criminals, working hand-in-hand with hotels parade their misconduct openly on hotel properties across the United States while the hotels and the hospitality industry remain willfully blind to criminal misconduct, at the expense of human life, human rights, and human dignity.  The human trafficking industry as it exists in the United States could not function without the complicity of the hospitality industry year after year after year.[1]

2.     Wyndham, IHG, and Choice brand hotel properties know and have known for more than a decade that criminal sex trafficking of adults and children repeatedly occurs on their properties throughout this country.  Rather than take timely and effective measures to prevent human trafficking, Wyndham, IHG, and Choice brand hotels, and their respective parent or subsidiary entities, have instead failed to address the presence of human trafficking on hotel properties and continued to profit from traffickers or johns renting rooms for the explicit and readily apparent purpose of human trafficking.

3.     The Plaintiff, identified by her initials M.A., is a survivor of sex trafficking. Beginning while she was still a minor, a sex trafficker advertised M.A. on www.backpage.com

---

[1]     *See* WOIO, *Ohio Ranked One Of Highest Sex-Trafficking States In Nation* (Feb. 23, 2019), https://www.wsaz.com/content/news/Ohio-ranked-one-of-highest-sex-trafficking-states-in-nation-506270721.html.

and trafficked her for sex at hotels in Columbus, Reynoldsburg, and Grove City, Ohio including numerous times at Wyndham, IHG, and Choice brand hotel properties.[2]

4.     For more than a year, the Plaintiff was sold via commercial sex transactions by two (2) different sex traffickers at the Defendants' hotel properties both as a minor and through force, fraud, and coercion.  While she was trafficked for sex at the Defendants' hotel properties, M.A. was isolated, threatened, and physically and mentally abused.

5.     As a direct and proximate result of the Wyndham, IHG, and Choice brand managers and their hotel brands consistent refusals to prevent human trafficking on their hotel properties, M.A. was sex trafficked, sexually exploited, and victimized repeatedly at Wyndham, IHG, and Choice brand hotels.

6.     The Plaintiff brings this action against the Defendants who enabled, harbored, maintained, facilitated, financially benefited from, or otherwise participated in, a sex trafficking venture in which M.A. was trafficked for sex, sexually exploited, and victimized in violation of the Trafficking Victims Protection Reauthorization Act ("TVPRA"), 18 U.S.C. § 1595.

## JURISDICTION AND VENUE

7.     This Honorable Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331 because this action arises under the Constitution, laws, or treaties of the United States.

8.     Venue is proper in this district pursuant to 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to the claims asserted in this action occurred in the judicial district where this action is brought.

---

[2]     Human trafficking ventures operating from hotels was a known danger in the hospitality industry in Columbus, Ohio prior to the sex trafficking the Plaintiff suffered.  *See e.g.*, *Glenn McEntyre*, 10WBNS.com, *Columbus Police Focus In On Sex Trade At Area Hotels* (Sept. 19, 2013), https://www.10tv.com/article/news/crime/crime-tracker/columbus-police-focus-sex-trade-area-hotels/530-5928a17e-e6b5-43d6-980b-e9b6fe1bfcf9.

## PARTIES

9.     Plaintiff M.A. is an individual over the age of majority under Ohio law and presently resides in Ohio.  The Plaintiff is a "victim" of sex trafficking as protected under applicable provisions of the TVPRA.  The Plaintiff was trafficked for sex within this judidical district.

10.     Defendant Wyndham Hotels and Resorts, Inc. ("Wyndham") is one of the largest hotel brands in the world with twenty (20) brands, nearly 9,000 branded properties in more than eighty (80) countries.  Wyndham is a Delaware corporation and can be served by its registered agent Corporate Creations Network, Inc., 3411 Silverside Road, Tatnall Building Suite 104, Wilmington, Delaware 19810.

a.     Defendant Wyndham Hotels and Resorts, Inc. is a successor entity to Wyndham Worldwide Corporation and Wyndham Hotel Group.  Defendant Wyndham Hotels and Resorts, Inc., retains successor liability for wrongful acts of its predecessors Wyndham Worldwide Corporation and Wyndham Hotel Group.  Days Inn by Wyndham is a Wyndham Hotels and Resorts, Inc. brand hotel.

b.     As a hotel brand manager, Defendant Wyndham controls the training and policies for its hotel brands including the Days Inn by Wyndham brand hotels where M.A. was trafficked.  Defendant Wyndham maintains that it considers guest safety and security to be of the utmost importance and requires every hotel brand in its portfolio to comply with Wyndham brand standards and all local, state, and federal laws.

c.     Through its relationship with the staff at the Days Inn by Wyndham hotels where M.A. was trafficked and the perpetrators who trafficked M.A. at Days Inn by Wyndham

hotels while registered as a guest there, Defendant Wyndham knowingly benefited or received something of value from its facilitation of or participation in a venture which it knew or should have known had engaged in sex trafficking.

        d.     Wyndham receives a percentage of the gross room revenue from the money generated by the operations of Days Inn by Wyndham hotels, including a percentage of the revenue generated for the rate charged on the hotel guest rooms in which the Plaintiff was trafficked for sex.

        e.     Wyndham did not train the staff of its Days Inn by Wyndham brand hotels on the warning signs of human trafficking, did not adopt or implement policies and procedures to prevent human trafficking at its Days Inn by Wyndham brand hotels, did not adopt or implement security or cybersecurity policies and procedures to prevent human trafficking at its Days Inn by Wyndham brand hotels, did not establish brand standards for its Days Inn by Wyndham brand hotels with respect to the prevention of human trafficking, and did not audit or otherwise monitor its Days Inn by Wyndham brand hotels on their efforts to prevent human trafficking.

        11.     Defendant S&S Airport Motel, LLC, doing business as Days Inn by Wyndham Columbus Airport ("Days Inn by Wyndham - Columbus Airport"), is an Ohio limited liability company and is one of Defendant Wyndham's Days Inn by Wyndham branded properties. Defendant Days Inn by Wyndham - Columbus Airport was involved in the staffing and operation of the Days Inn by Wyndham hotel located at 750 Stelzer Road, Columbus, Ohio 43219 where the Plaintiff was trafficked for sex. Through its relationship with Defendant Wyndham and the perpetrators who trafficked M.A. at the Days Inn by Wyndham - Columbus Airport, Defendant Days Inn by Wyndham - Columbus Airport knowingly benefited or received something of value

from its facilitation of or participation in a venture which it knew or should have known had engaged in sex trafficking. Defendant Days Inn by Wyndham - Columbus Airport may be served with service of process by serving its registered agent, Incorp Services, Inc., 9435 Waterstone Boulevard, Suite 140, Cincinnati, Ohio 45249.

12. Defendant First Hotel Management, LLC, doing business as Days Inn by Wyndham - Columbus East Airport ("Days Inn by Wyndham - Columbus East Airport"), is an Ohio limited liability company and is one of Defendant Wyndham's Days Inn by Wyndham branded properties. Defendant Days Inn by Wyndham - Columbus East Airport was involved in the staffing and operation of the Days Inn by Wyndham hotel located at 2100 Brice Road, Reynoldsburg, Ohio 43069 where the Plaintiff was trafficked for sex. Through its relationship with Defendant Wyndham and the perpetrators who trafficked M.A. at the Days Inn by Wyndham - Columbus East Airport, Defendant Days Inn by Wyndham - Columbus East Airport knowingly benefited or received something of value from its facilitation of or participation in a venture which it knew or should have known had engaged in sex trafficking. Defendant Days Inn by Wyndham - Columbus East Airport may be served with service of process by serving its registered agent, Joseph L. Piccin, 3010 Hayden Road, Columbus, Ohio 43235.

13. Defendant MGH Hospitality, Ltd doing business as Days Inn by Wyndham - Columbus East Airport; ("Days Inn by Wyndham - Columbus East Airport"), is an Ohio limited liability and was or is one of Defendant Wyndham's Days Inn by Wyndham branded properties. Defendant Days Inn by Wyndham - Columbus East Airport was involved in the staffing and operation of the Days Inn by Wyndham hotel located at 2100 Brice Road, Reynoldsburg, Ohio 43069 where the Plaintiff was trafficked for sex. Through its relationship with Defendant

6

Wyndham and the perpetrators who trafficked M.A. at the Days Inn by Wyndham - Columbus East Airport, Defendant Days Inn by Wyndham - Columbus East Airport knowingly benefited or received something of value from its facilitation of or participation in a venture which it knew or should have known had engaged in sex trafficking.  Defendant Days Inn by Wyndham - Columbus East Airport may be served with service of process by serving its registered agent, Sanjay K. Bhatt, 2929 Kenny Road, Suite 160, Columbus, Ohio 43221.

14. Defendant Brice Hotel, Inc., d/b/a Days Inn by Wyndham - Columbus East Airport;  ("Days Inn by Wyndham - Columbus East Airport"), is an Ohio limited liability and was one of Defendant Wyndham's Days Inn by Wyndham branded properties.  Defendant Brice Hotel, Inc., transferred its interest or ownership in the Days Inn by Wyndham - Columbus East Airport in March 2015.  Defendant Days Inn by Wyndham - Columbus East Airport was involved in the staffing and operation of the Days Inn by Wyndham hotel located at 2100 Brice Road, Reynoldsburg, Ohio 43069 where the Plaintiff was trafficked for sex.  Through its relationship with Defendant Wyndham and the perpetrators who trafficked M.A. at the Days Inn by Wyndham - Columbus East Airport, Defendant Days Inn by Wyndham - Columbus East Airport knowingly benefited or received something of value from its facilitation of or participation in a venture which it knew or should have known had engaged in sex trafficking. Defendant Days Inn by Wyndham - Columbus East Airport may be served with service of process by serving its registered agent, Joseph L. Piccin, 3010 Hayden Road, Columbus, Ohio 43235.

15. Defendant KRRISH Lodging, LLC, doing business as Days Inn by Wyndham - Grove City Columbus South ("Days Inn by Wyndham - Grove City Columbus South"), is an

Ohio limited liability and is one of Defendant Wyndham's Days Inn by Wyndham branded properties. Defendant Days Inn by Wyndham - Grove City Columbus South was involved in the staffing and operation of the Days Inn by Wyndham hotel located at 1849 Stringtown Road, Grove City, Ohio 43123 where the Plaintiff was trafficked for sex. Through its relationship with Defendant Wyndham and the perpetrators who trafficked M.A. at the Days Inn by Wyndham - Grove City Columbus South, Defendant Days Inn by Wyndham - Grove City Columbus South knowingly benefited or received something of value from its facilitation of or participation in a venture which it knew or should have known had engaged in sex trafficking. Defendant Days Inn by Wyndham - Grove City Columbus South may be served with service of process by serving its registered agent, Alpesh Patel, 1849 Stringtown Road, Grove City, Ohio 43123.

16.     Defendant Ash Management Corporation, doing business as Days Inn by Wyndham - Columbus North ("Days Inn by Wyndham - Columbus North") is located in Ohio and is one of Defendant Wyndham's Days Inn by Wyndham branded properties. Defendant Days Inn by Wyndham - Columbus North was involved in the staffing and operation of the Days Inn by Wyndham hotel located at 1212 E. Dublin Granville Road, Columbus, Ohio  43299, where the Plaintiff was trafficked for sex. Through its relationship with Defendant Wyndham and the perpetrators who trafficked M.A. at the Days Inn by Wyndham - Columbus North, Defendant Days Inn by Wyndham - Columbus North knowingly benefited or received something of value from its facilitation of or participation in a venture which it knew or should have known had engaged in sex trafficking. The Plaintiff's first trafficker sold her for sex at Defendant Days Inn by Wyndham - Columbus North. Defendant Days Inn by Wyndham - Columbus North may be served with service of process by serving its registered agent, Corporate Creations Network,

Inc., 3411 Silverside Road, Tatnall Building, Suite 104, Wilmington, Delaware 19810.[3]

17.    Defendant Dream Land Hotels, LLC ("Super 8"), formerly doing business as Super 8 and currently doing business as a Quality Inn, is an Ohio limited liability company and is one of Defendant Wyndham's Super 8 branded properties. Defendant Super 8 was involved in the staffing and operation of the Wyndham hotel property branded as a Super 8 and located at 2055 Brice Road, Reynoldsburg, Ohio 43068 where the Plaintiff was trafficked for sex.  Through its relationship with Defendant Wyndham and the perpetrator who trafficked M.A. at the Super 8 by Wyndham, Defendant Dream Land Hotels, LLC benefited or received something of value from its facilitation of or participation in a venture which it knew or should have known had engaged in sex trafficking.  Defendant Dream Land Hotels, LLC may be served with service of process by serving its registered agent, Pramod A. Patel, 6542 Ethel Street NW, Canton, Ohio 44718.

18.    Defendant InterContinental Hotels Group plc ("IHG") is one of the largest hotel brands in the world.  IHG manages the brands of approximately 5,600 hotels throughout almost 100 countries.  Defendant IHG offers public lodging services directly or through its various brands.  It is an English corporation with its principal place of business at Broadwater Park, Denham, Buckinghamshire, UB9 5HR, UK.

a.    Crowne Plaza is an IHG brand hotel.

b.    As a hotel brand manager, Defendant IHG controls the training and policies for its branded properties including the Crowne Plaza brand hotel where M.A. was trafficked.  Defendant IHG represents that it considers guest safety and security important and

---

[3]    Defendants Days Inn by Wyndham - Columbus Airport; Days Inn by Wyndham - Columbus East Airport; Days Inn by Wydham - Grove City Columbus South, and Days Inn by Wyndham - Columbus North are referred to herein as the "Days Inn by Wyndham Defendants."

requires the hotel brands in its portfolio to comply with IHG brand standards and all local, state, and federal laws.

       c.      Through its relationship with the staff at the Crowne Plaza hotel where M.A. was trafficked and the perpetrator who trafficked M.A. at Crowne Plaza hotel, Defendant IHG knowingly benefited or received something of value from its facilitation of or participation in a venture which it knew or should have known had engaged in sex trafficking.

       d.      IHG receives a percentage of the gross room revenue from the money generated by the operations of Crowne Plaza hotels, including a percentage of the revenue generated for the rate charged on the hotel guest rooms in which the Plaintiff was trafficked for sex.

       e.      IHG did not train the staff of its Crowne Plaza brand hotels on the warning signs of human trafficking, did not adopt or implement policies and procedures to prevent human trafficking at its Crowne Plaza brand hotels, did not adopt or implement security or cybersecurity policies and procedures to prevent human trafficking at its Crowne Plaza brand hotels, did not establish brand standards for its Crowne Plaza brand hotels with respect to the prevention of human trafficking, and did not audit or otherwise monitor its Crowne Plaza brand hotels on their efforts to prevent human trafficking.

      19.      Defendant Six Continents Hotels Inc. ("Six Continents") is the ultimate parent company for IHG in the United States. Defendant Six Continents is responsible for all brand standards for IHG brand hotels in the United States. Defendant Six Continents also owns, operates, or otherwise manages the software program for making reservations at IHG brand hotels. Defendant Six Continents may be served with service of process by serving its registered

agent, The Corporation Trust Company Corporation Trust Center, 1209 Orange Street, Wilmington, Delaware 19801

20. Defendant Holiday Hospitality Franchising, LLC ("Holiday Hospitality") is a wholly owned subsidiary of IHG. It is a Delaware corporation and can be served by its registered agent Corporation Service Company, 50 West Broad Street, Suite 1330, Columbus, Ohio 43215, or in the alternative, Corporation Service Company, 251 Little Falls Drive, Wilmington, Delaware 19808.[4]

21. Defendant Columbus Hospitality, LLC, doing business as the Crowne Plaza Columbus - Downtown, an IHG Hotel ("Crowne Plaza Columbus - Downtown, an IHG Hotel"), is an Ohio limited liability company and is one of Defendant IHG's Crowne Plaza branded properties. Defendant Crowne Plaza Columbus - Downtown, an IHG Hotel was involved in the staffing and operation of the Crowne Plaza hotel located at 33 East Nationwide Boulevard, Columbus, Ohio 43215 where the Plaintiff was trafficked for sex. Through its relationship with Defendant IHG and the perpetrators who trafficked M.A. at the Crowne Plaza Columbus - Downtown, an IHG Hotel, Defendant Crowne Plaza Columbus - Downtown, an IHG Hotel knowingly benefited or received something of value from its facilitation of or participation in a venture which it knew or should have known had engaged in sex trafficking. The Plaintiff's second trafficker sold her for sex at Defendant Crowne Plaza Columbus - Downtown, an IHG Hotel. Defendant Crowne Plaza Columbus - Downtown, an IHG Hotel may be served with service of process by serving its registered agent, OLR Biz Agency, 35 North 4th Street, Suite 100, Columbus, Ohio 43215.

---

[4]        Defendants IHG, Six Continents, and Holiday Hospitality are referred to herein as the "IHG Defendants."

22.     Defendant Choice Hotels International, Inc. ("Choice") is one of the largest hotel brands in the world. It is a Delaware corporation and can be served by its registered agent United States Corporation Company, 50 West Broad Street, Suite 1330, Columbus, Ohio 43215.

    a.     Comfort Inn is a Choice brand hotel.

    b.     As a hotel brand manager, Defendant Choice controls the training and policies for its branded properties including the Comfort Inn brand hotels where M.A. was trafficked. Defendant Choice maintains that it considers guest safety and security to be important and requires the hotel brands in its portfolio to comply with Choice brand standards and all local, state, and federal laws.

    c.     Through its relationship with the staff at the Comfort Inn hotel where M.A. was trafficked and the perpetrators who trafficked M.A. at the Comfort Inn hotel while registered as a guest there, Defendant Choice knowingly benefited or received something of value from its facilitation of or participation in a venture which it knew or should have known had engaged in sex trafficking.

    d.     Choice receives a percentage of the gross room revenue from the money generated by the operations of Comfort Inn hotels, including a percentage of the revenue generated for the rate charged on the hotel guest rooms in which the Plaintiff was trafficked for sex.

    e.     Choice did not train the staff of its Comfort Inn brand hotels on the warning signs of human trafficking, did not adopt or implement policies and procedures to prevent human trafficking at its Comfort Inn brand hotels, did not adopt or implement security or cybersecurity policies and procedures to prevent human trafficking at its

Comfort Inn brand hotels, did not establish brand standards for its Comfort Inn brand hotels with respect to the prevention of human trafficking, and did not audit or otherwise monitor its Comfort Inn brand hotels on their efforts to prevent human trafficking.

23.     Defendant Buckeye Hospitality, Inc., doing business as the Comfort Inn North Conference Center ("Comfort Inn Columbus"), is an Ohio corporation and is one of Defendant Choice's branded properties. Defendant Comfort Inn Columbus was involved in the staffing and operation of the Comfort Inn hotel located at 1213 East Dublin Granville Road, Columbus, Ohio 43229 where the Plaintiff was trafficked for sex. Through its relationship with Defendant Choice and the perpetrators who trafficked M.A. at the Comfort Inn Columbus, Defendant Comfort Inn Columbus knowingly benefited or received something of value from its facilitation of or participation in a venture which it knew or should have known had engaged in sex trafficking. Defendant Comfort Inn Columbus may be served with service of process by serving its registered agent, Charles R. Griffith, 522 North State Street, Westerville, Ohio 43082.

## **BACKGROUND**

24.     At least since the beginning of this century, the pervasiveness of human trafficking, the means to prevent its scourge, and the need to punish its perpetrators have been widely known.

25.     For example, at the General Assembly of the United Nations ("UN") convened in New York, New York in November 2000, the Palermo Protocol to prevent, suppress, and punish trafficking in persons was adopted.[5]

---

[5]     Protocol to Prevent, Suppress and Punish Trafficking in Persons, Especially Women and Children, supplementing the United Nations Convention against Transnational Organized Crime, *adopted* Nov. 15, 2000, 2237 U.N.T.S. 319.

26. Similarly, the role of the hospitality industry in either facilitating or preventing human trafficking has been widely established and known for years.

27. In this regard, End Child Prostitution and Trafficking ("ECPAT-USA") launched the Tourism Child-Protection Code of Conduct (the "Code") in the United States in 2004.[6]

28. The Code identifies the following six (6) steps companies can take to prevent child sex trafficking: (1) establish corporate policy and procedures against sexual exploitation of children; (2) train employees in children's rights, the prevention of sexual exploitation and how to report suspected cases; (3) include a clause in further partner contracts stating a common repudiation and zero tolerance policy of sexual exploitation of children; (4) provide information to travelers on children's rights, the prevention of sexual exploitation of children and how to report suspected cases; (5) support, collaborate and engage stakeholders in the prevention of sexual exploitation of children; and (6) report annually on the company's implementation of Code-related activities.

29. During a speech in New York City in September 2012, President Obama stated that human trafficking "ought to concern every person, because it is a debasement of our common humanity.  It ought to concern every community, because it tears at our social fabric.  It ought to concern every business, because it distorts markets.  It ought to concern every nation, because it endangers public health and fuels violence and organized crime."[7]

30. Despite these efforts by the UN, the White House, and non-governmental organizations to promote policies and procedures to prevent human trafficking, a 2012 report

---

[6]     ECPAT-USA, *No Vacancy For Child Sex Traffickers Impact Report* (2017), *available at*: https://static1.squarespace.com/static/594970e91b631b3571be12e2/t/59c9b6bfb07869cc5d792b8c/1506391761747/NoVacany_Report.pdf.

[7]     President Barack Obama, Remarks to the Clinton Global Initiative (Sept. 25, 2012), *available at* https://obamawhitehouse.archives.gov/the-press-office/2012/09/25/remarks-president-clinton-global-initiative.

nevertheless revealed that sixty-three percent (63%) of human trafficking incidents occur in hotels.[8] At the time the referenced report issued, the hospitality industry had been on notice of the prevalence of human trafficking for the entirety of the twenty-first century, but had done little to nothing to prevent the ongoing occurrences of human trafficking in hotels in the preceding twelve (12) years.

31. In 2014, ninety-two percent (92%) of the calls the National Human Trafficking Hotline received from hotels reported sex trafficking and two percent (2%) of the calls it received reported some combination of sex trafficking and labor trafficking.[9]

32. Statistics released in 2014 by the International Labor Organization ("ILO") showed that approximately 4.5 million people were victims of forced sexual exploitation globally and that the violation of their human rights yielded an estimated annual profit of $99 billion dollars for sex traffickers worldwide.[10] Put another way, the numbers showed that a sex trafficker's annual profit per victim was approximately $22,000.00.[11]

33. A scholarly article published in 2015, estimated that pimps could earn $25,000.00 to $33,000.00 per week selling sex in the Atlanta, Georgia area.[12] This volume of and profit from sex trafficking also aligned with internet advertising for the sex trafficking industry occurring in roughly the same time period. For example, in 2015, one advertisement in the

---

[8] Sarkisian, M., *Adopting The Code: Human Trafficking And The Hospitality Industry*, 15 CHR 15 (2015), at 3, *available at* https://ecommons.cornell.edu/xmlui/bitstream/handle/1813/71224/Sarkisian_2015_Human_trafficking.pdf?sequence =1&isAllowed=y.

[9] *Id.*

[10] International Labour Office, *Profits and Poverty: The Economics of Forced Labour* (2014), at 13, *available at* https://www.ilo.org/wcmsp5/groups/public/---ed_norm/---declaration/documents/publication/wcms_243391.pdf.

[11] *Id.* at 15.

[12] Sarkisian, *supra* n.7, at 4.

Atlanta section of the www.backpage.com website triggered 181 clicks, and calls or texts from twenty-seven (27) men expressing interest - in a span of just ninety (90) minutes.[13]

34.     In December 2015, President Obama appointed eleven (11) survivors of human trafficking to the inaugural United States Advisory Council on Human Trafficking to advise and make recommendations on federal anti-trafficking policies to the President's Interagency Task Force to Monitor and Combat Trafficking in Persons.[14]

35.     The United States Department of Justice ("DOJ") brought 248 sex trafficking prosecutions in Fiscal Year 2015 and secured convictions against 291 sex traffickers.[15]   In the previous year, DOJ convicted a total of 184 human traffickers (inclusive of labor trafficking) and in the subsequent year, DOJ convicted a total 439 human traffickers (inclusive of labor trafficking).[16]

36.     Despite these efforts of governmental and non-governmental organizations to combat human trafficking, the hospitality industry as a whole, continued to lag behind in its efforts to prevent human trafficking.   A 2015 study showed that forty-five percent (45%) of children who suffered sexual exploitation report that the sexual exploitation took place in a hotel.[17]

37.     Even estimates by attorneys *for* the hospitality industry indicate that eight (8) out of ten (10) arrests for human trafficking occur in or around hotels.[18]   The 2016 Trafficking in

---

[13]     *Id*. at 5.
[14]     U.S. Dep't of State, *2016 Trafficking in Persons Report* (2016), at 41, *available at* https://2009-2017.state.gov/documents/organization/258876.pdf.
[15]     *Id.* at 389.
[16]     Human Rights First, *Fact Sheet 2017* (2017), *available at* http://www.humanrightsfirst.org/sites/default/files/TraffickingbytheNumbers.pdf.
[17]     Sarkisian, *supra* n.4.
[18]     Rich Keating, *Human Trafficking: What It Is And How It Impacts The Hospitality Industry*, Presentation Delivered At AHIA Sprint Conference 2013, Washington, D.C., *available at* http://www.ahiattorneys.org/aws/AHIA/asset_manager/get_file/92983 (last visited Mar. 1, 2019).

Persons Report issued by the United States Department of State also confirmed that human trafficking occurs in the hospitality industry in the United States.[19]

38.     Between 2007 and March 2015, more than 1,400 human trafficking cases have been reported to the National Human Trafficking Resource Center.[20]

39.     The complicity of the hospitality industry is essential to the perpetuation of human trafficking, allowing traffickers to remain transient, collect profits, and evade detection. Sex trafficking ventures move from place to place so that they are less visible to law enforcement.  Similarly, sex traffickers also want to keep their victims moving from place to place to isolate them from any possible means of escape or rescue.  Traffickers are well aware of the seclusion and anonymity attendant with booking rooms with hotel chains - they know it is unlikely that they will be disturbed.

40.     Due to the hospitality industry's failure to embrace anti-trafficking policies and practices, children and other vulnerable persons are trafficked for sex in hotels throughout the United States.

41.     Hotel employees are uniquely situated to identify and report suspicious activity on hotel property.  From check-in to check-out there are numerous indicators that traffickers and the adults and children who are victimized by sex trafficking exhibit during their stay at a hotel property.  With proper training and other reasonable security measures, hotel owners and operators could prevent the trafficking of persons on their properties.

42.     A successful anti human trafficking protocol should start with a hotel's front desk staff.  A hotel's front desk is first in line to spot warning signs of human trafficking.  A

---

[19]     U.S. Dep't of State, *supra* n.14, at 387.
[20]     Polaris, *Human Trafficking and the Hotel Industry* (2015), *available at* https://polarisproject.org/resources/human-trafficking-and-hotel-industry.

successful anti human trafficking protocol also requires hotels to make information available throughout the facility for victims of human trafficking on how to seek help.

43. Signs of sex trafficking at a hotel include, but are not limited to, the following: an excess of condoms in rooms, individuals carrying or flashing large amounts of cash, renting two (2) rooms next door to each other, declining housekeeping service for several consecutive days, significant foot traffic in and out of rooms, men traveling with multiple unrelated women, guests checking in with little or no luggage, hotel guests who prevent another individual from speaking for themselves, or a guest controlling another's identification documents.

44. The Department of Homeland Security ("DHS") identifies a number of warning signs that indicate the presence of human trafficking at hotels. According to DHS, housekeeping, room service, maintenance, concierge, bellman, front desk, food and beverage, security, and valet staff at hotels all can and should be vigilant in observing indicia of human trafficking on the hotel premises such as:

(a) persons who show signs of malnourishment, poor hygiene, fatigue, sleep deprivation, untreated illness, injuries, and/or unusual behavior;

(b) persons who lack freedom of movement or are constantly monitored;

(c) persons who have no control over or possession of money or ID;

(d) persons who dress inappropriately for their age or have lower quality clothing compared to others in their party;

(e) requests for room or housekeeping services (additional towels, new linens, etc.), but denial of hotel staff entry into the room;

(f) the presence of multiple computers, cell phones, pagers, credit card

swipers, or other technology in the room;

   (g) extended stay with few or no personal possessions in the room;

   (h) excessive amounts of sex paraphernalia in rooms (condoms, lubricant,

lotion);

   (i) the same person reserves multiple rooms;

   (j) a room is rented hourly, less than a day, or for an atypical extended stay;

   (k) attempts to sell items to or beg from patrons or staff;

   (l) cars in the parking lot regularly parked backward, so the license plates are

not visible;

   (m) loitering and solicitation of male patrons;

   (n) waiting at a table or bar and picked up by a male (trafficker or customer);

   (o) persons asking staff or patrons for food or money; and

   (p) persons taking cash or receipts left on tables.[21]

45. Hotel staff who have undergone training are more aware of human trafficking and can at best prevent it from happening or at worst, are more willing to report it when it happens, than hotel staff who have not been trained.

46. Hotels and hotel brands can and should adopt policies and procedures related to human trafficking and make anti human trafficking resources readily available to employees.

47. Hotels and hotel brands can and should mandate that all staff working at all hotel properties complete anti human trafficking training.

---

[21] U.S. Dep't of Homeland Security, *Human Trafficking and the Hotel Industry*, https://www.dhs.gov/blue-campaign/hospitalityindustry (last visited Feb. 25, 2019).

48.     Hotels and hotel brands can and should encourage staff to report suspected incidents of human trafficking when observed on hotel properties.

49.     Hotels and hotel brands can and should develop and maintain relationships with law enforcement regarding appropriate and timely responses to suspected incidents of human trafficking on hotel properties.

50.     Hotels and hotel brands can and should post anti human trafficking awareness and informational materials in common areas and guest rooms to help eliminate human trafficking.

51.     Similarly, hotels and hotel brands can and should develop and maintain relationships with non-profit service providers in the field regarding appropriate human trafficking prevention training for hotel staff.

52.     The indicia of human trafficking and effective preventative measures are widely known and available to the hospitality industry and hotels and hotel brands that do not identify and report evidence of human trafficking on hotel properties do so in spite of the knowledge of that preventative training and resources are available, but they simply elect not to engage in preventative policies and practices.

53.     The motivation for this ongoing willful blindness and ongoing failure to act within the hospitality industry is plain and simple—limitless corporate greed.  Hotels and hotel brands, knowing both the obvious dangers and the remedial safety precautions associated with human trafficking, nevertheless ignored both the signs of and solutions to human trafficking out of an unfettered fealty to their profit margins and a corresponding complete disregard for the value of human life.

### SEX TRAFFICKING OF M.A.

54.     While she was still a minor, the Plaintiff left home to stay with a friend.  After moving in, she eventually met the person who would become her first trafficker whose plan was to traffick her in hotels throughout the central Ohio region.   She was coerced by this trafficker and told she would have to have sex to keep her food and shelter.  When she said "no," food was withheld and threats and force were used against her.

55.     Graphic photos of the Plaintiff were taken by her trafficker and appeared in advertisements on www.backpage.com without her permission, and her trafficker continued to coerce or otherwise force M.A. into sex trafficking through the use of isolation, fear, violence or threats of violence.

56.     Beginning when she was still a minor until August 2015, the Plaintiff was repeatedly trafficked for sex at Days Inn by Wyndham and Comfort Inn, properties in the central Ohio region.  Beginning sometime in 2014 through 2015, Plaintiff was repeatedly trafficked for sex at the Crowne Plaza property.

57.     During the time period she was trafficked, M.A.'s traffickers often requested rooms near exit doors.  Frequently the trash cans in the rooms in which M.A. was trafficked would contain an extraordinary number of used condoms.  She was often instructed to refuse housekeeping services.  Plaintiff's traffickers frequently paid cash for the hotel rooms rented to traffic M.A.

58.     Despite obvious signs of human trafficking (physical deterioration, no eye contact, and duration and frequency of stay) and indicators of commercial sex activity (boxes of

condoms, used condoms in the trash, cash payments, and rooms requested near the exit doors), Defendant Hotels failed to recognize or report M.A.'s trafficking. The Defendants harbored, sheltered, facilitated, or otherwise participated in a sex trafficking venture on their hotel properties and accordingly, financially benefited from the sex trafficking the Plaintiff suffered. Furthermore, the Defendants failed to prevent her continued victimization.

59. The Plaintiff observed some of the same hotel staff over the course of the time she was continuously trafficked for sex at the Defendant hotel properties, and the hotel staff would have or should have observed visible physical changes, such as bruising, to the Plaintiff's appearance. At each of the Defendants' hotel properties, M.A. would frequently enter the hotel walking past the front desk as an unregistered guest or was escorted in view of the front desk after her trafficker paid in cash for the reserved room out of which the sex trafficking venture was housed.

60. Despite her screams and visible signs of distress while being subjected to fear tactics, acts of violence and sexual violence at the Defendants' hotel properties, the hotel staff ignored her and Defendants did nothing to prevent the ongoing and obvious suffering she endured by being regularly trafficked for sex at Defendants' hotel properties.

61. The Plaintiff's traffickers operated their respective sex trafficking ventures in and out of the same hotel room often for multiple days in succession, frequently rotating back to the same hotels selected by the trafficker. The Plaintiff was forced into sexual encounters with approximately ten (10) "johns" per day, and these johns would enter and leave the hotel guest room or Plaintiff .

62.     Beginning after she reached the age of majority through approximately August 2015, the Plaintiff was trafficked for sex as an unregistered guest at Defendants' hotels and the Defendants' lack of security and cybersecurity protocols, as well as lack of their lack of adoption and implementation of policies and procedures designed to recognize and combat human trafficking facilitated the ongoing sex trafficking and sexual exploitation of the Plaintiff.

63.     In approximately August of 2015, the Plaintiff escaped her trafficker and reached out to her father whom her traffickers had limited, monitored, or prevented her from contacting. Following her escape, law enforcement intervened and arrested the Plaintiff's trafficker.

64.     In early 2017, the Plaintiff's trafficker was indicted for sex trafficking several women including the Plaintiff.  In the fall of 2017, M.A.'s trafficker was sentenced to prison and a term of supervision upon release from incarceration.

65.     The impact of being sex trafficked through violence or the threat of violence at the Defendants' hotel properties has forever emotionally and physically injured M.A. who, despite the many years since her escape suffers immensely as a result of the horrors inflicted upon her at the Defendants' hotel properties.

### WYNDHAM'S WILLFUL BLINDNESS TO HUMAN TRAFFICKING AT IT HOTELS AND PROPERTIES

66.     For years Defendant Wyndham has been on notice of repeated incidences of sex trafficking occurring on its Days Inn and Super 8 by Wyndham branded properties, yet Defendant Wyndham has failed to take action to prevent sex trafficking at Days Inn by Wyndham brand properties and still persists in failing to take necessary action to prevent sex trafficking on its Days Inn brand properties.  Defendant Wyndham's inattention in this regard enabled and contributed to the sex trafficking the Plaintiff suffered at the Days Inn and Super 8

by Wyndham Defendants' hotels.

67.     There are numerous examples across place and time of Defendant Wyndham's knowledge of sex trafficking occurring on its branded properties.  Despite this knowledge Defendant Wyndham continued its inattentiveness to the prevention and remediation of human trafficking at Wyndham brand hotels at the expense of the lives and liberties of the people sexually exploited through human trafficking at Wyndham brand hotels.

68.     Defendant Wyndham, Super 8, and the Days Inn by Wyndham Defendants knew or should have known that sex traffickers use hotels, including the Super 8 and Days Inn by Wyndham branded hotels, to facilitate the trafficking of women and children for sex.

69.     In 2011, Defendant Wyndham's predecessor entity Wyndham Worldwide Corporation, signed the Code, but as evidenced by the widespread sex trafficking which continued to occur at Defendant Wyndham's branded properties, Defendant Wyndham did not practice what it preached.  Defendant Wyndham's adoption of the Code appears to have been nothing more than a strategic maneuver through which it sought a shield against liability but not a sword against human trafficking.

70.     Despite Defendant Wyndham's anti human trafficking stance Defendant Wyndham failed to implement and enforce any of its own policies or procedures including with respect to the Super 8 and Days Inn by Wyndham Defendants.  Defendant Wyndham knew or should have known that the Super 8 and Days Inn by Wyndham Defendants were located in an area known for sex trafficking activity, and sex trafficking and prostitution continued to regularly occur on and around their branded hotel premises, including when M.A. was trafficked.[22]

---

[22]     *See, e.g, Alexis Stevens,* Atlanta Journal-Constitution, *Four Accused Of Running Prostitution Ring At Clayton County Hotels* (Jan. 12, 2016),
https://www.ajc.com/news/crime--law/accused-running-prostitution-ring-clayton-county-hotels/gPhfieHiNuiov9xM

Despite having knowledge of the extensive prostitution and sex trafficking that occurs at its branded hotels, Defendant Wyndham failed to take adequate measures to prevent the misconduct.

71. Similarly, the Super 8 and Days Inn by Wyndham Defendants failed to take adequate measures to prevent the sex trafficking of the Plaintiff.

72. The Super 8 and Days Inn by Wyndham Defendants are alter egos, representatives, agents, or co-conspirators of Defendant Wyndham. Defendant Wyndham

---

0CmmJO/ (undercover investigation leads to arrests at Atlanta-area Days Inn by Wyndham); *Brian Newlin*, ClickOnDetroit.com, *Man Accused Of Getting Women Hooked On Drugs, Forcing Them Into Prostitution In Southeast Michigan* (Mar. 28, 2018), https://www.clickondetroit.com/news/man-accused-of-forcing-women-into-prostitution-in-southeast-michigan (three women held against their will and forced into prostitution at Days Inn); *Matt Johnson*, WSBTV-Atlanta, *Fourteen-Year-Old Among Girls Saved From Motel Prostitution Ring, Police Say* (Mar. 9, 2018), https://www.wsbtv.com/news/local/cobb-county/14-year-old-among-girls-saved-from-motel-prostitution-sting-polic e-say/713242739 (police save 14-year-old from pimps at Days Inn); *Andrea Gallo*, The Advocate, *Baton Rouge Passes Ordinance To Curb Sex Trafficking, Drugs, Prostitution At Hotels* (Jan. 24, 2018), https://www.theadvocate.com/baton_rouge/news/article_ac478eb0-0132-11e8-be36-6bb6c3a45ac0.html (frequency of police calls from Days Inn leads to action by Baton Rouge City Council). Kevin Poulsen, *'Y2K Pimp' Gets 12 Years For Recruiting Minor On Myspace*, Wired.com (Nov. 8, 2010), https://www.wired.com/2010/11/epps/. *Tenn. Man Booked In Human Trafficking*, End Slavery.Tennessee (Jun. 1, 2013), https://www.endslaverytn.org/news/tenn-man-booked-in-human-trafficking-newsarticle. Press Release, Federal Bureau of Investigation, *Tallahassee Man Sentenced To Life For Child Sex Trafficking* (Jan. 10, 2011), https://archives.fbi.gov/archives/jacksonville/press-releases/2011/ja011011.htm. Laura Lederer, *Sold For Sex: The Link Between Street Gangs And Human Trafficking*, Public Discourse: The Journal Of The Witherspoon Institute (Oct. 21, 2011), https://www.thepublicdiscourse.com/2011/10/4034/. Alexandria Fisher, *Woman Charged With Trafficking Teen Girl*, NBCChicago.com (Apr. 13, 2013), https://www.nbcchicago.com/news/local/Women-Charged-with-Trafficking-Teen-Girl-202857131.html., Jon Collins, *Ramsey Co. Judge Sentences Sex Traffickers To 21 Years*, MPRNews.org (Sept. 16, 2013), https://www.mprnews.org/story/2013/09/16/sextrafficking-sentences., *Two Plead In Sex Trafficking Case*, Odessa American (Nov. 21, 2013), https://www.oaoa.com/news/crime_justice/courts/article_08be9e7e-5302-11e3-b6b8-0019bb30f31a.html., Michael McKinney, *Missouri Man Pleads Guilty To Sex Trafficking 17-Year-Old Massachusetts Girl To Rhode Island*, Providence Journal (Feb. 27, 2014), https://www.providencejournal.com/breaking-news/content/20140227-missouri-man-pleads-guilty-to-sex-trafficking -for-bringing-17-year-old-massachusetts-girl-to-rhode-island.ece., *Crimewatch: APD's Human Trafficking Unit*, Fox 7 Austin.com (Aug. 4, 2014), http://www.fox7austin.com/news/crimewatch-apds-human-trafficking-unit.

exercises or has the right to exercise control over business operations, management, supervision, administration, and procedures of the Super 8 and Days Inn by Wyndham Defendants.

73.     Defendant Wyndham and the Days Inn by Wyndham Defendants are a single and joint employer with a high degree of interrelated, intermingled, and unified operations at the the Super 8 and Days Inn by Wyndham Defendant hotels where the Plaintiff was trafficked for sex. Defendant Wyndham and the Super 8 and Days Inn by Wyndham Defendants each share the common policies and practices complained of herein.

74.     Defendant Wyndham and the Days Inn by Wyndham Defendants jointly employ or ratify the employment of individuals through horizontal joint employment and or vertical joint employment.

75.     Defendant Wyndham and the Super 8 by Wyndham Defendants jointly employ or ratify the employment of individuals through horizontal joint employment and or vertical joint employment.

76.     As an integrated enterprise and or joint employer, Defendant Wyndham and the Days Inn by Wyndham Defendants are separately and jointly responsible for compliance with all applicable laws.

77.     As an integrated enterprise and or joint employer, Defendant Wyndham and the Super 8 by Wyndham Defendants are separately and jointly responsible for compliance with all applicable laws.

78.     As an integrated enterprise and or joint employer, Defendant Wyndham and the Days Inn by Wyndham Defendants are jointly and severally liable for any damages caused by employees.

79.     As an integrated enterprise andor joint employer, Defendant Wyndham and the Super 8 are jointly and severally liable for any damages caused by employees.

80.    During the time period relevant to the allegations contained herein, the Days Inn by Wyndham Defendants and the Super 8 Defendants were each in an agency relationship with Defendant Wyndham and operated as public accommodations offering public lodging services in the subject hotels.  This agency relationship was created through one or more of the following actions:

(a)    sharing profits,

(b)    standardized training methods for employees;

(c)    building and maintaining the Super 8 and/or Days Inn hotels owned, operated, or managed by the Super 8 and/or Days Inn by Wyndham Defendants in a manner specified by Defendant Wyndham;

(d)    standardized or strict rules of operation;

(e)    the ability of Defendant Wyndham to cancel any agreement with the Super 8 and Days Inn by Wyndham Defendants if rules are violated;

(f)    regular inspection of the Super 8 and Days Inn by Wyndham Defendants and operation or management by Defendant Wyndham;

(g)    prices fixed by Defendant Wyndham; or

(h)    any actions that deprive the Super 8 and Days Inn by Wyndham Defendants of independence in business operations.

81.    For years, both before and after adopting the Code, Defendant Wyndham has demonstrated willful blindness to the rampant culture of sex trafficking which tragically occurs on its Days Inn by Wyndham branded properties throughout the country.  This same entrenched,

pervasive willful blindness to sex trafficking facilitated the sex trafficking of M.A. at the Super 8 and Days Inn by Wyndham branded hotels that forms the basis of this Complaint.

82.     Even though Defendant Wyndham has sought and received publicity for its anti-human trafficking measures, Defendant Wyndham could have accessed data and databases, including from data from POLARIS, that demonstrated that the prevalence of human trafficking at Defendant Wyndham brand hotels and in the hospitality industry generally.  Despite the availability of such data and information, Defendant Wyndham ignored  or turned a blind eye to the growing body of information regarding the prevalence of human trafficking at Wyndham brand hotels and in the hospitality industry generally and continued to profit from the human trafficking occurring at Wyndham brand hotels.

## IHG'S WILLFUL BLINDNESS TO HUMAN TRAFFICKING AT ITS HOTELS AND PROPERTIES

83.     The IHG Defendants own, supervise, operate, or manage the Crowne Plaza Columbus – Downtown, an IHG Hotel.  The IHG Defendants  and the Crowne Plaza Columbus – Downtown, an IHG Hotel knew or should have known that pimps and sex traffickers utilize hotels in Columbus Ohio, including Crowne Plaza hotels, to facilitate the trafficking of women and children for sex.[23]

---

[23]     *See, e.g.,* Andy McNeil, *Man Charged With Trafficking In Cherry Hill Sex Sting*, Courier-Post (Mar. 14, 2014),
https://www.courierpostonline.com/story/news/crime/2014/03/14/man-charged-with-trafficking-in-cherry-hill-sex-sting/6395105/ (man charged with sex trafficking at Crowne Plaza hotel); Press Release, U.S. Dep't of Justice, *Columbus 'Pimp' Sentenced for Trafficking Women*
 (Oct. 12, 2017), https://www.justice.gov/usao-sdoh/pr/columbus-pimp-sentenced-trafficking-women (sex trafficking case based on undercover investigation at Crowne Plaza hotel in Columbus); *Prostitution Ring Leader Busted At Minneapolis Hotel,* WCCO Minneapolis (May 7, 2012),
https://minnesota.cbslocal.com/2012/05/07/prostitution-ring-leader-busted-at-minneapolis-hotel/ (Prostitution ring leader busted at Crowne Plaza in Minneapolis); Victor Williams, *Ohio Ranked One Of Highest Sex-Trafficking States In Nation*, Cleveland19.com (Feb. 22, 2019),
http://www.cleveland19.com/2019/02/22/ohio-ranked-one-highest-sex-trafficking-states-nation/ (trafficking rates exceptionally high in Ohio);  Christina Mullen, *Why Ohio Is Ranked Fifth In The Nation For Human Trafficking*,

28

84.   The IHG Defendants and Defendant Crowne Plaza Columbus – Downtown, an IHG Hotel failed to implement and enforce any of their own policies and procedures to protect Plaintiff M.A. from being sex trafficked.  The IHG Defendants and Defendant Crowne Plaza Columbus – Downtown, an IHG Hotel knew or should have known that the Defendant Crowne Plaza hotel where Plaintiff M.A. was trafficked was in an area known for sex trafficking activity, and sex trafficking and prostitution continued to regularly occur on and around the hotel premises, including when Plaintiff M.A. was trafficked.  Despite having knowledge of the extensive prostitution and sex trafficking that occurs at its hotels, the  IHG Defendants and Defendant Crowne Plaza Columbus – Downtown, an IHG Hotel, have repeatedly failed to stop these actions.

85.   The IHG Defendants exercised control over the Defendant Crowne Plaza hotel by:

(a)   distributing information to assist employees in identifying human trafficking;

(b)   providing a process for escalating human trafficking concerns within the organization;

(c)   requiring employees to attend training related to human trafficking;

(d)   providing new hire orientation on human rights and corporate responsibility;

---

WKBN First News 27 (Jan. 12, 2017),
https://www.wkbn.com/news/why-ohio-is-ranked-5-in-nation-for-human-trafficking/ (Ohio is a hub for sex trafficking of minors).

(e)     providing training and education to Crowne Plaza branded hotels through webinars, seminars, conferences, and online portals;

(f)     developing and holding ongoing training sessions on human trafficking; or

(g)     providing checklists, escalation protocols and information to property management staff; or tracking performance indicators and key metrics on human trafficking prevention.

86.     The IHG Defendants were in an agency relationship with Crowne Plaza branded hotels offering public lodging services in the hotel.

87.     This agency relationship was created through the IHG Defendants' exercise of an ongoing and systemic right of control over the Defendant Crowne Plaza hotel by the IHG Defendants' operation and management, including the means and methods of how Crowne Plaza branded hotels conducted daily business through one or more of the following actions:

(a)     hosting online bookings on the IHG Defendants' domain;

(b)     requiring Crowne Plaza branded hotels to use the IHG Defendants' customer rewards program;

(c)     setting employee wages;

(d)     making employment decisions;

(e)     advertising for employment;

(f)     sharing profits;

(g)     standardized training methods for employees;

(h)     building and maintaining the facility in a manner specified by the owner,

operator, or manager;

(i)    standardized or strict rules of operation;

(j)    regular inspection of the facility and operation by owner, operator, or manager;

(l)    fixing prices; or

(m)    other actions that deprive Crowne Plaza branded hotels of independence in business operations.

88.    An apparent agency also exists between the IHG Defendants and the Defendant Crowne Plaza hotel. The IHG Defendants held out Crowne Plaza branded hotels to the public as possessing authority to act on their behalf.

89.    Given the IHG Defendants' public statements on behalf of their hotel brands and the control they assumed in educating, implementing, and directing their branded hotels, including Crowne Plaza branded hotels, the IHG Defendants breached their duties in the following ways:

(a)    did not adequately distribute information to assist employees in identifying human trafficking;

(b)    failed to provide a process for escalating human trafficking concerns within the organization;

(c)    failed to mandate managers, employees, or owners attend training related to human trafficking;

(d)    failed to provide new hire orientation on human rights and corporate responsibility;

31

(e)  failed to provide training and education on human trafficking through webinars, seminars, conferences, and online portals;

(f)  failed to develop and hold or require ongoing training sessions on human trafficking; or

(g)  failed to provide checklists, escalation protocols and information to property management staff or tracking performance indicators and key metrics on human trafficking prevention.

90.  The Crowne Plaza Columbus – Downtown, an IHG Hotel, is an alter ego, representative, agent, or co-conspirator of the IHG Defendants.  The IHG Defendants exercise or have the right to exercise control over business operations, management, supervision, administration, and procedures of the Crowne Plaza Columbus – Downtown, an IHG Hotel

91.  The IHG Defendants and the Crowne Plaza Columbus – Downtown, an IHG Hotel are a single and joint employer with a high degree of interrelated, intermingled, and unified operations at the the Defendant Crowne Plaza hotel where the Plaintiff was trafficked for sex.  The IHG Defendants and the Defendant Crowne Plaza hotel each share the common policies and practices complained of herein.

92.  The IHG Defendants and the Crowne Plaza Columbus – Downtown, an IHG Hoteljointly employ or ratify the employment of individuals through horizontal joint employment and or vertical joint employment.

93.  As an integrated enterprise and or joint employer, the IHG Defendants and Defendant Crowne Plaza - Downtown, an IHG hotel are separately and jointly responsible for compliance with all applicable laws.

94.     As an integrated enterprise and or joint employer, the IHG Defendants and Defendant Crowne Plaza Downtown are jointly and severally liable for any damages caused by employees.

95.     During the time period relevant to the allegations contained herein, Defendant Crowne Plaza Downtown was in an agency relationship with the IHG Defendants and operated as public accommodations offering public lodging services in the subject hotels.  This agency relationship was created through one or more of the following actions:

(a)     sharing profits,

(b)     standardized training methods for employees;

(c)     building and maintaining the Crowne Plaza hotels owned, operated, or managed by the Crowne Plaza Defendant hotel in a manner specified by the IHG Defendants;

(d)     standardized or strict rules of operation;

(e)     the ability of the IHG Defendants to cancel any agreement with the Crowne Plaza Defendant hotel if rules are violated;

(f)     regular inspection of the Crowne Plaza Defendant hotel and operation or management  by the IHG Defendants;

(g)     prices fixed by the IHG Defendants; or

(h)     any actions that deprive the Crowne Plaza Defendant hotel of independence in business operations.

96.     For years, both before and after adopting the Code, Defendant IHG has demonstrated willful blindness to the rampant culture of sex trafficking which tragically occurs

on its Crowne Plaza branded properties throughout the United States.  This same entrenched, pervasive willful blindness to sex trafficking facilitated the sex trafficking of Plaintiff M.A. at Crowne Plaza Defendant hotel that forms the basis of this complaint.

97.    Even though the IHG Defendants have sought and received publicity for their anti-human trafficking measures, the IHG Defendants could have accessed data and databases, including from data from POLARIS, that demonstrated that the prevalence of human trafficking at the IHG Defendants' brand hotels and in the hospitality industry generally.  Despite the availability of such data and information, the IHG Defendants ignored  or turned a blind eye to the growing body of information regarding the prevalence of human trafficking at IHG brand hotels and in the hospitality industry generally and continued to profit from the human trafficking occurring at IHG brand hotels.

## CHOICE HOTELS' WILLFUL BLINDNESS TO HUMAN TRAFFICKING AT ITS HOTELS AND PROPERTIES

98.    Defendant Choice has known for years that pimps and traffickers use its hotels to carry out their crimes.[24]  Despite having knowledge of the extensive prostitution and sex trafficking that occurs at its hotels, Defendant Choice repeatedly failed to make reasonable efforts to stop these crimes.[25]

---

[24]    *See* Review of Quality Inn Columbus - East (Mar. 10, 2013), *available at* https://www.tripadvisor.com/ShowUserReviews-g50891-d226034-r154180408-Quality_Inn_Columbus_East-Reynoldsburg_Ohio.html (last visited Mar. 4, 2019) ("I've been solicited for drugs and by prostitutes here on several occasions. I told the hotel staff about it and they seem to turn a blind eye to the problem because these people are also buying rooms.").

[25]    *See, e.g.,* Amanda Covarrubias, *Five Arrested After Months-Long Investigation Into Human Trafficking Ring* (Aug. 23, 2016), https://www.vcstar.com/story/news/crime/2016/08/23/five-arrested-after-monthslong-investigation-into-human-trafficking-ring/89254044/ (Five men arrested in Ventura County, California at a Comfort Inn for forcing at least 28 women into prostitution); The Bakersfield Californian, *Man Arrested On Suspicion Of Human Trafficking* (Feb. 25, 2016), https://www.bakersfield.com/news/breaking/man-arrested-on-suspicion-of-human-trafficking/article_3f5f6ee8-008e-5ef9-ad28-5f4ecb667a1c.html (Suspect arrested in Bakersfield, California at a Quality Inn on suspicion of human

99.     On November 10, 2009, a young child was raped and killed at a Comfort Inn, which is a Choice brand hotel, in Fayetteville, North Carolina.[26]  The incident caused such outrage that child advocates petitioned Defendant Choice to take steps to prevent sex trafficking in its hotels.[27]  It was only after this horrific incident that Defendant Choice started to publicize a need for change.  In November 2010, Defendant Choice partnered with ECPAT-USA to develop a training module to educate its management and staff in the prevention of sex trafficking.[28]  However, Defendant Choice did not enforce the program, or require its employees to complete this training, or even follow up to make sure the hotels were following the protocols.[29]

trafficking of a minor); The East Carolinian, *GPD Discovers Child Prostitution* (Dec. 2, 2014), http://www.theeastcarolinian.com/news/article_59f8d72a-79c9-11e4-86d3-eb5396cc62f5.html (Arrest made in Greenville, North Carolina for human trafficking of a fourteen-year-old girl at a Quality Inn); ClarkvilleNow.com, *Oak Grove Police Sergeant, Two Others Arrested During Prostitution Investigation* (Sept. 28, 2016), http://clarksvillenow.com/local/oak-grove-police-sergeant-2-others-arrested-during-prostitution-investigation/ (Three arrested in Oak Grove, Kentucky and charged with human trafficking after holding a woman against her will at a Quality Inn and forcing her to have sex with several men); *Christopher Hoffman*, The Hartford Courant, *Wethersfield Police Break Up Motel Prostitution Operation* (Jul. 11, 2014), http://articles.courant.com/2014-07-11/community/hc-wethersfield-prostitution-0711-20140710_1_prostitutes-affida vits-police-break (Comfort Inn management arrested in Wethersfield, Connecticut for promoting prostitution at the hotel); Thomasi McDonald, *Raleigh Police Charge Wilson Man With Forcing Child Into Prostitution* (Feb. 11, 2016), http://www.newsobserver.com/news/local/crime/article59910551.html (Man arrested in Raleigh, North Carolina for human trafficking and prostitution of a fifteen-year-old girl at an Econo Lodge -- also a Choice brand hotel); Megan Brockett, Capital Gazette, *Laurel Hotels Among Those Named In Human Trafficking Indictments* (Aug. 16, 2016), http://www.capitalgazette.com/news/for_the_record/ph-ac-cn-human-trafficking-0817-20160816-story.html (Three arrested in Prince George's County, Maryland in a large-scale human trafficking venture which operated in part out of an Econo Lodge); *Josh Kovner and Suzanne Carlson*, The Hartford Courant, *Federal Task Force Targets Sex Trafficking Of Minors In Connecticut* (Nov. 5, 2015), http://www.courant.com/news/connecticut/hc-minor-sex-traffic-1104-20151104-story.html (Arrest made in East Hartford, Connecticut for human trafficking of a minor at a local Econo Lodge).

[26] WRAL.com, *Shaniya Davis Was Raped, Killed On Same Day* (Nov. 20, 2009), http://www.wral.com/news/local/story/6464217/ (Warrants: Girl abducted, raped, killed on same day.)

[27]     *See* Change.org Petition, *Tell Choice Hotels To Prevent Child Prostitution In Their Hotels*, available at https://www.change.org/search?q=tell+choice+hotels+to+prevent+child+prostitution+in+their+hotels (last visited Mar. 4, 2019).

[28]     *See* Choice Hotels*, Human Rights Policy*, available at https://www.choicehotels.com/about/responsibility/human-rights-policy (last visited Mar. 4, 2019); *see also* ECPAT-USA, *Tourism Protection Code of Conduct*, available at http://www.ecpatusa.org/code/ (last visited Mar. 4, 2019).

[29]     *See* Choice Hotels, *Human Rights Policy, supra* n.30.

100.    Members of ECPAT are required to report every year on their developments for implementing the ECPAT Code. The report includes the following topics: (1) establishing a policy and procedure against sexual exploitation of children; (2) training employees in children's rights, the prevention of sexual exploitation and how to report suspected cases; (3) including a clause in contracts mandating a common repudiation and zero tolerance policy of sexual exploitation of children; and (4) providing information to travelers on children's rights, including how to prevent sexual exploitation of children and how to report suspected abuse.[30]

101.    The presence of a sex trafficker in a hotel is often apparent and many hotels train their staff to identify the signs.

102.    In the instance of Plaintiff M.A., had staff been properly trained, many of the human trafficking red flags would have been recognized and reported.  But Defendant Choice chose not to invest the time to implement and execute the anti-trafficking program.  Instead, the only steps they took were to advertise to the public that they had implemented human trafficking policies.  Defendant Choice breached its duties and did not implement or enforce anti human trafficking policies that could have saved the Plaintiff from being sex trafficked at its branded hotels.

103.    Despite knowledge of the problem of sex trafficking in its hotels, Defendant Choice did not require that employees participate in training to prevent sex trafficking and only "recommended" this training to new employees during the time the Plaintiff was victimized.[31]

---

[30]      ECPAT-USA, *supra* n.22.
[31]      *Belinda Luscombe*, Time.com, *How To Spot A Human Trafficking Victim At A Hotel* (Oct. 28, 2014), http://time.com/3525640/sex-trafficking-victim-prostitution-hotel/.

104.　At the time of the incidents alleged herein, Defendant Choice was in an agency relationship with Defendants Comfort Inn Columbus and offered public lodging services in the hotels.

105.　Defendant Choice exercised ongoing and systemic control over operations sufficient to establish an agency relationship with Defendant Comfort Inn Columbus.

106.　Defendant Choice exercised control over the means and methods of how Defendants Comfort Inn Columbus conducted business through one or more of the following actions:

(a)　hosting online bookings on Defendant Choice's domain;

(b)　requiring Comfort Inn branded hotels to use Defendant Choice's customer rewards program;

(c)　setting employee wages;

(d)　making employment decisions;

(e)　advertising for employment;

(f)　sharing profits;

(g)　standardized training methods for employees;

(h)　building and maintaining the facility in a manner specified by the owner;

(i)　standardized or strict rules of operation;

(j)　regular inspection of the facility and operation by owner;

(l)　fixing prices; or

(m)　other actions that deprive Comfort Inn brand hotels of independence in business operations.

107.    An apparent agency relationship also exists between Defendant Choice and Defendant Comfort Inn Columbus.  Defendant Choice represented to the public that it had authority to act on behalf of Comfort Inn branded hotels through the following:

(a)    Comfort Inn branded hotels' websites are hosted at www.choicehotels.com.

(b)    Defendant Choice acquired the Comfort Inn brand.  Upon acquisition of the Comfort Inn brand, Defendant Choice changed branding, logos and signage of Comfort Inn branded hotels to Defendant Choice's.

(c)    When staying at Comfort Inn branded hotels, guests receive Choice Rewards for bookings.

108.    Given Defendant Choice's public statements on behalf of its Comfort Inn branded hotels and the control it assumed in educating, implementing, and directing its Comfort Inn branded hotels, including Defendants Comfort Inn Columbus, Defendant Choice failed to address and prevent human trafficking on its Comfort Inn branded properties, including but not limited to the following ways:

(a)    did not adequately distribute information to assist employees in identifying human trafficking;

(b)    failed to provide a process for escalating human trafficking concerns within the organization;

(c)    failed to mandate managers, employees, or owners attend training related to human trafficking;

(d) failed to provide new hire orientation on human rights and corporate responsibility;

(e) failed to provide training and education on human trafficking through webinars, seminars, conferences, and online portals;

(f) failed to develop and hold or require ongoing training sessions on human trafficking; or

(g) failed to provide checklists, escalation protocols and information to property management staff or tracking performance indicators and key metrics on human trafficking prevention.

109. Defendant Comfort Inn Columbus is an alter egos, representative, agent, or co-conspirator of Defendant Choice. Defendant Choice exercises or has the right to exercise control over business operations, management, supervision, administration, and procedures of Defendants Comfort Inn Columbus.

110. Defendant Choice and the Defendant Comfort Inn Columbus are a single and joint employers, with a high degree of interrelated, intermingled, and unified operations at the the Defendant Comfort Inn Columbus hotel where the Plaintiff was trafficked for sex. Defendant Choice and the Defendant Comfort Inn Columbus share the common policies and practices complained of herein.

111. Defendant Choice and the Defendant Comfort Inn Columbus jointly employ or ratify the employment of individuals through horizontal joint employment and or vertical joint employment.

112.    As an integrated enterprise and or joint employer, Defendant Choice and the Defendant Comfort Inn Columbus are separately and jointly responsible for compliance with all applicable laws.

113.    As an integrated enterprise and or joint employer, Defendant Choice and the Defendant Comfort Inn Columbus are jointly and severally liable for any damages caused by employees.

114.    During the time period relevant to the allegations contained herein, the Defendant Comfort Inn Columbus was in an agency relationship with Defendant Choice and operated as public accommodations offering public lodging services in the subject hotels.  This agency relationship was created through one or more of the following actions:

(a) sharing profits,

(b) standardized training methods for employees;

(c) building and maintaining the Comfort Inn hotels owned, operated, or managed by the Defendant Comfort Inn Columbus in a manner specified by Defendant Choice;

(d) standardized or strict rules of operation;

(e) the ability of Defendant Choice to cancel any agreement with the Defendant Comfort Inn Columbus if rules are violated;

(f) regular inspection of the Defendant Comfort Inn Columbus and operation or management  by Defendant Choice;

(g) prices fixed by Defendant Choice; or

(h) any actions that deprive the Defendant Comfort Inn Columbus of independence in business operations.

115. For years, both before and after adopting the Code, Defendant Choice has demonstrated willful blindness to the rampant culture of sex trafficking which tragically occurs on its Comfort Inn branded properties throughout the country. This same entrenched, pervasive willful blindness to sex trafficking facilitated the sex trafficking of Plaintiff M.A. at Comfort Inn hotel that forms the basis of this complaint.

116. Even though Defendant Choice has sought and received publicity for its anti-human trafficking measures, Defendant Choice could have accessed data and databases, including from data from POLARIS, that demonstrated that the prevalence of human trafficking at Defendant Choice brand hotels and in the hospitality industry generally. Despite the availability of such data and information, Defendant Choice ignored or turned a blind eye to the growing body of information regarding the prevalence of human trafficking at Choice brand hotels and in the hospitality industry generally and continued to profit from the human trafficking occurring at Choice brand hotels.

### CAUSE OF ACTION

### COUNT ONE
VIOLATION OF THE TVPRA, 18 U.S.C § 1595
(Against All Defendants)

117. The Plaintiff adopts and incorporates by reference each and every allegation contained in the preceding paragraphs of this Complaint as if fully set forth herein.

118. The Plaintiff is a survivor of sex trafficking within the meaning of 18 U.S.C. § 1591 and is entitled to bring a civil action under 18 U.S.C. § 1595 against any individual or entity whose violations of the TVPRA proximately caused the Plaintiff to sustain physical and psychological injuries.

119.    The Defendants knowingly benefited from participating in a venture which they knew or should have known was engaged in illegal sex trafficking in violation of the TVPRA, 18 U.S.C. § 1591(a)(2), by, *inter alia*, engaging in acts and omissions that were intended to support, facilitate, harbor, and otherwise further the trafficker's sale and victimization of the Plaintiff for commercial sexual exploitation.  Defendants knew or should have known that their repeated failures to address known risks of human trafficking on their hotel properties would increase the overall volume of illegal commercial sexual exploitation and victimization at their hotel properties.  Defendants knowingly benefited from facilitating the trafficking of persons on the hotel properties.

120.    Defendants knowingly benefited financially from the presence of traffickers at their hotel properties by consistently renting rooms where a trafficker repeatedly sold the Plaintiff for sex at Defendants' hotel properties and accordingly, participated in the trafficking venture that exploited her by the various means described herein.

121.    The Plaintiff has suffered substantial physical, emotional, and psychological injuries, and other damages, as a result of being trafficked at Defendants' hotel properties.

## PRAYER FOR RELIEF

WHEREFORE, the Plaintiff requests that the jury selected to hear this case render a verdict in her favor on all counts alleged and against each and every Defendant, jointly and severally, and that it award compensatory and punitive damages to her in an amount which will adequately compensate her for the injuries and damages she suffered due to the Defendants' misconduct outlined herein.  Also, on the basis of the foregoing, the Plaintiff requests that the jury award damages to her in an amount which will adequately reflect the enormity of the

Defendants' wrongdoing and which will effectively prevent other similar bad acts.  Further, the

Plaintiff requests that this Honorable Court enter a judgment consistent with the jury's verdict,

and that it also award the Plaintiff interest from the date of judgment and the costs incurred by

the Court in managing this lawsuit, plus attorneys' fees and costs.  The Plaintiff further prays for

any other damages and equitable relief the Court or jury deems appropriate under the

circumstances.

## JURY DEMAND

Plaintiff hereby demands a trial by struck jury.

Respectfully submitted,

/s/ Steven C. Babin, Jr.
Steven C. Babin, Jr. (0093584)
Babin Law, LLC
1320 Dublin Road, #100
Columbus, Ohio 43215
T: 614-384-7035
E: steven.babin@babinlaws.com

/s/ Kimberly Lambert Adams
Kimberly Lambert Adams (*admitted via pro hac vice*)
Kathryn L. Avila (*admitted via pro hac vice*)
Chris V. Tisi (*admitted pro hac vice*)
Levin, Papantonio, Thomas, Mitchell, Rafferty & Proctor, P.A.
316 S. Baylen St. Suite 600
Pensacola, Florida 32502
T: 850.435.7056
F: 850.436.6056
E: kadams@levinlaw.com / kavila@levinlaw.com / ctisi@levinlaw.com

/s/ Gregory M. Zarzaur
Gregory M. Zarzaur (*admitted via pro hac vice*)
ZARZAUR
2332 2nd Avenue North
Birmingham, Alabama  35203
T: 205.983.7985
F: 888.505.0523
E: gregory@zarzaur.com

/s/ Anil Mujumdar
Anil A. Mujumdar (*admitted via pro hac vice*)
DAGNEY JOHNSON LAW GROUP
2170 Highland Avenue, Ste #250
Birmingham, Alabama 35205
T: 205.590.6986
F: 205.809.7899
E: anil@dagneylaw.com